**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: TIKTOK INC. IN APP BROWSER PRIVACY LITIGATION | MDL 2948-A |
| | Master Docket No. 24-cv-2110 |
| This Document Relates to: ALL ACTIONS | Judge Rebecca R. Pallmeyer |
| | **Hearing Set for September 10, 2024 at 9:15 a.m.** |

<u>**MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**MOTION TO DISMISS PLAINTIFFS' MASTER CONSOLIDATED COMPLAINT**</u>
<u>**BY DEFENDANTS TIKTOK INC. AND BYTEDANCE INC.**</u>

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS AND ALLEGATIONS ........................................................... 2

      A.    Defendants, the TikTok App, and the Privacy Policy ........................................... 2

      B.    Plaintiffs, the Krause Post, and the Complaint ..................................................... 3

ARGUMENT ....................................................................................................................... 4

I.       LEGAL STANDARD ................................................................................................ 4

II.     THIS ACTION SHOULD BE DISMISSED BECAUSE IT IS BASED
        ENTIRELY ON A DOCUMENT THAT ADMITS THERE IS NO EVIDENCE
        TO SUPPORT THE CLAIMS ALLEGED ............................................................. 5

III.    PLAINTIFFS' CONSENT DEFEATS THEIR CLAIMS ................................................ 7

IV.    THE CLAIMS SHOULD BE DISMISSED FOR LACK OF PERSONAL
        ALLEGATIONS SHOWING EACH PLAINTIFF CAN STATE A CLAIM ............... 10

V.     EACH INDIVIDUAL CLAIM SHOULD BE DISMISSED FOR SEPARATE
        DEFICIENCIES ........................................................................................................ 12

      A.    Plaintiffs Fail to State a Federal Wiretap Act Claim .......................................... 12

            1.    Plaintiffs Have Not Alleged Their Own Communications Were
                Collected ...................................................................................................... 13

            2.    Defendants Were a Party to Any Communications ................................... 13

            3.    The Alleged Conduct Is Within Defendants' Ordinary Course of
                Business ....................................................................................................... 14

            4.    Without an Interception, Defendants Cannot Have Disclosed or
                Used Intercepted Communications ............................................................ 16

      B.    Plaintiffs Fail to State Any State Law Wiretapping or Eavesdropping
         Claim ..................................................................................................................... 16

            1.    No "Communications" or "Conversations" Were Collected, So All
                State Claims Fail ......................................................................................... 16

            2.    There Was No "Interception," So the CIPA 631 and IEA Claims
                Fail .............................................................................................................. 17

            3.    No "Confidential" or "Private" Communications Were Collected,
                 So the CIPA 632, FSCA, and IEA Claims Fail ....................................... 18

            4.    The FSCA Claim Fails for Multiple Independent Reasons .................... 18

            5.    The Alleged Collection Falls Within the Service Provider
                 Exception, So the WESCA Claim Fails .................................................... 20

      C.    Plaintiffs Fail to State a UCL Claim .................................................................. 20

            1.    Plaintiffs Do Not Have UCL Standing .................................................... 20

i

## TABLE OF CONTENTS
(continued)

**Page**

2.     Plaintiffs Do Not Allege Any Unlawful, Unfair or Fraudulent Conduct ................................................................................................ 22

D.     Plaintiffs Fail to State an Unjust Enrichment Claim Under Any State's Law ....................................................................................................... 23

CONCLUSION .................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Macon Cnty., Ill. ex rel. Ahola v. Merscorp, Inc.*,
  968 F. Supp. 2d 959 (C.D. Ill. 2013) .......................................................................23

*Arencibia v. AGA Serv. Co.*,
  2022 WL 1499693 (11th Cir. May 12, 2022) ...........................................................24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................1, 4, 7, 10

*Backhaut v. Apple Inc.*,
  148 F. Supp. 3d 844 (N.D. Cal. 2015) .....................................................................16

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001).................................................................................................12

*Bass v. Facebook, Inc.*,
  394 F. Supp. 3d 1024 (N.D. Cal. 2019) ...................................................................21

*Baugh v. CBS, Inc.*,
  828 F. Supp. 745 (N.D. Cal. 1993) ............................................................................8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................1, 4, 7

*Berryman v. Merit Prop. Mgmt., Inc.*,
  62 Cal. Rptr. 3d 177 (Ct. App. 2007) ......................................................................23

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009).................................................................4

*Brownmark Films, LLC v. Comedy Partners*,
  682 F.3d 687 (7th Cir. 2012) ....................................................................................4

*Butler v. Hogshead-Makar*,
  2023 WL 4663644 (N.D. Ill. July 20, 2023)..............................................................7

*California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*,
  114 Cal. Rptr. 2d 109 (Ct. App. 2001) ....................................................................24

*Circle Block Partners, LLC v. Fireman's Fund Ins. Co.*,
  44 F.4th 1014 (7th Cir. 2022) ..................................................................................25

*Connor v. Whirlpool Corp.*,
  2021 WL 3076477 (S.D. Fla. July 6, 2021)..............................................................19

iii

## **TABLE OF AUTHORITIES**

Page(s)

*Cook v. GameStop, Inc.*,
    2023 WL 5529772 (W.D. Pa. Aug. 28, 2023) ................................................................11, 18

*Daugherty v. Am. Honda Motor Co. Inc.*,
    51 Cal. Rptr. 3d 118 (Ct. App. 2006) ..............................................................................22

*Dinerstein v. Google, LLC*,
    484 F. Supp. 3d 561 (N.D. Ill. 2020) ..............................................................................25

*Eidmann v. Walgreen Co.*,
    522 F. Supp. 3d 634 (N.D. Cal. 2021) .............................................................................23

*Esparza v. Lenox Corp.*,
    2023 WL 2541352 (N.D. Cal. Mar. 16, 2023)..........................................................13, 17, 18

*In re Facebook Priv. Litig.*,
    572 F. App'x 494 (9th Cir. 2014) ....................................................................................21

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) .............................................................................20

*Fideli v. Willoughby*,
    2014 IL App (1st) 133367-U ..............................................................................................8

*Fraser v. Nationwide Mut. Ins. Co.*,
    352 F.3d 107 (3d Cir. 2004)..............................................................................................20

*Frison v. Accredited Home Lenders, Inc.*,
    2011 WL 2729241 (S.D. Cal. July 13, 2011) ..................................................................24

*Garcia v. Enterprise Holdings, Inc.*,
    78 F. Supp. 3d 1125 (N.D. Cal. 2015) ...............................................................................7

*Gilmore v. City of Mattoon*,
    144 N.E.3d 155 (Ill. App. Ct. 2019) .................................................................................24

*Goldstein v. Costco Wholesale Corp.*,
    559 F. Supp. 3d 1318 (S.D. Fla. 2021) .............................................................................19

*Goldstein v. Luxottica of Am., Inc.*,
    2021 WL 4093295 (S.D. Fla. Aug. 23, 2021)..............................................................18, 19

*In re Google Assistant Priv. Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) .............................................................................11

## TABLE OF AUTHORITIES

Page(s)

*In re Google Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015).................................................................13

*In re Google Inc. Gmail Litig.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ...............................15, 16

*In re Google, Inc. Priv. Pol'y Litig.*,
2013 WL 6248499 (N.D. Cal. Dec. 3, 2013)..................................14, 15

*Hall v. EarthLink Network, Inc.*,
3996 F.3d 500 (2d Cir. 2005)...............................................................15

*Halstead v. Motorcycle Safety Found., Inc.*,
71 F. Supp. 2d 455 (E.D. Pa. 1999) .....................................................23

*Hammerling v. Google LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024)...............................................8

*People ex rel. Hartigan v. E & E Hauling, Inc.*,
607 N.E.2d 165 (Ill. 1992).................................................................24

*Hartley v. Univ. of Chicago Med. Ctr.*,
2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) .........................................11

*Hayden v. Bob's Red Mill Natural Foods, Inc.*,
2024 WL 1643696 (N.D. Cal. Apr. 16, 2024) .................................22, 23

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) .........................................21

*Hepp v. Ultra Green Energy Servs., LLC*,
2016 WL 1073070 (N.D. Ill. Mar. 18, 2016)...........................................7

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018) ................................................................8

*Hill v. Nat'l Collegiate Athletic Assn.*,
865 P.2d 633 (Cal. 1994)........................................................................8

*Hogan v. Amazon.com, Inc.*,
2022 WL 952763 (N.D. Ill. Mar. 30, 2022)............................................7

*Holomaxx Techs. Corp. v. Microsoft Corp.*,
2011 WL 3740813 (N.D. Cal. Aug. 23, 2011) ......................................14

*Horist v. Sudler & Co.*, 941 F.3d 274 (7th Cir. 2019) .................................25

## TABLE OF AUTHORITIES

Page(s)

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*,
   2007 WL 4394447 (E.D. Pa. Dec. 13, 2007) ........................................................20

*Jacome v. Spirit Airlines Inc.*,
   2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ..................................................19

*Javier v. Assurance IQ, LLC*,
   2021 WL 3669343 (N.D. Cal. Aug. 6, 2021) ...........................................................9

*Kamath v. Robert Bosch LLC*,
   2014 WL 2916570 (C.D. Cal. June 26, 2014) ........................................................10

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...............................................................................22

*Kirch v. Embarq Mgmt. Co.*,
   702 F.3d 1245 (10th Cir. 2012) ..............................................................................15

*Kurowski v. Rush Sys. for Health*,
   683 F. Supp. 3d 836 (N.D. Ill. 2023) ...............................................................11, 17

*Kwikset Corp. v. Superior Ct.*,
   246 P.3d 877 (Cal. 2011) .......................................................................................20

*Licea v. Cinmar, LLC*,
   659 F. Supp. 3d 1096 (C.D. Cal. 2023) .................................................................17

*Martino v. Transp. Workers' Union of Philadelphia, Loc. 234*,
   480 A.2d 242 (Pa. 1984) ........................................................................................24

*McCauley v. City of Chicago*,
   671 F.3d 611 (7th Cir. 2011) ...............................................................................4, 6

*Nesby v. Country Mut. Ins. Co.*,
   805 N.E.2d 241 (Ill. App. Ct. 2004) ......................................................................24

*Nguyen v. Nissan N. Am., Inc.*,
   2017 WL 1330602 (N.D. Cal. Apr. 11, 2017) ........................................................24

*Peterson v. Cellco P'ship*,
   80 Cal. Rptr. 3d 316 (Ct. App. 2008) ....................................................................23

*Piper Jaffray & Co. v. SunGard Sys. Int'l., Inc.*,
   2007 WL 541679 (D. Minn. Feb. 16, 2007) .............................................................8

## TABLE OF AUTHORITIES

Page(s)

*Pruchnicki v. Envision Healthcare Corp.*,
    845 F. App'x 613 (9th Cir. 2021) .......................................................................21

*Rosenfeld v. Talamantes*,
    2022 WL 2903144 (C.D. Cal. May 23, 2022) ....................................................12

*Russo v. Microsoft Corp.*,
    2021 WL 2688850 (N.D. Cal. June 30, 2021) ....................................................16

*Saeedy v. Microsoft Corp.*,
    2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ...............................................21

*Sapuppo v. Allstate Floridian Ins. Co.*,
    2013 WL 6925674 (N.D. Fla. Mar. 12, 2013) .....................................................8

*Seidl v. Artsana USA, Inc.*,
    643 F. Supp. 3d 521 (E.D. Pa. 2022) .................................................................24

*Silver v. Stripe Inc.*,
    2021 WL 3191752 (N.D. Cal. July 28, 2021).................................................8, 9

*Sloan v. Anker Innovations Ltd.*,
    2024 WL 935426 (N.D. Ill. Jan. 9, 2024) ..........................................................13

*Smith v. Facebook, Inc.*,
    262 F. Supp. 3d 943 (N.D. Cal. 2017) ............................................................8, 9

*Smith v. RecordQuest, LLC*,
    989 F.3d 513 (7th Cir. 2021) .............................................................................24

*Steel Media Grp., LLC v. Lewis*,
    2023 WL 1413043 (S.D. Fla. Jan. 6, 2023) .......................................................24

*Stemmelin v. Matterport, Inc.*,
    2020 WL 6544456 (N.D. Cal. Nov. 7, 2020) .....................................................22

*Sweet v. Google Inc.*,
    2018 WL 1184777 (N.D. Cal. Mar. 7, 2018)........................................................8

*Taha v. Int'l Brotherhood of Teamsters, Local 781*,
    947 F.3d 464 (7th Cir. 2020) .....................................................................4, 7, 11

*Tierney v. Vahle*, 304 F.3d 734 (7th Cir. 2002) ........................................................4

*In re TikTok Inc. Consumer Priv. Litig.*,
    617 F. Supp. 3d 904 (N.D. Ill. 2022) ..................................................................8

# TABLE OF AUTHORITIES

Page(s)

*Toca v. Tutco, LLC*,
  430 F. Supp. 3d 1313 (S.D. Fla. 2020) ...................................................................23

*Toppy v. Passage Bio, Inc.*,
  285 A.3d 672 (Pa. Super. Ct. 2022)......................................................................24

*United States v. Pasha*,
  332 F.2d 193 (7th Cir. 1964) ........................................................................13, 14

*Valentine v. Wideopen W. Fin., LLC*,
  2013 WL 5423846 (N.D. Ill. Sept. 27, 2013) ........................................................16

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ..............................................................................22

*Warth v. Seldin*,
  422 U.S. 490 (1975).............................................................................................10

*Watkins v. United States*,
  854 F.3d 947 (7th Cir. 2017) ...............................................................................11

*Williams v. Rohm & Haas Pension Plan*,
  2003 WL 22271111 (S.D. Ind. Sept. 26, 2003) ....................................................12

*Williamson v. Curran*,
  714 F.3d 432 (7th Cir. 2013) .................................................................................4

*Zak v. Bose*,
  2019 WL 1437909 (N.D. Ill. Mar. 31, 2019)..............................................13, 14, 17

*In re Zantac (Ranitidine) Prod. Liab. Litig.*,
  510 F. Supp. 3d 1141 (S.D. Fla. 2020) ..................................................................24

**Statutes**

720 ILCS 5/14 *et seq*...........................................................................8, 16, 17, 18

18 Pa. C.S. § 5703 *et seq* ............................................................................16, 18

18 Pa. C.S. § 5704 *et seq* ...............................................................................8, 20

18 U.S.C. § 2510 *et seq*........................................................................................14

18 U.S.C. § 2511 *et seq*..................................................................8, 12, 13, 14, 16, 20

Cal. Bus. & Prof. Code § 17200 ...........................................................................22

# **TABLE OF AUTHORITIES**

Page(s)

Cal. Bus. & Prof. Code § 17204 ..................................................................20

Cal. Penal Code § 631 *et seq* ..........................................................8, 16, 17

Cal. Penal Code § 632 *et seq* ..........................................................8, 16, 18

Fla. Stat. § 934.02 *et seq* ..................................................................18, 19

Fla. Stat. § 934.03 *et seq* ..........................................................8, 16, 18

**Other Authorities**

Federal Rules of Civil Procedure Rule 9(b) ....................................................22

Federal Rules of Civil Procedure Rule 11 ....................................................25

Federal Rules of Civil Procedure Rule 12(b)(6) ....................................................4, 8

## <u>INTRODUCTION</u>

This lawsuit spawned from a single blog post written by a purported privacy researcher, Felix Krause, in which he claimed that the TikTok app had the *ability* to record users' keystrokes and screen taps when they browsed websites inside the app. *See* ECF No. 44, Master Consolidated Complaint ("Complaint") ¶¶ 137–41. But in that same blog post Krause expressly and repeatedly cautioned that there was no evidence to suggest the app was *actually recording* the text typed by users or *sending* that data to Defendants. When Defendants responded to the post by explaining that the app did *not* record keystrokes or taps and why this ability was present in the app, Krause found this explanation to be "very reasonable." Yet Plaintiffs ignored Krause's warnings and commenced litigation anyway based on the theory that the TikTok app was, in fact, collecting their keystroke data. Consequently, the Complaint cannot survive dismissal because the very document on which the Complaint relies for its sole support expressly refuses to bridge the legal gap between what is *possible* and what is *plausible*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Moreover, although Defendants did not use the app's in-app browsing feature to collect the text Plaintiffs typed into third-party webpages, the TikTok Privacy Policy notified users that the data they generate when using the app "may" be collected. Because Plaintiffs consented to these terms when they used the app, consent is an independent ground for dismissing their claims. In addition, the Complaint fails to allege individual facts sufficient to demonstrate that each named plaintiff can state a claim and is entitled to relief, providing a third ground for dismissal. Beyond

1

these three general defects, each individual claim suffers various other defects that provide additional grounds for dismissal.

For all of these reasons, the Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS AND ALLEGATIONS

### A. Defendants, the TikTok App, and the Privacy Policy

The TikTok app is an entertainment platform where users can create, view, and share their own videos. *See* Compl. ¶¶ 82–83. Like many apps, the TikTok app allows users to access links to third-party websites posted on the app via an in-app browser feature. *Id.* ¶¶ 1–2, 122. Use of the TikTok app (and all of its features) is subject to a published privacy policy (which is required for all apps published in the major app stores) that must be acknowledged by users. The TikTok Privacy Policy is described and linked on the app stores' pages where users can download the app. *See* Declaration of Anthony J Weibell June 7, 2024 ("Weibell Dec.") ¶¶ 6–7, Exs. 5, 6. After downloading the app, users must agree to the TikTok Terms of Service and acknowledge having read the Privacy Policy before accessing any part of the app. *Id.* ¶¶ 8–9, Exs. 7, 8.

Defendant TikTok Inc. provides the TikTok app in the United States. *See* Compl. ¶ 15. Plaintiffs have sued three other entities that do not provide the TikTok app in the United States: ByteDance Inc., ByteDance Ltd., and Beijing Douyin Information Service Co. Ltd. a/k/a ByteDance Technology Co. Ltd. *Id.* ¶¶ 16, 18, 19. Only the two defendants that have been served (TikTok Inc. and ByteDance Inc.) are referred to herein as "Defendants." The two foreign entities (ByteDance Ltd. and Beijing Douyin Information Service Co. Ltd. a/k/a ByteDance Technology Co. Ltd.) have not been served, have not appeared in this action, and do not operate the TikTok app in the United States.

### B. Plaintiffs, the Krause Post, and the Complaint

Plaintiffs are alleged users of the TikTok app. Compl. ¶¶ 5–14. Each alleges that they clicked on a link in the TikTok app that opened a website within the app using the in-app browsing feature. *Id.* They allege that this enabled the app to record their "keystroke[s]" and "tap[s] on any button." *Id.* ¶ 180. They further allege that Defendants used this ability to obtain their "website activities and purchases," including personal, contact, credit card, and banking information, and a Social Security number. *Id.* ¶¶ 5–14.

Plaintiffs' case is based entirely on a blog post. In August 2022, a self-styled software researcher named Felix Krause posted a series of blog posts describing how in-app browsers used by numerous popular apps (like Facebook, Instagram, etc.) can potentially track the keystrokes of users when browsing webpages in those apps. *See* Compl. ¶¶ 137 n.156, 137–42; Weibell Dec. Ex. 1 ("Krause Post"). Specific to this case, Krause authored one blog post that said the TikTok in-app browsing feature used software code that "subscribes to" "all keyboard inputs . . . and every tap on the screen." Weibell Dec. Ex. 1 at 4.

But Krause expressly and repeatedly cautioned that there was no evidence to suggest the TikTok app was *actually recording* that data on the user's device or *sending* that data to Defendants' servers, exclaiming: "Do the apps above actually steal my passwords, address and credit card numbers? No!" "[t]here is no way to verify what happens with the data," and "[t]here is no way for us to know the full details on what kind of data each in-app browser collects, or how or if the data is being transferred or used." *Id.* at 3, 4, 6.

Despite the caution from Krause not to jump to conclusions, Plaintiffs filed suit, asserting 15 causes of action based on their misinterpretation of the Krause Post: violations of the federal Electronic Communications Privacy Act ("Wiretap Act"), California's Unfair Competition Law ("UCL") and California Invasion of Privacy Act ("CIPA"), the Florida Security of

Communications Act ("FSCA"), the Illinois Eavesdropping Act ("IEA"), the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA"), and unjust enrichment under California, Florida, Illinois, and Pennsylvania law. Compl. ¶¶ 196–378.

## ARGUMENT

### I. LEGAL STANDARD

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. As the Supreme Court has mandated: "a plaintiff armed with nothing more than conclusions" may "not unlock the doors of discovery." *Id.* at 678–79. A complaint must thus allege non-conclusory facts that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Complaints should be dismissed if they lack "'specific facts' to support the legal claims asserted." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). "Sheer speculation, bald assertions, and unsupported conclusory statements" do not suffice. *Taha v. Int'l Brotherhood of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). And "[i]f the allegations give rise to an 'obvious alternative explanation,'" the pleading "stop[s] short" of a plausible claim. *McCauley*, 671 F.3d at 616 (citations omitted).

Nor should the Court accept as true allegations contradicted by documents incorporated by reference or by facts subject to judicial notice. "[T]his circuit has taken a relatively expansive view of the documents that a district court properly may consider in disposing of a motion to dismiss," including both documents incorporated by reference and facts or documents subject to judicial notice. *Williamson v. Curran*, 714 F.3d 432, 436, 443 (7th Cir. 2013). The rule "prevents a plaintiff from 'evading dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proves his claim has no merit.'" *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)).

## II. THIS ACTION SHOULD BE DISMISSED BECAUSE IT IS BASED ENTIRELY ON A DOCUMENT THAT ADMITS THERE IS NO EVIDENCE TO SUPPORT THE CLAIMS ALLEGED

Plaintiffs' Complaint depends entirely on their allegation—based on Krause—that "[a]nything that a user does via the in-app browser is recorded and copied by Defendants."[1] Compl. ¶ 140. But Krause never states that the alleged data was ever transmitted to Defendants, only that the TikTok app "subscribe[d]" (had access) to this data on a user's device. Weibell Dec. Ex. 1 at 4. Moreover, the Krause Post cautions readers not to jump to the conclusion that this data was sent by the app to Defendants: "Do the apps above actually steal my passwords, address and credit card numbers? *No!* I wanted to showcase that bad actors *could* get access to this data with this approach." *Id.* at 6 (emphasis added).

The Krause Post repeats this disclaimer over and over to caution readers not to misconstrue Krause's research to support incorrect allegations like those made in the Complaint, explaining that we "can't know what TikTok uses [this code] for," and that "[j]ust because an app injects JavaScript into external websites, doesn't mean the app is doing anything malicious." *Id.* at 3, 4. Krause further adds this explanation: "When I talk about '*App subscribes to*', I mean that the app subscribes to the JavaScript events of that type (e.g. all taps). There is no way to verify what happens with the data." *Id.* at 4. In other words, when Krause uses the word "subscribe," he is only saying that the TikTok *app* has the *ability* to access keystroke values through the JavaScript code, not that the app actually *records* this data or ever transmits the data off of a user's device, let alone that any *company*—including Defendants—ever receives this data from the app. Were it even

---

[1] The Complaint quotes from and incorporates the Krause Post by reference. *See* Compl. ¶¶ 137–41. This post, focusing on the TikTok app, was an update to an earlier post made on August 10, 2022 (*id.* ¶ 137 n.156) that focused on Instagram and Facebook. *See* Weibell Dec. Ex. 1 at 1. The Complaint erroneously cites the earlier blog post even though it quotes from and relies upon the later Krause Post. *See* Compl. ¶¶ 137 n.156, 137–41.

possible for the ordinary person to remain confused about this, the Krause Post says it again: "*There is no way for us to know the full details on what kind of data each in-app browser collects, or how or if the data is being transferred or used*." *Id.* at 3 (emphasis added).

In addition to the Krause Post itself, a *Forbes* article cited by Plaintiffs (*see* Compl. ¶ 141 n.158) quotes Krause explaining that "the research *does not show* that these companies are actually using that code to *collect* data, *send it to their servers* or *share* it with third parties." *See* Richard Nieva, *TikTok's In-App Browser Includes Code That Can Monitor Your Keystrokes, Research Says*, Forbes (Aug. 18, 2022) (emphasis added), https://www.forbes.com/sites/richardn ieva/2022/08/18/tiktok-in-app-browser-research/?sh=46b2d6f57c55. [2] In fact, the Krause Post includes a statement from TikTok Inc. explaining that the JavaScript is not used for keystroke logging but rather "only for debugging, troubleshooting and performance monitoring of that experience—like checking how quickly a page loads or whether it crashes." Weibell Dec. Ex. 1 at 4. In a subsequent interview on CBS News, Krause stated that this explanation "sounds very reasonable." *TikTok's in-app browser can monitor user activity, research says*, CBS News (Aug. 22, 2022), https://www.youtube.com/watch?v=_im23Ccq5wo. This "obvious alternative explanation" alone is grounds for dismissal. *See McCauley*, 671 F.3d at 616.

And when asked "Is there any way to tell which information TikTok or any of these other apps have actually been tracking?" Krause responded that his publications *"do not prove or talk about the data that is actually being tracked,"* and that the only thing he "was able to prove is that there are systems in place to do some additional tracking so it would allow those companies

---

[2] After its original report, *Forbes* released another article, conceding that "there is no evidence [that] TikTok is actually [collecting the data at issue]." *See* Richard Nieva & Thomas Brewster, *Lawmakers Press Apple and Google Over TikTok's Keystroke Tracking Ability*, Forbes (Nov. 4, 2022), https://www.forbes.com/sites/richardnieva/2022/11/04/lawmakers-letter-apple-google-tiktok-keystroke-tracking/?sh=5ec8859d41a6. The Court may take judicial notice of this article. *See supra* Section I.

to track additional data." CBS News, *supra* p. 6 (emphasis added); *see also* Stan Schroeder, *TikTok's in-app browser can monitor every keystroke*, Mashable (Aug. 19, 2022), https://mashable.com/article/tiktok-browser-monitoring ("Krause explained that his report 'doesn't say TikTok is actually recording and using this data.'").[3]

All of Plaintiffs' claims depend on Defendants' alleged collection of the text they typed with keystrokes and screen taps via the in-app browser. *See* Compl. ¶¶ 203–04, 219, 248, 326–28, 347, 364–65. They rely on Krause for that fundamental allegation, but Krause makes clear that his research does not support the allegation. In short, the Krause Post does not push Plaintiffs' claims "across the line from conceivable to plausible," *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570), and the Court must "reject" the "sheer speculation" and "unsupported conclusory statements" that are left. *Taha*, 947 F.3d at 469.

## III.   PLAINTIFFS' CONSENT DEFEATS THEIR CLAIMS

The Complaint also fails as a matter of law because the TikTok Privacy Policy discloses, and Plaintiffs consented to, the *potential* collection of the data at issue (even where Defendants did not *actually* collect it through the TikTok in-app browser as alleged).[4] Indeed, the order approving the prior settlement in this MDL justified that settlement because the TikTok Privacy Policy "disclose[d] the ways in which Defendants collect, use, and share data and information

---

[3] The Court may take judicial notice of "the fact that [articles] were published and that they say what they say." *See Butler v. Hogshead-Makar*, 2023 WL 4663644, at *6 (N.D. Ill. July 20, 2023).

[4] The Court may consider the Privacy Policy because the Complaint refers to it repeatedly, *see* Compl. ¶¶ 119, 180, 248, 302, it is central to Plaintiffs' claims, and it is subject to judicial notice. *See supra* Section I (explaining what documents may be considered on a motion to dismiss); *see also Hogan v. Amazon.com, Inc.*, 2022 WL 952763, at *3 (N.D. Ill. Mar. 30, 2022) (terms of service incorporated because they "govern[ed] the usage of all Amazon Services," including the one at issue); *Hepp v. Ultra Green Energy Servs., LLC*, 2016 WL 1073070, at *2 n.1 (N.D. Ill. Mar. 18, 2016) (considering "the contents of web pages available through the Wayback Machine" (citation omitted)); *Garcia v. Enterprise Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (taking judicial notice of documents demonstrating that to use defendant's service, plaintiff "necessarily had to agree" to relevant policies).

submitted by App users." *In re TikTok Inc. Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 936 (N.D. Ill. 2022). The same is true here.

"[N]o wrong is done to one who consents." *Hill v. Nat'l Collegiate Athletic Assn.*, 865 P.2d 633, 648 (Cal. 1994). As a result, a user's consent to challenged data collection is an "absolute defense" to any claims arising out of that collection. *Baugh v. CBS, Inc.*, 828 F. Supp. 745, 757 (N.D. Cal. 1993). "Consideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim" (as it is here). *Silver v. Stripe Inc.*, 2021 WL 3191752, at *2 (N.D. Cal. July 28, 2021). Thus, courts dismiss claims on a Rule 12(b)(6) motion where the alleged collection was disclosed. *See Hammerling v. Google LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (dismissal of privacy and other claims appropriate because Google's privacy policy "expressly disclosed" alleged collection); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953–56 (N.D. Cal. 2017), *aff'd*, 745 Fed. App'x 8, 8–9 (9th Cir. 2018) (broad yet unambiguous disclosure that company "collect[s] information" when users browsed third-party websites sufficient to dismiss privacy claims). Consent bars all of the claims at issue here.[5]

Plaintiffs' allegations recognize that Defendants were free to collect data according to the practices disclosed in the TikTok Privacy Policy, but complain that "[n]owhere in Defendants' Terms of Service or the privacy policies is it disclosed that Defendants [collect] a complete record of every keystroke, every tap on any button, link, image or other component on any website, and details about the elements the users clicked." Compl. ¶ 180. The actual document contradicts

---

[5] *See* 18 U.S.C. § 2511(2)(c)–(d) (Wiretap Act); Cal. Penal Code §§ 631(a), 632(a) (CIPA); Fla. Stat. § 934.03(2)(d) (FSCA); 720 ILCS 5/14-2(a)(3) (IEA); 18 Pa. C.S. § 5704(4) (WESCA); *Sweet v. Google Inc.*, 2018 WL 1184777, at *10 (N.D. Cal. Mar. 7, 2018) (UCL); *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 n.6 (9th Cir. 2018) (California unjust enrichment); *Sapuppo v. Allstate Floridian Ins. Co.*, 2013 WL 6925674, at *6 (N.D. Fla. Mar. 12, 2013) (Florida unjust enrichment), *aff'd*, 739 F.3d 678, 680 (11th Cir. 2014); *Fideli v. Willoughby*, 2014 IL App (1st) 133367-U, ¶¶ 10, 14–15 (Illinois unjust enrichment); *Piper Jaffray & Co. v. SunGard Sys. Int'l., Inc.*, 2007 WL 541679, at *9–10 (D. Minn. Feb. 16, 2007) (Pennsylvania unjust enrichment).

Plaintiffs' allegation. The Privacy Policy expressly discloses that the app "may collect information from and about you," including "information from you when you use the Platform," such as user-generated "text," "internet or other network activity," and "browsing and search history." Weibell Dec. Ex. 4 at 1–3 (TikTok Privacy Policy, March 28, 2024). To the extent the app used keystroke *pattern* data (the *timing* of when keys are pressed, not *what* keys are pressed) "for debugging, troubleshooting and performance monitoring of that experience," as admitted by Defendants (Weibell Dec. Ex. 1 at 4), that was expressly disclosed in the Privacy Policy: "We collect . . . keystroke patterns or rhythms" (Weibell Dec. Ex. 4 at 4). The policy further explains that Defendants may share collected data with service providers, business partners, and members of the corporate group, any of whom "may be located outside of the United States." *Id.* at 7, 11.

Contrary to the suggestion in the Complaint, companies are not expected to detail every possible mechanism by which data is collected from users, nor could they feasibly do so in a policy designed to be read by lay persons. That is why courts regularly dismiss privacy class actions contradicted by the defendant's privacy policy, even where the disclosures were far less detailed than the TikTok Privacy Policy. *See, e.g.*, *Smith*, 262 F. Supp. 3d at 953–56; *Silver*, 2021 WL 3191752, at *4–5 (disclosure that company collected "information about [users'] online activity" enough to establish user consent); *Javier v. Assurance IQ, LLC*, 2021 WL 3669343, at *1–3 (N.D. Cal. Aug. 6, 2021) (disclosure that company collected "personal information" including "personal and family health information" provided sufficient notice of collection of "keystrokes, mouse clicks, and other electronic communications"), *rev'd on other grounds*, 2022 WL 1744107 (9th Cir. May 31, 2022).

Because the TikTok Privacy Policy disclosed a detailed list of the categories of data that could be collected, including categories that cover the data alleged in the Complaint, Plaintiffs' consent to the Privacy Policy defeats their claims.

## IV.   THE CLAIMS SHOULD BE DISMISSED FOR LACK OF PERSONAL ALLEGATIONS SHOWING EACH PLAINTIFF CAN STATE A CLAIM

The Complaint should be dismissed because Plaintiffs do not plead individualized facts sufficient to show that each named plaintiff can personally state a claim.

To survive dismissal, a complaint must allege facts sufficient to show a plausible theory that the named plaintiff has suffered injury and is individually entitled to relief. *See Iqbal*, 556 U.S. at 678. And each named plaintiff must demonstrate "that they personally have been injured, not that injury has been suffered by other, unidentified members of the class." *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (district court properly dismissed putative class action where none of the individual plaintiffs alleged facts showing a personal particularized injury). Thus, "at the motion to dismiss stage, the Court only considers allegations pertaining to the named plaintiff because a putative class action cannot proceed unless the named plaintiff can state a claim for relief as to himself." *Kamath v. Robert Bosch LLC*, 2014 WL 2916570, at *5 n.4 (C.D. Cal. June 26, 2014) (citing cases).

Plaintiffs' claims rest on barebones, identical assertions. They allege to be TikTok app users who clicked on links in the app that led them to visit websites using its in-app browser. They each then jump to the conclusion that Defendants thereby purportedly collected their personal, contact, credit card, or banking information (and allegedly one Plaintiff's Social Security number). *See* Compl. ¶¶ 5–14. Such allegations are incomplete and fall short of stating a plausible claim because not every website visit involves the use of one's personal, contact, credit card, banking, and social security data. Nowhere do Plaintiffs specify any action they took on any website to type

10

in this data. Nor do they identify any specific website they visited. Without these basic facts, the Court is left with "unsupported conclusory statements" that Defendants collected personal and financial information from Plaintiffs. *Taha*, 947 F.3d at 469.

Courts regularly dismiss claims based on similarly vague allegations. In *Kurowski v. Rush Sys. for Health*, for instance, plaintiffs offered detailed allegations about the relevant technology, the third parties to whom the defendant purportedly disclosed data and the applicability of relevant laws. *See* First Am. Class Action Compl. ¶¶ 16–271, *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023) (No. 1:22–cv–05380), 2023 WL 6163903.[6] As to themselves, however, they alleged only that they were users of defendant's online patient portal. *See id.* ¶¶ 8–9. The court found these allegations "far too vague to allow an inference to be drawn that [defendant] was actually [collecting and] disclosing" plaintiffs' health data. *Kurowski*, 683 F. Supp. 3d at 843. Without "any particular health or treatment information disclosure specific as to them," plaintiffs' Wiretap Act claim failed. *Id.*; *see also, e.g.*, *Hartley v. Univ. of Chicago Med. Ctr.*, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023) (general allegations about disclosures insufficient in the face of "an absolute dearth of information specific to Plaintiff"); *Cook v. GameStop, Inc.*, 2023 WL 5529772, at *7 (W.D. Pa. Aug. 28, 2023) (Wiretap Act claim failed because complaint "lack[ed] critical necessary details," such as what keystrokes plaintiff entered and what she clicked); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 817 (N.D. Cal. 2020) (dismissing claims in the absence of "any facts" about the allegedly intercepted communications).

---

[6] The Court may take judicial notice of pleadings filed in separate actions. *See Watkins v. United States*, 854 F.3d 947, 950 (7th Cir. 2017).

Plaintiffs attempt to cure these defects in their claims with allegations about certain websites that *could* be visited via the TikTok app. For instance, they devote nine pages to allegations about Planned Parenthood and BetterHelp. *See* Compl. ¶¶ 144–54. But no Plaintiff alleges they visited either website via the app; they merely suggest that some users may have. *See id.* ¶¶ 5–14, 144–54. These allegations thus cannot save Plaintiffs' claims. *Williams v. Rohm & Haas Pension Plan*, 2003 WL 22271111, at *4 (S.D. Ind. Sept. 26, 2003); *Rosenfeld v. Talamantes*, 2022 WL 2903144, at *13 (C.D. Cal. May 23, 2022).

## V.  EACH INDIVIDUAL CLAIM SHOULD BE DISMISSED FOR SEPARATE DEFICIENCIES

Each individual claim also fails for the additional reasons explained below.

### A.  Plaintiffs Fail to State a Federal Wiretap Act Claim

The federal Wiretap Act prohibits the unauthorized "interception" of the contents of an "electronic communication" by those who are not parties to the communication. *Bartnicki v. Vopper*, 532 U.S. 514, 523–24 (2001); 18 U.S.C. §§ 2511(1)(a), (2)(c)–(d). Plaintiffs allege that the JavaScript code in the TikTok in-app browser constitutes a "device or apparatus" by which Defendants collect users' keystrokes and button clicks, thus intercepting their communications with third-party websites. Compl. ¶ 203. Plaintiffs' federal wiretapping claim fails on several independent grounds. As a threshold matter, Plaintiffs have not identified a single, actual communication that was allegedly collected *from them*, as required to state a wiretapping claim. Even if they had, as a known party to any communications, Defendants[7] cannot be liable for wiretapping. The alleged conduct also falls under the Wiretap Act's "ordinary course of business"

---

[7] Plaintiffs allege that both Defendants operate and receive data from the TikTok app. *See* Compl. ¶¶ 15–16, 23. This is not true; TikTok Inc. is the entity that provides the app. If it were true, however, both Defendants would be party to any communications and thus exempt from liability under the Wiretap Act.

exception and is thus exempt from liability. And because there was no interception, no claim can lie for the disclosure or use of intercepted information.

### 1. *Plaintiffs Have Not Alleged Their Own Communications Were Collected*

A Wiretap Act claim requires the plaintiff to allege that their communications were intercepted by a third-party interloper. *Esparza v. Lenox Corp.*, 2023 WL 2541352, at *3 (N.D. Cal. Mar. 16, 2023). Plaintiffs do not clear this fundamental threshold because they do not establish that Defendants collected any keystroke or button click data or sufficiently allege their own communications were collected. *See supra* Sections II, IV.

### 2. *Defendants Were a Party to Any Communications*

"[B]y definition, parties to a conversation cannot eavesdrop on their own conversation." *Esparza*, 2023 WL 2541352, at *3. Thus, the Wiretap Act exempts from liability anyone who is "a party to the communication." 18 U.S.C. § 2511(2)(d). "A party to the conversation is one who takes part in the conversation." *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 143 (3d Cir. 2015). Thus, if the communication "necessarily requires" the defendant's involvement, that defendant is a party. *Sloan v. Anker Innovations Ltd.*, 2024 WL 935426, at *4 (N.D. Ill. Jan. 9, 2024) (because communications between users and home security device flowed through defendants' app, defendants were party to communications); *see also Zak v. Bose*, 2019 WL 1437909, at *3–4 (N.D. Ill. Mar. 31, 2019) (similar). This is true "even if the defendant was not an intended participant, and even if the defendant became a participant 'through a fraud in the inducement.'" *Zak*, 2019 WL 1437909, at *3 (quoting *In re Google Cookie Placement*, 806 F.3d at 143); *accord United States v. Pasha*, 332 F.2d 193, 198 (7th Cir. 1964) (defendants remain parties to a communication even if they impersonate the intended receiver).

Defendants were a party to any alleged communications because the in-app browser was necessary to facilitate those communications. Each Plaintiff alleges that they "clicked on links" in

the TikTok app that opened third-party websites in its in-app browser. Compl. ¶¶ 5–14. There is no way for an Internet user to interact with a website other than via a browser, so any "communication" Plaintiffs had necessarily required the in-app browser's involvement. Plaintiffs even emphasize the necessity of the TikTok in-app browser in facilitating these purported communications: "[W]hen these links are clicked, there is no option to open the website via any browser other than Defendants' in-app browser." *Id.* ¶ 129. Plaintiffs' allegations that they believed they were using another browser, or not using a browser at all,[8] *see id.* ¶ 122, are irrelevant. Defendants would still be a party regardless of belief. *See Zak*, 2019 WL 1437909, at *3; *Pasha*, 332 F.2d at 198. Thus, Plaintiffs' Wiretap Act claim fails.

### 3. The Alleged Conduct Is Within Defendants' Ordinary Course of Business

The Wiretap Act exempts from liability an electronic communication service provider whose "ordinary course of business" involves providing a "device" (such as software) to its users and collecting communications through that device. *See In re Google, Inc. Priv. Pol'y Litig.*, 2013 WL 6248499, at *10 (N.D. Cal. Dec. 3, 2013); 18 U.S.C. § 2510(5)(a)(ii). Under a related exception, the Wiretap Act exempts from liability any officer, employee, or agent of an electronic communication service provider who collects that communication in the "normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of that service." 18 U.S.C. § 2511(2)(a)(i). This exception applies to service providers as well as their employees and similarly applies here. *See Holomaxx Techs. Corp. v. Microsoft Corp.*, 2011 WL 3740813, at *3

---

[8] Plaintiffs' assertion that users "do not realize that they are following a hyperlink to an external site [and] utilizing a browser," Compl. ¶ 122, if anything, underscores that Defendants' presence was known: if users did not realize they were visiting an external site or using a browser, logic dictates that they believed that they were still in the TikTok app.

(N.D. Cal. Aug. 23, 2011) (applies to corporations); *In re Google, Inc. Priv. Pol'y*, 2013 WL 6248499, at *10 n.86 (both exceptions applied, as they are "similar[]").

There are competing views on whether this exception should be interpreted narrowly or broadly, and the Seventh Circuit has not yet taken sides. But either interpretation exempts Defendants from liability. Some courts hold that the exception should be construed to encompass all activities that further a legitimate business purpose, including advertising. *See, e.g.*, *In re Google, Inc. Priv. Pol'y*, 2013 WL 6248499, at *10–11 (focusing on Congress's deliberate use of the broad terms "business" and "ordinary course") (citing *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1247, 1250–51 (10th Cir. 2012); *Hall v. EarthLink Network, Inc.*, 3996 F.3d 500, 504–05 (2d Cir. 2005)). Under this view, Defendants would be exempt even under Plaintiffs' mistaken theory that the alleged collection was related to targeted advertising. *See id.* at *10 (dismissing claim because activities "concerning Google's core targeted advertising [are] within its business's ordinary course").

Other courts hold that the exception should apply only if the interception "facilitates the transmission of the communication at issue or is incidental to the transmission of such communication." *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *8 (N.D. Cal. Sept. 26, 2013).[9] Under this narrow interpretation, the alleged collection still falls within the exception because the only actual data collection recognized by the Krause Post was Defendants' admitted collection of data "for debugging, troubleshooting and performance monitoring." *See supra* Section II; Weibell Dec. Ex. 1 at 4. Those activities are "an instrumental component of" the "operation of a functional" in-app browser. *In re Google Inc. Gmail*, 2013 WL 5423918, at *8; *see*

---

[9] *In re Google, Inc. Privacy Policy* disagrees with *In re Google Inc. Gmail*, noting that the latter addressed "allegations that Google's practices violated its own internal policies, further establishing that its actions are outside the course of its business." 2013 WL 6248499, at *11. No such allegations are present here.

*also id.* at *10 (Congress intended to ensure "providers could appropriately route, terminate, and manage messages"). As such, the alleged interception facilitates the transmission of any communication between Plaintiffs and third-party websites via the in-app browser and is thus exempt from liability. *See Russo v. Microsoft Corp.*, 2021 WL 2688850, at *4–5 (N.D. Cal. June 30, 2021) (collection of data "necessary to provide" features that are "necessarily incident" to provision of Office software exempt); *Backhaut v. Apple Inc.*, 148 F. Supp. 3d 844, 851 (N.D. Cal. 2015) (interception of iMessages within Apple's ordinary course of business under narrow construction).

### 4. *Without an Interception, Defendants Cannot Have Disclosed or Used Intercepted Communications*

Plaintiffs assert claims under Sections 2511(1)(c) and (d) of the Wiretap Act, which prohibit the disclosure and use of communications intercepted in violation of subsection (a), respectively. *See* Compl. ¶¶ 197–210. Plaintiffs have not plausibly alleged any interception, so those claims fail. *See Valentine v. Wideopen W. Fin., LLC*, 2013 WL 5423846, at *6 (N.D. Ill. Sept. 27, 2013).

### B. Plaintiffs Fail to State Any State Law Wiretapping or Eavesdropping Claim

Plaintiffs assert wiretapping and eavesdropping claims under the wiretapping and eavesdropping statutes of California (CIPA), Illinois (IEA), Florida (FSCA), and Pennsylvania (WESCA). These claims should be dismissed for several independent reasons.

### 1. *No "Communications" or "Conversations" Were Collected, So All State Claims Fail*

As under the federal Wiretap Act, each of the four state statutes requires the interception or recording of Plaintiffs' "communications" or "conversations." *See* Cal. Penal Code §§ 631(a), 632(a); Fla. Stat. § 934.03(1)(a)–(e); 720 ILCS 5/14-2(a)(3), (a)(5); 18 Pa. C.S. § 5703. For the

16

reasons described above, *see supra* Section V.A.1, all state claims fail because Plaintiffs have not adequately alleged that any of *their own* communications were collected.

### 2.   There Was No "Interception," So the CIPA 631 and IEA Claims Fail

Section 631 of CIPA prohibits using electronic means to "learn the contents or meaning" of any "communication" in an "unauthorized manner," with an exemption from liability for any "party" to a communication. Cal. Penal Code § 631(a).[10] Similarly, the IEA makes it unlawful to "intercept[], record[], or transcribe[], in a surreptitious manner, any private electronic communication to which he or she is not a party." 720 ILCS 5/14-2(a)(3).

**Defendants Were A Party to Any Communications.** Like the Wiretap Act, both CIPA and IEA exempt from liability any "party" to a communication. *Esparza*, 2023 WL 2541352, at *3 (CIPA); *Kurowski*, 683 F. Supp. 3d at 853 (IEA). The definition of "party" under CIPA and IEA comports with the meaning of "party" under the Wiretap Act. *See Esparza*, 2023 WL 2541352, at *3 (CIPA); *Zak*, 2019 WL 1437909, at *5 (IEA). For the reasons explained above, *see supra* Section V.A.2, Defendants were a party and thus could not intercept these communications.

**Without an Interception, There Can Be No Disclosure or Use of Intercepted Communications.** Plaintiffs allege violations of CIPA and IEA under provisions that penalize the disclosure and use of intercepted communications. *See* Compl. ¶¶ 283, 345. CIPA Section 631 penalizes those "who use[], or attempt[] to use" information obtained in violation of its prohibition on interception. Cal. Penal Code § 631(a). Similarly, IEA imposes liability on those who "[u]se[] or disclose[]" information obtained in violation of the statute. 720 ILCS 5/14-2(a)(5). As under the

---

[10] Plaintiffs cannot assert a claim under the first prong of Section 631(a), which imposes liability on one who "taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument," *see* Compl. ¶ 228. "Courts have consistently interpreted this clause as applying only to communications over telephones and not through the internet." *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1104 (C.D. Cal. 2023) (collecting cases).

Wiretap Act, the disclosure and use claims fail without an underlying interception. *See Esparza*, 2023 WL 2541352, at *2 (CIPA); 720 ILCS 5/14-2(a)(5) (IEA).[11]

### 3. No "Confidential" or "Private" Communications Were Collected, So the CIPA 632, FSCA, and IEA Claims Fail

CIPA Section 632, FSCA, and IEA impose liability only on one who eavesdrops upon, records, or intercepts a "confidential" or "private" communication. *See* Cal. Penal Code § 632(a) ("confidential communication"); *Goldstein v. Luxottica of Am., Inc.*, 2021 WL 4093295, at *2 (S.D. Fla. Aug. 23, 2021) (FSCA requires "a reasonable expectation of privacy in the underlying communication"), *report and recommendation adopted*, 2021 WL 4125357 (S.D. Fla. Sept. 9, 2021); 720 ILCS 5/14-2(a)(3), (a)(5) ("private electronic communication").

Because Plaintiffs have not adequately alleged that their private communications were collected, *see supra* Section IV, their allegations at most give rise to an inference that they browsed consumer websites via the TikTok in-app browser. *See* Compl. ¶ 132 ("[t]hese types of links are commonly used to direct users to additional information, merchandise websites, and/or shopping experiences"). This type of "public shopping behavior"—whether in person or online—does not give rise to a "reasonable expectation of privacy." *Cook*, 2023 WL 5529772, at *5, *10.

### 4. The FSCA Claim Fails for Multiple Independent Reasons

The FSCA prohibits the interception of the "contents" of a "communication." *See* Fla. Stat. § 934.02(3). Plaintiffs' claim under the FSCA fails for three independent reasons.

**The FSCA Does Not Apply to Plaintiffs' Claim.** As a threshold matter, courts have made clear that the FSCA does not apply to claims regarding software that records a user's movement

---

[11] Although FSCA and WESCA do not include a party exemption, to the extent that the Court finds no interception under these statutes, Plaintiffs' disclosure and use claims under the same statutes, *see* Compl. ¶¶ 323, 329, 359, 369, should also be dismissed. *See* Fla. Stat. § 934.03(1)(b)–(e) (prohibiting "use[]" or "disclos[ure]" of information "obtained through the interception"); 18 Pa. C.S. § 5703(2)–(3) (same).

on and interaction with a website (i.e., session replay). This is because the FSCA was not intended to "extend to the use of commonplace analytics software to improve a website browsers' experience." *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *2–3 (Fla. Cir. Ct. June 17, 2021). As the Krause Post acknowledges, that is the exact purpose of any collection of data in the in-app browser. *See* Weibell Dec. Ex. 1 at 4. Courts regularly dismiss virtually identical allegations for this reason alone. *See, e.g.*, *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1320 (S.D. Fla. 2021) (collecting cases); *Connor v. Whirlpool Corp.*, 2021 WL 3076477, at *2 (S.D. Fla. July 6, 2021).

**Plaintiffs Do Not Allege an Interception of "Contents."** The FSCA prohibits the interception of the "contents" of a communication. *See* Fla. Stat. § 934.02(3). As defined in the statute, the "contents" of a communication "includes any information concerning the substance, purport, or meaning of that communication." *Id.* § 934.02(7).

Plaintiffs allege that Defendants collected through the in-app browser "every keystroke, every tap [and] the details about the elements users clicked on." Compl. ¶ 326. Even if true (it is not), "these actions [do] not convey the substance of any communication" under Florida law. *Costco Wholesale Corp.*, 559 F. Supp. 3d at 1321 (dismissing session replay FSCA claim). They are "the cyber analog to record information Defendant[s] could have obtained through a security camera at a brick-and-mortar store." *Id.*

**Plaintiffs Do Not Allege an Interception of "Communications."** The FSCA expressly excludes from its purview "[a]ny communication from an electronic or mechanical device which permits the tracking of the movement of a person or an object." Fla. Stat. § 934.02(12)(c). Under this exception, courts have held that "the plain language of the statute exempts the sort of tracking that triggered this action." *Costco Wholesale Corp.*, 559 F. Supp. 3d at 1321; *see also Luxottica of*

19

*Am., Inc.*, 2021 WL 4093295, at *2 (dismissing FSCA claim based on session replay because "the software fell within" this exception). The FSCA claim fails for this additional reason.

### 5. *The Alleged Collection Falls Within the Service Provider Exception, So the WESCA Claim Fails*

WESCA has a service provider exception that mirrors the Wiretap Act's. *See Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2007 WL 4394447, at *5–6 (E.D. Pa. Dec. 13, 2007) (18 U.S.C. § 2511(2) and 18 Pa. C.S. § 5704(1) are the "same"). Where WESCA converges with the federal Wiretap Act, the analysis of the two statutes is the same. *See Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 n.6 (3d Cir. 2004) (WESCA is "interpreted in the same way as the [Wiretap Act], [and] the analysis and conclusions in the text apply equally to this state law claim"). This exception applies for the same reasons the federal law's ordinary course of business and service provider exceptions apply. *See supra* Section V.A.3.

### C. Plaintiffs Fail to State a UCL Claim

#### 1. *Plaintiffs Do Not Have UCL Standing*

Courts regularly dismiss UCL claims in data privacy cases for lack of standing where plaintiffs do not allege an actual economic injury, and this case should be no different. Standing under the UCL is "substantially narrower" than under Article III. *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 886 (Cal. 2011). It requires a plaintiff to demonstrate they "lost money or property as a result" of the alleged conduct. Cal. Bus. & Prof. Code § 17204. "Purely hypothetical" injuries are insufficient. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019).

Plaintiffs allege that they suffered injury because Defendants collected, used, and profited from Plaintiffs' data, which has "value" that companies are willing to pay for, without paying for it. Compl. ¶¶ 308–11. "But just because Plaintiffs' data is valuable in the abstract, and because

[defendant] might have made money from it," does not mean they lost money or property. *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023). This is because, as case after case holds, "the 'mere misappropriation of personal information' does not establish compensable damages." *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021) (citation omitted); *see also In re Facebook Priv. Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014) ("dissemination of [] personal information" insufficient to establish UCL standing).

To establish UCL standing in this context, Plaintiffs must plausibly allege "how they have lost value from the loss of their data, or lost profit from the sale of their data without compensation, or how they were prevented from deriving economic benefit from their data." *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *6 (W.D. Wash. Dec. 21, 2023); *see also Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) (no UCL standing where plaintiff failed to allege a market for his data or impairment of his ability to participate in it).

Plaintiffs do not come close to this standard. They do not identify any market for data about their keystrokes and button clicks on any website. Nor do they allege any attempt they made to sell that data, or any way in which an attempted sale was impaired by Defendants' alleged collection of that data. Instead, Plaintiffs resort to citing press reports and surveys about the value of personal information *in general*. Compl. ¶¶ 160–64. These generalized reports cannot establish any possible loss of money *to Plaintiffs*. *See Bass*, 394 F. Supp. 3d at 1040 (dismissing UCL claim because plaintiff only showed that information has "external value" but not "economic value to plaintiff"). The fact that unrelated parties like Meta have paid for types of data not even at issue here (videos, smartphone usage data, and unspecified "personal data"), *see* Compl. ¶¶ 165–66, is irrelevant: this does not demonstrate a market for the keystroke data alleged here, much less any actual economic injury suffered by Plaintiffs as a result.

21

### 2. *Plaintiffs Do Not Allege Any Unlawful, Unfair or Fraudulent Conduct*

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiffs have not adequately alleged any such act or practice.

**Fraudulent Prong.** A UCL claim brought under the fraudulent prong must be pled with particularity in order to meet Rule 9(b)'s heightened pleading standard. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). This requires Plaintiffs to specifically allege "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

Plaintiffs allege they and the putative class were deceived by Defendants' failure to disclose the existence of the TikTok in-app browser and the alleged insertion of the JavaScript code therein. Compl. ¶¶ 301–03. This falls far short of the heightened pleading standard.

Plaintiffs make no allegations about *when* and *where* they viewed or heard any representations or omissions by Defendants. *See Kearns*, 567 F.3d at 1126 (dismissal appropriate because plaintiff did not allege "which [statements] he relied upon" or "when he was exposed to" them); *Stemmelin v. Matterport, Inc.*, 2020 WL 6544456, at *2 (N.D. Cal. Nov. 7, 2020) (dismissing UCL claim because "the complaint offers no allegations *how [the plaintiff] relied and acted* to his detriment upon defendants' [representations]" (emphasis in original)).

Plaintiffs cannot plausibly allege a fraudulent omission because Defendants had no affirmative duty to disclose any alleged conduct. *See Daugherty v. Am. Honda Motor Co. Inc.*, 51 Cal. Rptr. 3d 118, 128 (Ct. App. 2006) ("[A] failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL"). Absent an unreasonable safety hazard, there is no duty to disclose unless the defect is "central to the product's function." *Hayden v. Bob's Red Mill Natural Foods, Inc.*, 2024 WL 1643696, at *9 (N.D. Cal. Apr. 16, 2024) (citations omitted). Plaintiffs do not and cannot plausibly allege that any putative

collection of data from the in-app browser rendered the TikTok app "incapable of use by any consumer," much less that it presented an "unreasonable safety hazard." *Id*. at *9–10 (citations omitted).

**Unlawful Prong.** Plaintiffs assert a UCL claim under the unlawful prong, alleging that Defendants' conduct was unlawful because it violated various statutes and constitutional provisions and common law. Compl. ¶ 296.[12] Because Plaintiffs fail to establish any of these predicate violations, their derivative UCL claim under the unlawful prong also fails. *See Berryman v. Merit Prop. Mgmt., Inc.*, 62 Cal. Rptr. 3d 177, 185 (Ct. App. 2007).

**Unfair Prong.** Plaintiffs' UCL claim under the unfair prong is premised on the same alleged conduct as their claims under the fraudulent and unlawful prongs: that Defendants purportedly collected Plaintiffs' data within the TikTok in-app browser. *Compare* Compl. ¶ 298 *with* Compl. ¶¶ 296, 302. Because Plaintiffs' claims under the fraudulent and unlawful prongs fail, their unfair claim "cannot survive" either. *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (citation omitted).

### D. Plaintiffs Fail to State an Unjust Enrichment Claim Under Any State's Law

Under the laws of all named Plaintiffs' jurisdictions, an unjust enrichment claim requires (1) a benefit conferred by one party to another, and (2) an "unjust" retention of that benefit by the recipient.[13] There is nothing "unjust" about Defendants' alleged retention of data from within the app when doing so with users' knowledge and consent. *See supra* Section III. Nor have Plaintiffs

---

[12] Plaintiffs assert that their unlawful prong claim is predicated in part on an alleged violation of the California Constitution, Compl. ¶¶ 296, 305, but they do not even try to plead such a violation.

[13] *See Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316, 323 (Ct. App. 2008); *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1328 (S.D. Fla. 2020); *Macon Cnty., Ill. ex rel. Ahola v. Merscorp, Inc.*, 968 F. Supp. 2d 959, 965–66 (C.D. Ill. 2013); *Halstead v. Motorcycle Safety Found., Inc.*, 71 F. Supp. 2d 455, 459 (E.D. Pa. 1999).

plausibly alleged that Defendants benefited from the purported sale or use of contact, personal, credit card or banking information or Social Security number. *See supra* Section II. Setting aside these fundamental issues, the claims suffer several fatal deficiencies.

*First*, because Plaintiffs rely on the same alleged conduct—the collection and use of their data—to support both their damages claims and their unjust enrichment claims,[14] they have adequate legal remedies for those claims.[15] Courts dismiss unjust enrichment claims where legal remedies are sufficient to avoid the risk of double recovery. *See Smith v. RecordQuest, LLC*, 989 F.3d 513, 520 (7th Cir. 2021) (affirming dismissal of unjust enrichment claim).

*Second*, and similarly, because these claims are premised on the exact same conduct as their other claims and the predicate claims fail, these derivative claims cannot proceed.[16]

*Third*, the claims fail because an express contract (the TikTok Terms of Service) governs the parties' relationship. *See* Weibell Dec. ¶¶ 3–5. "Because unjust enrichment is based on an implied contract, 'where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.'" *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992) (citation omitted).[17]

---

[14] *Compare* Compl. ¶¶ 206, 274, 310 *with* Compl. ¶ 260.

[15] *See Nguyen v. Nissan N. Am., Inc.*, 2017 WL 1330602, at *4 (N.D. Cal. Apr. 11, 2017); *Steel Media Grp., LLC v. Lewis*, 2023 WL 1413043, at *9 (S.D. Fla. Jan. 6, 2023); *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. Ct. 2004); *Martino v. Transp. Workers' Union of Philadelphia, Loc. 234*, 480 A.2d 242, 244–45 (Pa. 1984).

[16] *See Frison v. Accredited Home Lenders, Inc.*, 2011 WL 2729241, at *5 (S.D. Cal. July 13, 2011); *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 510 F. Supp. 3d 1141, 1174 (S.D. Fla. 2020); *Gilmore v. City of Mattoon*, 144 N.E.3d 155, 166 (Ill. App. Ct. 2019); *Seidl v. Artsana USA, Inc.*, 643 F. Supp. 3d 521, 534 (E.D. Pa. 2022).

[17] *See also California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*, 114 Cal. Rptr. 2d 109, 125–26 (Ct. App. 2001); *Arencibia v. AGA Serv. Co.*, 2022 WL 1499693, at *3 (11th Cir. May 12, 2022); *Toppy v. Passage Bio, Inc.*, 285 A.3d 672, 688 (Pa. Super. Ct. 2022).

*Fourth*, Plaintiffs' Illinois unjust enrichment claim fails because "[u]njust enrichment is not a separate cause of action under Illinois law." *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 595 (N.D. Ill. 2020) (Pallmeyer, C.J.) (citing *Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019)), *aff'd*, 73 F.4th 502, 511 (7th Cir. 2023).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed. Moreover, dismissal should be with prejudice because no amendment consistent with Rule 11 could cure all of the defects described above. *See Circle Block Partners, LLC v. Fireman's Fund Ins. Co.*, 44 F.4th 1014, 1023 (7th Cir. 2022) (affirming dismissal with prejudice where Seventh Circuit "fail[ed] to see how [plaintiff] could cure the deficiencies in its complaint").

Dated: June 7, 2024

By: */s/ Anthony J Weibell*

Anthony J Weibell
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
(650) 331-2030
aweibell@mayerbrown.com

*Lead Counsel for All Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorneys of record for each party through the Court's electronic filing service on this date, which will send notification of such filing to the e-mail addresses registered.

Dated: June 7, 2024

*/s/ Anthony J Weibell*_____