**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: TIKTOK INC. IN APP BROWSER PRIVACY LITIGATION** | MDL 2948-A |
| _____ | Master Docket No. 24-cv-2110 |
| | Judge Rebecca R. Pallmeyer |
| This Document Relates to: | Hearing Date: Sept. 10, 2024 at 4:00 p.m. |
| ALL ACTIONS | |

**<u>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

SUMMARY OF PERTINENT ALLEGATIONS.......................................................... 2

ARGUMENT .................................................................................................................... 3

I.      THE KRAUSE REPORT UNEQUIVOCALLY SUPPORTS PLAINTIFFS' CLAIMS. .... 3

II.     PLAINTIFFS DID NOT CONSENT TO DEFENDANTS' MISCONDUCT..................... 5

        A.      Defendants' Reliance on the March 2024 Privacy Policy Is Improper. .................. 6

        B.      The March 2024 Privacy Policy Did Not Disclose Defendants' Alleged
                Misconduct. ........................................................................................................ 7

        C.      Defendants Do Not Establish that Plaintiffs Agreed to the March 2024 Privacy
                Policy. .............................................................................................................. 10

III.    PLAINTIFFS' PERSONAL ALLEGATIONS ARE SUFFICIENT TO STATE
        PLAUSIBLE CLAIMS. ................................................................................................11

IV.     ALL OF PLAINTIFFS' CLAIMS ARE PROPERLY PLED. ........................................... 13

        A.      Plaintiffs' Federal Wiretapping Claim..................................................................... 13

                1.      Plaintiffs Adequately Allege that their Communications Were Intercepted.. 13

                2.      Defendants Were Not Parties to Plaintiffs' Communications........................ 14

                3.      The Ordinary Course of Business Exemption Does Not Apply. ................... 15

        B.      Plaintiffs Properly Plead Their State Law Wiretapping and Eavesdropping
                Claims.................................................................................................................... 18

                1.      Defendants' Derivative Argument That No Communications or
                        Conversations Were Collected Should Be Rejected...................................... 18

                2.      Defendants' Derivative "No Interception" Arguments Should Be
                        Rejected. ....................................................................................................... 18

                3.      Plaintiffs' Intercepted Communications Are Actionable Under
                        CIPA § 632, FSCA, and IEA. ......................................................................... 19

                4.      Plaintiff Berrios States a FSCA Claim. ........................................................ 20

                5.      WESCA's Service Provider Exemption Is Inapplicable................................ 22

C.   Plaintiffs Properly Allege a UCL Claim. ................................................................. 22

    1.   Plaintiffs Adequately Allege Economic Injury. ............................................... 22

    2.   Plaintiffs Adequately Allege Unfair and Unlawful Conduct. ......................... 24

D.   Plaintiffs' Unjust Enrichment Claims Are Well-Pled. ............................................ 24

CONCLUSION ......................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                        **Page(s)**

*188 LLC v. Trinity Indus., Inc.*,
   300 F.3d 730 (7th Cir. 2002) ................................................................11

*A.B. by & Through Turner v. Google LLC*,
   No. 23-CV-03101-PCP, 2024 WL 3052969 (N.D. Cal. June 18, 2024) .........................22, 23

*Albright v. Concurrent Techs. Corp.*,
   No. 3:21-cv-00112, 2022 WL 4640115 (W.D. Pa. Sept. 30, 2022) .......................................25

*Backhaut v. Apple. Inc.*,
   74 F. Supp. 3d 1033 (N.D. Cal. 2014) ..............................................................................15, 16

*Brown v. Google LLC*,
   2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ............................................................22, 23, 24

*Brown v. Google LLC*,
   685 F. Supp. 3d 909 (N.D. Cal. 2023) .................................................................................8, 9

*Calhoun v. Google LLC*,
   526 F. Supp. 3d 605 (N.D. Cal. 2021) ................................................................................6, 22

*Campbell v. Facebook Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014) .........................................................................12, 16, 17

*Cmty. Ass'n Underwriters of Am., Inc. v. Constr. Sys. Corp. of Illinois*,
   638 F. Supp. 3d 872 (N.D. Ill. 2022) .......................................................................................4

*Cook v. GameStop, Inc.*,
   689 F. Supp. 3d 58 (W.D. Pa. 2023) .....................................................................................13

*Doe v. CVS Pharmacy, Inc.*,
   982 F.3d 1204 (9th Cir. 2020) ..............................................................................................24

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ..........................................................................................12, 19

*Goldstein v. Costco Wholesale Corp.*,
   559 F. Supp. 3d 1318 (S.D. Fla. 2021) ............................................................................20, 21

*In re Google Assistant Priv. Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) ............................................................................10, 13

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
   806 F. 3d 125 (3d Cir. 2015)................................................................................................15

*In re Google Inc. Gmail Litig.*,
    2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ...............................................16, 17

*In re Google, Inc. Priv. Pol'y Litig.*,
    2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ......................................................16

*Griffith v. TikTok, Inc.*,
    697 F. Supp. 3d 963 (C.D. Cal. 2023) ........................................................8, 10, 19

*Hartley v. Univ. of Chicago Med. Ctr.*,
    2023 WL 7386060 (N.D. Ill. Nov. 8. 2023) ....................................................13

*Hernandez v. Illinois Inst. of Tech.*,
    63 F.4th 661 (7th Cir. 2023) ........................................................................25

*Jacome v. Spirit Airlines Inc.*,
    No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021)....................20, 21

*Kahn v. Walmart Inc.*,
    No. 23-1751, 2024 WL 3282097 (7th Cir. July 3, 2024).........................................25

*Katz-Lacabe v. Oracle Am., Inc.*,
    No. 22-CV-04792-RS, 2023 WL 6466195 (N.D. Cal. Oct. 3, 2023), *aff'd*, No.
    22-CV-04792-RS, 2023 WL 7166815 (N.D. Cal. Oct. 30, 2023) ..........................................20

*Kurowski v. Rush Sys. for Health*,
    No. 22 C 5380, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ...................................5

*Kurowski v. Rush Sys. for Health*,
    683 F. Supp. 3d 836 (N.D. Ill. 2023) .............................................................12, 20

*Larson v. Am. Honda Motor Co.*,
    No. 3:23-cv-01238-L-BGS, 2024 WL 3293875 (S.D. Cal. Apr. 2, 2024) ............................25

*Levenstein v. Salafsky*,
    164 F.3d 345 (7th Cir. 1998) ........................................................................7

*Matera v. Google Inc.*,
    No. 15-CV-04062-LHK, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016)..........................16, 17

*In re Meta Pixel Healthcare Litig.*,
    647 F. Supp. 3d 778 (N.D. Cal. 2022) ............................................................8

*In re Meta Pixel Tax Filing Cases*,
    2024 WL 1251350 (N.D. Cal. Mar. 25, 2024)..................................................22, 24

*Patterson v. Respondus, Inc.*,
    593 F. Supp. 3d 783 (N.D. Ill. 2022) (Pallmeyer, J.)..........................................7, 10

iv

*Revitch v. New Moosejaw, LLC*,
   No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Ca. Oct. 23, 2019) ..................................14

*Russo v. Microsoft Corp.*,
   No. 4:20-CV-04818-YGR, 2021 WL 2688850 (N.D. Cal. June 30, 2021) ...........................16

*S.D. v. Hytto Ltd.*,
   No. 18-CV-00688-JW, 2019 WL 8333519 (N.D. Cal. May 15, 2019) ..........................15, 17

*Sadlock v. The Walt Disney Co.*,
   22-CV-09155-EMC, 2023 WL 4869245 (N.D. Cal. July 31, 2023) ...................................11

*Sloan v. Anker Innovations Ltd.*,
   No. 22 C 7174, 2024 WL 935426 (N.D. Ill. Jan. 9, 2024) ...................................................15

*Smith v. Loyola Univ. Med. Ctr.*,
   No. 23 CV 15828, 2024 WL 3338941 (N.D. Ill. July 9, 2024) ........................................ 9, 10

*Snow v. Eventbrite, Inc.*,
   3:20-cv-03698-WHO, 2020 WL 6135990 (N.D. Cal. Oct. 19, 2020) ...................................10

*Specht v. Google Inc.*,
   747 F.3d 929 (7th Cir. 2014) ...............................................................................................6

*Thakka v. Ocwen Loan Servicing, LLC*,
   No. 15 cv 10109, 2019 WL 2161544 (N.D. Ill. May 17, 2019) ...........................................20

*Tierney v. Vahle*,
   304 F.3d 734 (7th Cir. 2002) ................................................................................................7

*United States v. Eady*,
   648 F. App'x 188 (3d Cir. 2016) .........................................................................................14

*United States v. Pasha*,
   332 F.2d 193 (7th Cir. 1964) ...............................................................................................14

*Zak v. Bose Corp.*,
   No. 17-CV-02928, 2019 WL 1437909 (N.D. Ill. Mar. 31, 2019)....................................14, 15

**Statutes**

18 U.S.C. § 2510..................................................................................................................15

Fla. Stat. § 934.02 ...............................................................................................................20

**Other Authorities**

Fed. R. Civ. P. Rule 8 ..........................................................................................................25

v

Fed. R. Civ. P. Rule 201 .................................................................................................7

## INTRODUCTION

Plaintiffs' Master Consolidated Complaint (the "Complaint") alleges a devious data collection scheme which allowed TikTok Inc. and ByteDance Inc. (collectively, "Defendants") to profit handsomely. Defendants used JavaScript code to secretly intercept, view, and collect private data of *millions* of TikTok users who interacted with third-party websites via TikTok's In-App Browser ("IAB"), including every webpage, link, image, keystroke, and mouse click. Defendants then used this highly personal data to command *billions* in targeted advertising revenue.

Plaintiffs' Complaint is chock-full of allegations detailing Defendants' execution of their data collection scheme. For example, Plaintiffs describe the revealing contents of a research paper authored by Felix Krause, the software researcher who exposed Defendants' use of the IAB to secretly harvest troves of consumer data. Of course, Plaintiffs' allegations are not based on Mr. Krause's idle musings. Mr. Krause published the content of TikTok's JavaScript code, including commands which undeniably monitor "all taps happening on websites," and "all keyboard inputs on websites," "the website title" and which also "track which elements the user clicks on." And there's more. Plaintiffs also detail numerous other sources, including whistleblowers, consent decrees, and U.S. government officials, clearly indicating Defendants' collection of private consumer data. Indeed, the TikTok app is banned by the U.S. Military, all federal agencies, and certain state agencies, because of data privacy concerns.

Against this backdrop, Defendants' potpourri of scatter-shot arguments falls flat. Plaintiffs' allegations easily satisfy the elements of every claim asserted in the Complaint, Plaintiffs did not consent to Defendants' all-encompassing data collection efforts, and Defendants do not qualify for any exemption under the relevant statutes. At bottom, the Court should resist Defendants' invitation to ignore the allegations of the Complaint. Defendants' motion to dismiss should be denied in full.

<u>**SUMMARY OF PERTINENT ALLEGATIONS**</u>

TikTok is a highly popular social media and networking application that has become "one of the world's fastest growing social media platforms" and a "global phenomenon." *See* Complaint ("Compl."), ECF 44 at ¶¶ 82-84. The TikTok app allows its users to interact with each other by commenting on videos, "following" others, and sending direct messages. *Id.* ¶ 84. Defendants earn billions by selling digital advertising space. *Id.* ¶¶ 88, 90. They achieve this through the undisclosed collection of personal data about their users, which facilitates user-targeted advertising. *Id.* ¶¶ 92-93.

Unbeknownst to Plaintiffs and Class Members, Defendants created and configured the IAB to usurp a user's default browser whenever a user clicks on a hyperlink to a third-party website. *Id.* ¶ 122. Users are not offered the option to open links in anything other than the IAB, and do not realize that they are using Defendants' IAB. *Id.* ¶¶ 122, 129, 133-34. The IAB injects JavaScript code—essentially a keylogger—into third-party websites. *Id.* ¶¶ 135, 138-40.

Defendants deliberately designed the code to track and capture the details of users' activities on third-party websites, such as what links are clicked; what form fields are filled out; how long a user hovers over a particular set of text; what images are viewed; any text written; details of online purchase transactions, including the name of the purchaser, their address, telephone number, credit card or bank information, usernames, passwords, dates of birth; detailed private and sensitive information about their physical and mental health; survey information such as sexual orientation, religion, age, relationship status, location, financial status; and more. *Id.* ¶¶ 135, 140-43, 154-55, 203. Each Plaintiff alleges that TikTok used the IAB to secretly monitor and capture the details of their website activities and personal information, including, *inter alia,* contact, credit card, financial, and social security information. *Id.* ¶¶ 5-14.

**ARGUMENT**

## I. THE KRAUSE REPORT UNEQUIVOCALLY SUPPORTS PLAINTIFFS' CLAIMS.

Plaintiffs' Complaint details the lines of JavaScript code discovered by Krause in TikTok's IAB. Compl. ¶¶ 137-141. The code "creates new commands to copy everything that users are doing on the external websites." *Id.* ¶ 138. "While a user is interacting with a third-party website via the TikTok app, Defendants subscribe to all keyboard inputs—the equivalent of installing a keylogger. It also records every tap on any button, link, image or other website element and logs details about what that element is." *Id.* ¶ 139. Of the seven popular apps Krause tested, TikTok was the only app that monitors keystrokes. *Id.* ¶ 138.

Faced with these damning facts, Defendants again seek to disclaim Felix Krause's findings, as detailed in his research paper. Acknowledging, as they must, that Krause's report reveals TikTok's surreptitious injection of JavaScript commands that can collect personal consumer data through the IAB, Defendants challenge whether Krause's report clearly states that Defendants do collect that data. ECF No. 56 ("MTD"), at 5-7. But, of course, Krause's report includes *an admission from TikTok that it used JavaScript code to collect and use the data*, albeit for purported "debugging, troubleshooting and performance monitoring of that experience. . . ." *Id.* at 6 (*citing* Weibell Decl., ECF No. 56-1, Ex. 1 at 4). Indeed, Krause notes that TikTok's admission "***confirms my finding***s. TikTok injects code into third party websites through their in-app browsers that behaves like a keylogger." *Id.* (emphasis added).

Caught in a trap of their own making, Defendants attempt to sidestep TikTok's admission by asking the Court to accept as true the highly disputed assertion that Defendants "only" use the collected data "for debugging, troubleshooting and performance monitoring," and not for advertising purposes as alleged in the Complaint. MTD at 6. Of course, Defendants' assertion is

3

inadmissible hearsay, and, at this stage of the case, the Court must accept the allegations of Plaintiffs' Complaint as true; in any event, the *purpose* of Defendants' data collection efforts will be the subject of vigorous discovery.[1]

Defendants' admission notwithstanding, their claim that Plaintiffs' Complaint depends entirely on Krause's report is demonstrably wrong. In addition to referencing Krause's report, Plaintiffs' Complaint also includes the actual text of the JavaScript commands designed by Defendants and injected into the IAB. Specifically, the "EventListener" commands utilized by Defendants include the "keypress," "keydown" and "click" functions which are designed to monitor "all taps happening on websites," "all keyboard inputs on websites," among others. Compl. ¶ 139. The Complaint is also replete with allegations that, when viewed in the light most favorable to Plaintiffs, support the plausibility of their allegations that Defendants harvest and use an incredible amount of data from TikTok users without their consent. For example, Plaintiffs allege that TikTok entered a Consent Decree with the FTC arising out of Defendants' wrongful collection of information from minors under the age of 13. *Id*. ¶ 100. The next year, an investigation revealed that "TikTok *still collects some personal identifiers and usage information that go beyond support for internal operations*, for which TikTok does not obtain verifiable parental consent." *Id*. ¶ 102 (emphasis added). In 2020, then-President Trump issued an executive order proposing to ban the TikTok app because its "data collection threatens to allow the Chinese Communist Party access to Americans' personal and proprietary information—potentially allowing China to track

---

[1] *See Cmty. Ass'n Underwriters of Am., Inc. v. Constr. Sys. Corp. of Illinois*, 638 F. Supp. 3d 872, 879 n.5 (N.D. Ill. 2022) ("At the motion to dismiss stage . . . no factual evidence is required to prove any of Plaintiff's claims.") (citation omitted).

the locations of Federal employees and contractors, build dossiers of personal information for blackmail, and conduct corporate espionage." *Id.* ¶ 103.

Other government officials have raised the alarm about Defendants' data collection as well. For example, Plaintiffs allege that a group of Senators sent a letter to TikTok in 2022 referencing a report about how engineers in China accessed TikTok's U.S. consumer data. *Id.* ¶ 107. And more have stated that Defendants collect keystroke data. *See, e.g.*, *id.* ¶ 112 (quoting a FCC Commissioner stating that the app looks at "search and browsing history, your keystroke patterns, biometric data"); ¶ 113 (quoting a Senator stating that the app is, "a massive collector of information . . . [and] can visualize even down to your keystrokes . . . all of that data … is being stored somewhere in Beijing"); ¶ 114 (quoting a letter from two Senators expressing concerns with TikTok's "repeated misrepresentations . . . concerning its data security, data processing, and corporate governance practices"). While not all of these allegations relate specifically to Defendants' collection of data through the IAB, the demonstrated capability of the IAB, Defendants' admission that they use such data for some purposes, and Defendants' documented hunger for TikTok users' data, all support the plausibility of Plaintiffs' allegations.

Given these well-pled facts, and all favorable inferences the Court must draw in Plaintiffs' favor, the Court cannot resolve this question at this stage of the proceedings—especially at the pre-discovery stage, where the specific details of how the code operates is known only to Defendants. *See Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) ("the Court also notes that [the plaintiff] lacks the direct access to what occurs in the background on [the defendant's] web properties . . . that she would need [in order] to provide further details supporting her claim").

## II. PLAINTIFFS DID NOT CONSENT TO DEFENDANTS' MISCONDUCT.

Defendants next erroneously claim they are immune from liability because a purported

"TikTok Privacy Policy" discloses the "potential" collection of user data, and Plaintiffs allegedly consented to that Privacy Policy. MTD at 7-10. "As the party seeking the benefit of the [consent] exception, it is [Defendants'] burden to prove consent." *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) (cleaned up). Here, Defendants utterly fail to meet that burden. As a threshold matter, Defendants rely entirely on the terms of an unauthenticated "Internet Archive" link to a purported March 28, 2024, Privacy Policy (the "Privacy Policy"), which is not properly subject to judicial notice. Even if the Court were to consider that Privacy Policy, Defendants do not present competent evidence to show that Plaintiffs agreed to its terms, nor do Defendants present competent evidence to contradict Plaintiffs' allegation that they "did not knowingly consent to Defendants' collection of their data through the in-app browser." Compl. ¶ 179.

A. **Defendants' Reliance on the March 2024 Privacy Policy Is Improper.**

Defendants urge this Court to consider the terms of an unauthenticated "Internet Archive" link to a purported March 28, 2024, Privacy Policy[2] "because the Complaint refers to it repeatedly, *see* Compl. ¶¶ 119, 180, 248, 302, it is central to Plaintiffs' claims, and it is subject to judicial notice." MTD at 7, fn.4. Defendants' superficial arguments, relegated to a footnote, are wrong.

Critically, the Privacy Policy is not properly authenticated. Defendants offer it as an attachment to a declaration from Anthony Weibell, Defendants' counsel, which states that he printed the Privacy Policy from Internet Archive links. *See* Weibell Decl., ¶¶ 2-4. Mr. Weibell does not confirm, nor could he, that the exhibits are accurate versions of the Privacy Policies in effect at the relevant time period, nor does he—or anyone else—attest to the reliability of the Internet Archive. As such, the Court should disregard the Privacy Policy in its entirety. *See Specht v. Google*

---

[2] Defendants also seek judicial notice of two earlier Privacy Policies, *see* Weibell Decl. at Exs. 3-4, Defendants do not cite those Policies for this argument or demonstrate that they contained the same provisions that Defendants rely on in their Motion.

*Inc.*, 747 F.3d 929, 933 (7th Cir. 2014) (Internet Archive screenshots "required authentication by someone with personal knowledge of reliability of the archive"); *Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002) (defendant cannot "submit a document in support of his Rule 12(b)(6) motion that required discovery to authenticate"). Indeed, judicial notice is only proper where a document "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201(b). Needless to say, a printed version of an internet link without foundation is hardly reliable.

Finally, the Privacy Policy—even if it was authenticated—cannot be deemed incorporated by reference in the Complaint. "To be incorporated by reference, the documents themselves—not just their general category or theme—must be central to the complaint and referred to in it." *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 805 (N.D. Ill. 2022) (Pallmeyer, J.). The Seventh Circuit has cautioned that the incorporation by reference doctrine "is a narrow exception aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). Defendants cannot establish, as they must, that the Privacy Policy is "central" to Plaintiffs' claims. The Complaint is unquestionably centered on Defendants' data collection practices and does not assert any claim based on purported violations of any Privacy Policy. Plaintiffs reference Defendants' privacy policies *in general*, not the March 2024 Privacy Policy specifically or any of its provisions, and, in any event, the general references are in passing.

### B. The March 2024 Privacy Policy Did Not Disclose Defendants' Alleged Misconduct.

Even if the Court considers the March 2024 Privacy Policy, Defendants have not demonstrated that Plaintiffs consented to the type and scope of data collection conduct alleged in the Complaint. Consent is not valid unless the disclosure at issue explicitly notifies users of the practice at issue. "The test is whether a reasonable user who viewed [TikTok's] disclosures would have understood that [TikTok] was collecting the information at issue." *In re Meta Pixel*

*Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022); *see also Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023) (requiring disclosures to "explicitly notify users of the practice at issue") (cleaned up).

Defendants' Privacy Policy ***never*** discloses TikTok's use of the IAB to access third-party websites, that the IAB surpasses a user's default browser whenever a user clicks on an internet hyperlink, or that Defendants track every aspect of users' activity on third-party websites by inserting JavaScript code through the IAB—including, in the case of online purchases, "all of the details of the purchase, the name of the purchaser, their address, telephone number, credit card or bank information, usernames, passwords, dates of birth, etc." *See* Compl. ¶¶ 134-135, 142.

Importantly, in a recent case against Defendants involving similar allegations of nonconsensual tracking and collection of data, a District Court found that Defendants' Privacy Policies were insufficient to establish consent:

> There is no allegation that Plaintiff read any of these policies or that these policies reasonably disclosed the true scope and import of the third-party sharing. In any event, given Plaintiff's specific privacy concerns about TikTok, Defendants' size and ability to collect information from numerous websites, and the absence of any communication from TikTok that it was collecting her data, Defendants have not established that Plaintiff consented to TikTok's receipt of her information or that Plaintiff's claims must be dismissed at the pleading stage because she lacked a reasonable expectation of privacy.

*Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 972 (C.D. Cal. 2023)

*Griffith*'s reasoning applies with equal force here. Although Defendants cite examples of disclosures in the Privacy Policy that they claim cover the conduct at issue (*see* MTD 8-9), these generalized disclosures are insufficient for at least four reasons.

***First***, although the Privacy Policy discloses Defendants' collection of "information from you when you use the Platform," this nonspecific disclosure is insufficient to put a reasonable

person on notice of the extent of Defendants' invasive data collection practices. *See Smith v. Loyola Univ. Med. Ctr.*, No. 23 CV 15828, 2024 WL 3338941, at *10 (N.D. Ill. July 9, 2024) (limited disclosure that data is collected from "pages on our Site that you view" did not inform users "that their personal health information will be collected and disclosed to third parties"); *Brown*, 685 F. Supp. 3d at 927-928 (no consent because privacy policy was "silent as to any data collection specific to private browsing mode").

*Second*, the Privacy Policy discloses "user generated text" that is stored on a user's device's "clipboard," not the collection of a user's activity on third-party websites. *See* Weibell Decl. Ex. 4 at 2.

*Third*, the Privacy Policy discloses "internet or other network activity, such as . . . browsing and search history (including content you have viewed in the Platform)[.]" *Id.* at 3. However, "content you have viewed in the platform" following the phrase "browsing and search history" would reasonably be understood by an ordinary person to refer to collection of a users' *video* viewing and *video* search history given that TikTok is a *video* sharing app.[3] Indeed, the Privacy Policy does not say "*web*" browsing and search history. Even under Defendants' charitable reading of the Privacy Policy, a reasonable user would not understand that passage to disclose Defendants' interception of every detail of users' activity on third-party websites through the IAB.

*Fourth*, the Privacy Policy discloses "keystroke patterns or rhythms," but as Defendants concede, those terms are not the same as keystroke logging that captures and records everything typed into a third-party website. MTD at 9.

In sum, Defendants' disclosures in the March 2024 Privacy Policy are inadequate because they are insufficient to permit a reasonable person to understand what types of data Defendants

---

[3] *See* Compl. ¶¶ 83-86 (describing the nature of the app and how it is used).

would collect and how they would collect it. *See Griffith, supra*; *see also In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 823 (N.D. Cal. 2020) (rejecting consent defense where privacy policy said "nothing about the types of information" collected). In fact, Defendants' cited authorities similarly confirm that consent requires disclosures that are explicit and precise.[4]

### C. Defendants Do Not Establish that Plaintiffs Agreed to the March 2024 Privacy Policy.

Finally, even if the Court considers the March 2024 Privacy Policy and finds the disclosures sufficient, Defendants do not satisfy their burden to show that Plaintiffs agreed to the Policy. Defendants claim that "[a]fter downloading the app, users must . . . acknowledge having read the Privacy Policy before accessing any part of the app." MTD at 2. But each of the Plaintiffs downloaded and began using the TikTok app between 2019 and 2023, ***before*** the March 2024 Privacy Policy was in effect. Compl. ¶¶ 5-14. Defendants do not, because they cannot, explain or cite any evidence for how any Plaintiff or Class Member who downloaded the app before March 28, 2024, could consent to purported disclosures in the March 2024 Privacy Policy. *See Snow v. Eventbrite, Inc.*, 3:20-cv-03698-WHO, 2020 WL 6135990, at *5 (N.D. Cal. Oct. 19, 2020) (holding that it is necessary to show "what the agreements looked like during the period when the plaintiffs would have actually seen them"); *Patterson*, 593 F. Supp. 3d at 805-06, 815 (Pallmeyer, J.) (declining to incorporate privacy policies by reference or consider them where policies were not "central to the complaint" and doing so would raise a "fact-intensive inquiry" "about what [the] policies looked like at different moments in time").

---

[4] *See, e.g.*, *Smith*, 262 F. Supp. 3d at 954 ("Facebook's Data Policy discloses the precise conduct at issue in this case . . . ."); *Silver*, 2021 WL 3191752, at *4 (consent where "terms plainly disclose that [third parties] may install tracking software to collect data"); *Javier*, 2021 WL 3669343, at *2 ("[C]onsent is generally limited to the specific conduct authorized"); *Hammerling*, 2024 WL 937247, at *1, 3 (consent where "the Policy here expressly disclosed Google's intention to track [plaintiffs'] activity on third-party apps"). The cases cited at MTD fn. 5 also fail to support dismissal because they are factually inapposite.

10

Separately, Defendants' representations about the process of consenting to the Privacy Policy depends on two exhibits consisting of two screenshots that purportedly show the process. MTD at 2 (citing Weibell Decl. at Exs. 7-8). The Court should not consider these unauthenticated screenshots because Defendants did not seek judicial notice of them, such notice would be improper, and Defendants did not request that the Court incorporate them by reference. Therefore, the Court cannot consider them for the purposes of a Rule 12(b)(6) motion. *188 LLC v. Trinity Indus.*, *Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). Nevertheless, the screenshots simply reflect the sign up and log in process for the TikTok app in effect on June 7, 2024. *See* MTD at 2; Weibell Decl. at ¶¶ 8-9. Again, because each Plaintiff began using the app in 2019-2023, Defendants have failed to submit any evidence of the sign up and log in process actually used by Plaintiffs. *See Sadlock v. The Walt Disney Co.*, 22-CV-09155-EMC, 2023 WL 4869245, at *9 (N.D. Cal. July 31, 2023) (disregarding registration screenshots where defendant "d[id] not provide any evidence as to which process [plaintiff] *actually* used") (emphasis in original).

## III.   PLAINTIFFS' PERSONAL ALLEGATIONS ARE SUFFICIENT TO STATE PLAUSIBLE CLAIMS.

Plaintiffs plead personal facts showing that each was harmed by Defendants' misconduct. Such allegations exceed Rule 8's notice pleading requirements and are far from "unsupported conclusory statements." MTD at 11. Indeed, each Plaintiff alleges in specific detail the process by which Defendants collected their data through the IAB, which collects data regardless of which third-party website a user visits. Compl. ¶¶ 124-142. And each Plaintiff alleges that they visited and interacted with third-party websites via the IAB, and that Defendants monitored and captured the details of their "website activities and purchases, including [their] personal information, contact information, and credit card information," "banking information," and "social security number." *Id*. ¶¶ 5-14. These allegations establish that Plaintiffs entered personal data when they

accessed third-party websites via the IAB, and further, that Defendants captured such data, which is an eminently reasonable inference since Defendants make billions of dollars from advertisers who solicit users to make purchases and/or enter personal information through links in the app. *See* Compl. ¶¶ 123-136 (purchase information); 143-155 (other information).

Defendants' assertion that the allegations are not plausible "because not every website visit involves the use of one's personal, contact, credit card [and] banking" data (MTD at 10) is a non-sequitur, because nowhere do Plaintiffs allege that *every* website collects the specified data. Nor do they have to under the claims asserted here.

Additionally, Defendants cite no authority to support their argument that Rule 8 requires a Plaintiff to identify the websites that they visited, much less the specific actions they took on any website "to type in this data." MTD at 10-11. Rule 8 does not require that level of detail. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020) (rejecting argument "that Plaintiffs need to identify specific, sensitive information that Facebook collected, and that their more general allegation that Facebook acquired 'an enormous amount of individualized data' is insufficient"); *see also Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 839 (N.D. Cal. 2014) (Under Rule 8, "[s]pecific facts are unnecessary—the statement need only give the defendant fair notice of the claim and the grounds upon which it rests.") (quotation omitted).

*Kurowski*, the primary case upon which Defendants rely, is inapposite because there the court found that the plaintiff did not sufficiently allege the *content* of the data that the defendant allegedly disclosed, so the court could not draw the inference that disclosure of the data violated HIPAA—a necessary element of her claim. *Kurowski*, 683 F. Supp. 3d 836, 842-43 (N.D. Ill. 2023). Here, Plaintiffs specifically allege that they accessed third-party websites through the IAB, and further allege the specific kinds of data, particular to them, that were collected and used by

Defendants. Compl. ¶¶ 5-14. The same facts distinguish *Hartley v. Univ. of Chicago Med. Ctr.*, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8. 2023), which was also a case involving the question of whether the data was protected by HIPAA. In *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 69 (W.D. Pa. 2023), the court found that the plaintiff failed to allege that the defendant "harnessed the capabilities she describes, and it had the result of capturing the contents of specific communications[,]" which Plaintiffs do here. Similarly, in *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 817, the court found that the allegations were insufficient because the plaintiffs did not allege details regarding the content of the communications, and therefore the Court could not determine whether they had an expectation of privacy in their communications.

Because Plaintiffs here do allege the contents of the data that Defendants unlawfully collected and the method by which Defendants collected it, they have easily satisfied Rule 8's notice pleading requirement.

## IV. ALL OF PLAINTIFFS' CLAIMS ARE PROPERLY PLED.

### A. Plaintiffs' Federal Wiretapping Claim.

#### 1. Plaintiffs Adequately Allege that their Communications Were Intercepted.

Defendants remarkably claim that Plaintiffs do not sufficiently allege that "their own communications were collected." MTD at 13. This hollow assertion is simply derivative of their discredited argument that Defendants are not alleged to have collected Plaintiffs' personal data. *See* § III, *supra*. In furtherance of their federal Wiretap Act claims, Plaintiffs allege that Defendants' "[i]nterception of Plaintiffs' and Class Members' electronic communications without their consent occurred whenever a user clicked on a link to a website external to TikTok." Compl. ¶ 207. Further, Plaintiffs specifically allege the mechanism by which this interception occurs, and specifically allege the personal information *taken from their web browsing activity* in the IAB on third-party websites. *Id.* ¶¶ 5-14, 122-156. Such allegations are indisputably sufficient to allege

13

that *their communications* were intercepted. *See Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *1 (N.D. Ca. Oct. 23, 2019) ("Revitch requested information from [third-party site] by clicking on items of interest; [third-party site] responded by supplying that information. This series of requests and responses – whether online or over the phone – is communication.").

### 2. Defendants Were Not Parties to Plaintiffs' Communications.

Defendants next argue that they were parties to the communications between Plaintiffs and third-party websites, so they are exempt from liability under the Wiretap Act. MTD at 13. But Defendants get the standard wrong. In determining whether a defendant is a party to a communication, "the relevant inquiry is whether the defendant is a *participant in the conversation*, as opposed to a non-participant that uses other means to gain access to—*i.e.*, intercept—the communication." *Zak v. Bose Corp.*, No. 17-CV-02928, 2019 WL 1437909, at *3 (N.D. Ill. Mar. 31, 2019) (emphasis added). Indeed, "[i]nterception connotes a situation in which by surreptitious means a third party overhears a telephone conversation between two persons." *United States v. Pasha*, 332 F.2d 193, 198 (7th Cir. 1964). This is precisely what Plaintiffs allege occurred here. Defendants designed the TikTok app to require user access to third-party websites via the IAB, rather than a device's default browser, and then Defendants injected JavaScript code to secretly monitor the users' activities on the third-party website. *See* Compl. ¶¶ 122, 129. Defendants were simply *not* "participants in the conversation" between Plaintiffs and the third-party websites. *See United States v. Eady*, 648 F. App'x 188, 191 (3d Cir. 2016) (a defendant is a "party" where "his presence is known to other participants").

Importantly, Plaintiffs allege that they thought that clicking website links in the app opened their device's default browser, as is the typical practice. Compl. ¶ 122. Defendants dismiss such allegations as "irrelevant." MTD at 14. But this is not a case where Plaintiffs were ultimately

14

mistaken about the recipient of a communication, as in *Pasha*. Rather, Plaintiffs' communications were directed at third-party websites, not at the TikTok app, so Defendants' surreptitious tracking and collecting of Plaintiffs' data occurred en route to the intended recipient. Such allegations are similar to those in *S.D. v. Hytto Ltd.*, No. 18-CV-00688-JW, 2019 WL 8333519 (N.D. Cal. May 15, 2019), where the Court found that the defendant was not a party to the communication because plaintiff used the defendant's app to communicate to third parties, not to defendant, yet the app "continuously and contemporaneously" intercepted and transmitted the plaintiff's information to the defendant's servers. *Id.* at *1, *8. Here, as in *Hytto*, the IAB was merely "a conduit or host for such communication." *Id*. at *8; *see also Backhaut v. Apple. Inc.*, 74 F. Supp. 3d 1033, 1043 (N.D. Cal. 2014) (messages not addressed to defendant were considered intercepted).

Plaintiffs' allegations distinguish this case from those Defendants rely upon, which involve situations where the defendants' participation in the conversation was necessary and/or the plaintiffs communicated directly with the defendant. *See Sloan v. Anker Innovations Ltd.*, No. 22 C 7174, 2024 WL 935426, at *4 (N.D. Ill. Jan. 9, 2024) (communication was between the defendants' security camera and the defendants' app, so "the communication necessarily requires Defendants' participation"); *Zak*, 2019 WL 1437909, at *1, *3 ("receiving and displaying the [communications] is a primary function of the App"); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F. 3d 125, 140 (3d Cir. 2015) (cookies on users' computer a proxy for user and therefore directly communicated with defendants about webpage user visiting).

### 3. The Ordinary Course of Business Exemption Does Not Apply.

Defendants seek an "ordinary course of business exemption" under 18 U.S.C. § 2510(5)(a), which exempts "any telephone or telegraph instrument, equipment or facility, or any component thereof . . . being used by a provider of wire or electronic communication service in the ordinary

course of its business . . . ." *See* MTD at 14. Defendants' conduct as alleged in the Complaint does not fit the proper reading of this exemption.

As discussed below, there is simply no nexus between Defendants' use of the IAB to secretly intercept Plaintiffs' communications with third-party websites, and Defendants' "core" business as a video creating and sharing app, because Defendants do not "need" to collect Plaintiffs' personal data on third-party websites to operate the TikTok app. To be sure, Defendants' collection of keystrokes, clicks and every detail of activities on third-party websites does not "facilitate" the TikTok app's video content creating, sharing, or viewing functions. *See, e.g.*, *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *14 (N.D. Cal. Aug. 12, 2016) (defendant "intercepts Gmail for the distinct purpose of acquiring [user data for targeted advertising]" which "neither facilitate [nor are incidental to] the provision of email services"); *Campbell*, 77 F. Supp. 3d at 844 (finding no "nexus between Facebook's alleged scanning of users' private messages for advertising purposes and its ability to provide its service"); *Russo v. Microsoft Corp.*, No. 4:20-CV-04818-YGR, 2021 WL 2688850, at *2, *5 (N.D. Cal. June 30, 2021) ("data interception to develop the [security products] are not 'incident' to provision of service to *plaintiffs*") (emphasis in original).

Defendants rely on *In re Google, Inc. Priv. Pol'y Litig.*, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ("*Google Privacy*") and interpret the exemption broadly to encompass "all activities that further a legitimate business purpose, including advertising." MTD at 15 (citing *Google Privacy*, 2013 WL 6248499, at *10-11). Defendants acknowledge that this broad interpretation is disputed, and other courts interpret the exemption narrowly to an interception that "facilitates the transmission of the communication at issue or is incidental to the transmission of such communication." MTD at 15 (quoting *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *8

16

(N.D. Cal. Sept. 26, 2013)). In fact, *Google Privacy* is an outlier on this point and its reasoning has been repeatedly rejected by other courts. *See Backhaut*, 74 F. Supp. 3d at 1043 ("[The ordinary course of business] exception is narrow in scope and requires that the electronic communication service provider demonstrate that 'the interception facilitated the communication service or was incidental to the functioning of the provided communication service'"); *Hytto*, 2019 WL 8333519, at *9 (rejecting *Google Privacy* and holding that "[t]he plain language of the statute supports the narrow construction of the exception"); *Matera*, 2016 WL 8200619, at *8 ("This Court is not persuaded otherwise by Google's citation to [*Google Privacy*]"); *Campbell*, , 77 F. Supp. 3d at 844 (attempting to reconcile *Gmail* with *Google Privacy*, "reject[ing] the suggestion that any activity that generates revenue for a company should be considered within the "ordinary course of its business.").[5]

*Campbell* and *Gmail* found that a narrow interpretation is appropriate because allowing the exemption to encompass "all activities that further a legitimate business purpose" would read "ordinary" out of the statute. *Campbell*, 77 F. Supp. 3d at 843 (discussing *Gmail*). Indeed, doing so would allow service providers to exempt *everything* they do in the course of their business, and improperly allow them to self-define the scope of the exemption. *See Matera*, 2016 WL 8200619, at *8-9. In contrast, a narrow interpretation of the exemption is consistent with "the statutory text, case law, statutory scheme, and legislative history concerning the ordinary course of business exception[.]" *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *11.

Accordingly, the weight of authority requires that to qualify for the exemption, there must be "some nexus between the need to engage in the alleged interception and the [provider's]

---

[5] Defendants attempt to distinguish *Gmail* because of allegations that Google had violated its own internal policies. However, other courts have recognized that this "was not critical to the [*Gmail*] court's rejection of the 'ordinary course of business' exception." *Campbell*, 77 F. Supp. 3d at 845.

ultimate business, that is, the ability to provide the underlying service or good." *Id*. Recognizing this, Defendants claim "the alleged collection still falls within the exception because the only actual data collection recognized by the Krause Post was Defendants' admitted collection of data 'for debugging, troubleshooting and performance monitoring[,]'" which "are 'an instrumental component of' the 'operation of a functional' in-app browser." MTD at 15. However, as discussed at length above, Defendants' spin contradicts the clear allegations in the Complaint that Defendants' IAB collected data for advertising purposes. *See* § I, *supra*.

### B. <u>Plaintiffs Properly Pled Their State Law Wiretapping and Eavesdropping Claims</u>.

#### 1. **Defendants' Derivative Argument That No Communications or Conversations Were Collected Should Be Rejected.**

As a threshold matter, Defendants' claim that Plaintiffs have not adequately alleged that their "communications" or "conversations" were intercepted or recorded under CIPA, FSCA, IEA, and WESCA is premised entirely upon their tired refrain that Plaintiffs have not adequately alleged that any of their own communications were collected. MTD at 16-17. The Court can reject this argument for the reasons set forth in § III, *supra*.

#### 2. **Defendants' Derivative "No Interception" Arguments Should Be Rejected.**

Similarly, Defendants' assertion that Plaintiffs' CIPA § 631, IEA, FSCA, and WESCA claims fail because they did not adequately allege an "interception,"[6] relies entirely on their earlier Federal Wiretap Act "interception" argument. MTD at 17-18. The Court should reject this argument for the reasons set forth in § IV.A.1, *supra*. In addition, Defendants' argument that they were a participant in the communications at issue and therefore are exempt from CIPA and IEA relies entirely on their earlier argument that they are exempt from liability under the Federal

---

[6] Defendants incorporated a "no interception" argument as to the FSCA and WESCA claims in footnote 11 of their brief with no additional argument.

Wiretap Act as a party to the relevant communications. MTD at 17. The Court should reject this argument for the reasons set forth in § IV.A.2, *supra*.

### 3. Plaintiffs' Intercepted Communications Are Actionable Under CIPA § 632, FSCA, and IEA.

Defendants next argue that because Plaintiffs did not allege that their collected data was "private" or "confidential," Plaintiffs' CIPA § 632, FSCA, and IEA claims fail because those statutes only protect "private" (FSCA, IEA) or "confidential" (CIPA) information. MTD at 18. Defendants' failure to cite any authority for the proposition that Plaintiff must specifically allege that the collected data was private and confidential is notable, but ultimately immaterial because Plaintiffs repeatedly allege that their data was private and confidential. *See, e.g.*, Compl. ¶ 4 ("through their secret use of an in-app browser, Defendants have unlawfully intercepted ***private and personally identifiable data*** from TikTok users and used such data to generate massive revenue"); ¶ 223 ("[Plaintiffs'] ***personal, private, and sensitive*** data have been collected, viewed, accessed, stored, and used by Defendants."); ¶ 219 ("Defendants—without consent and authorization of all parties—eavesdropped and/or recorded ***confidential*** communications through an electronic amplifying or recording device in violation of § 631(a) of the CIPA.") (emphasis added). Plaintiffs also allege, based on studies cited in the Complaint, that collection and disclosure of personal data of the type collected by Defendants "is a violation of privacy expectations that have been established as general social norms." *Id*. ¶¶ 169-75.

Courts routinely find that allegations regarding the nonconsensual tracking and collection of data, like that alleged by Plaintiffs, are sufficient to plausibly state a reasonable expectation of privacy, including in a recent case against Defendants themselves. *See Griffith*, 697 F. Supp. 3d at 969-972 (surveying case law and finding the plaintiff's allegations "that Defendants have provided the TikTok SDK to numerous websites and use it to collect information about internet users'

19

browsing activities that can be compiled to 'assemble a comprehensive profile of these non-TikTok users,' all without the users' permission" sufficient under CIPA); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 604 (holding that "the allegations that Facebook allegedly compiled highly personalized profiles from sensitive browsing histories and habits prevent us from concluding that the Plaintiffs have no reasonable expectation of privacy"); *Vasil*, 2018 WL 1156328, at *4, 8 (IEA claim survived as to personal information including health and fitness information); *Kurowski*, 683 F. Supp. 3d at 853 (similar); *Thakka v. Ocwen Loan Servicing, LLC*, No. 15 cv 10109, 2019 WL 2161544, at *13 (N.D. Ill. May 17, 2019) ("examples of inherently private facts include a person's financial, medical, or sexual life"); *Katz-Lacabe v. Oracle Am., Inc.*, No. 22-CV-04792-RS, 2023 WL 6466195, at *5 (N.D. Cal. Oct. 3, 2023), *aff'd*, No. 22-CV-04792-RS, 2023 WL 7166815 (N.D. Cal. Oct. 30, 2023) (holding that, in an FSCA case, "[o]ne of Plaintiffs' central contentions is that users do not actually consent to either Defendants' or third-party websites' collection of information about their website activities and that they had a corresponding privacy interest in that information. Plaintiffs have sufficiently pled a reasonable expectation of privacy in at least some of the information they aver Defendants compiled through an extensive data collection and profiling scheme.").

### 4. Plaintiff Berrios States a FSCA Claim.

The FSCA specifically excludes "[a]ny communication from an electronic or mechanical device which permits the tracking of the movement of a person or an object." Fla. Stat. § 934.02(12)(c). Courts have read that exclusion to find that the FSCA "does not extend to the use of commonplace analytics software to improve a website browsers' experience," *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, at *3 (Fla. Cir. Ct. June 17, 2021), and does not apply to tracking software that does not "convey the substance of any communication." *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021). Defendants

20

claim this exception dooms Plaintiff Berrios's claim but, in doing so, mischaracterize his allegations.

Defendants first argue that the FSCA does not apply based on their discredited argument that the only purpose of Defendants' data collection from the IAB was for troubleshooting and other analytics purposes, and not for advertising. MTD at 19. The Court should again reject that argument. *See* § I, *supra*.

Next, Defendants argue that Plaintiffs do not allege an interception of "contents" or "communications" because they only allege that Defendants collected keystroke, tap, and other data. MTD at 19. Not surprisingly, Defendants cherry pick a single paragraph in the Complaint which discusses only the method by which Defendants collect certain data, not the contents of that data. However, Plaintiffs allege in detail elsewhere in the Complaint that Defendants collected their personal information, contact information, credit card information, and social security numbers, Compl. ¶¶ 5-14, as well as other private information. *See, e.g.*, *id.* ¶ 230.

Notably, Defendants' arguments stem from the same misguided premise that the IAB code at issue is tantamount to session replay software. MTD at 18-19. Indeed, each of the cases Defendants cite involved the use of session replay software. But the IAB is not session replay technology because session replay technology is deployed by a website owner on its ***own website*** that simply "tracks a website browser's movements." *Jacome*, 2021 WL 3087860, at *3. As one of Defendants' cited cases explained, "this mere tracking of Plaintiff's movements on Defendant's website is the cyber analog to record information Defendant could have obtained through a security camera at a brick-and-mortar store." *Goldstein*, 559 F. Supp. 3d at 1321. As described in detail above, Plaintiffs allege that Defendants' IAB does far more than track movements, and that it collects the substance of Plaintiffs' communications with ***all third-party websites***.

### 5. WESCA's Service Provider Exemption Is Inapplicable.

Defendants' argument that WESCA's service provider exemption applies is entirely derivative of its earlier Federal Wiretap Act "ordinary course of business" exemption argument. MTD at 20. For the reasons set forth in § IV.A.3 above, the Court should reject this argument.

### C. __Plaintiffs Properly Allege a UCL Claim.__

### 1. Plaintiffs Adequately Allege Economic Injury.

Plaintiffs allege that they suffered an economic injury sufficient to confer UCL standing by alleging in detail that personal data — "including the data that Defendants collected from Plaintiffs and Class Members" — is extremely valuable to companies (*e.g.*, Compl. ¶¶ 157-63, 167), there is a market for that data (*id*. ¶¶ 163-66), and that "Defendants have deprived Plaintiffs and Class Members of the economic value of their data without providing proper consideration for their property" (*id*. ¶ 168).

Numerous courts have found similar allegations to be sufficient. *A.B. by & Through Turner v. Google LLC*, No. 23-CV-03101-PCP, 2024 WL 3052969, at *7 (N.D. Cal. June 18, 2024) (economic injury adequately alleged where plaintiffs alleged that there is a market for consumers to monetize personal information and that defendants data collection deprives plaintiffs of the full value of their data); *Calhoun*, 526 F. Supp. 3d at 636 (concluding that "plaintiffs who suffered a loss of their personal information suffered economic injury and had standing");[7] *Brown v. Google LLC*, 2021 WL 6064009, at *15 (N.D. Cal. Dec. 22, 2021) (finding the loss of personal information through Google's data collection as sufficient to qualify as the diminution of a future property interest); *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *24 (N.D. Cal. Mar. 25,

---

[7] *Calhoun* recognized that "the Ninth Circuit and a number of district courts, including this Court, have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing." *Id*.

2024) (noting that privacy harms can constitute economic injury to confer UCL standing under three theories: unfair benefit-of-the-bargain to businesses who violate user expectations about how their data will be used, diminished value of personal information, and reduced right to exclude others from accessing personal data).

Defendants argue that Plaintiffs' allegations are not enough because Plaintiffs discuss the "value of personal information *in general*." MTD at 21. Not so. Plaintiffs allege detailed facts regarding the value of the types of data at issue in the complaint, including personal information, contact information, financial information, and social security numbers (Compl. ¶¶ 161-64), as well as facts about the specific markets for personal data (*id*. ¶¶ 165-66). Additionally, Plaintiffs allege that "User data—including personal data (*i.e.*, gender, web browser cookies, IP addresses, and device IDs), engagement data and information (*i.e.*, how consumers interact with a business's website, applications, and emails), behavioral data (*i.e.*, customers' purchase histories and product usage information), and attitudinal data (*i.e.*, data on consumer satisfaction) constitutes highly valuable information about consumers that companies use to improve customer experiences, refine their marketing strategies, capture data to sell it, and even secure more sensitive consumer data." *Id*. ¶ 167.

In sum, Plaintiffs adequately allege economic injury because they plausibly allege that Defendants' improper collection and sale of their personal data to advertisers deprives Plaintiffs of its value and future property interest. *See Brown*, 2021 WL 6064009, at *15 (noting "because there are several browsers and platforms willing to pay individuals for data, it is plausible that Plaintiffs will decide to sell their data at some point"); *Turner*, 2024 WL 3052969, at *7 (same). Plaintiffs also plausibly allege that they were deprived of the right to exclude Defendants from accessing

their personal data. *See In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *25. Accordingly, the Court should find that Plaintiffs have UCL standing.

### 2. Plaintiffs Adequately Allege Unfair and Unlawful Conduct.[8]

Defendants' sole argument that Plaintiffs failed to adequately allege a violation of the UCL's "unlawful" prong is that Plaintiffs failed to adequately allege violations of the underlying statutes. MTD at 23. However, Plaintiffs demonstrated above that they sufficiently allege violations of the Wiretap Act and CIPA, *see* §IV.A-B, *supra*, and alleged violations of those statutes are sufficient. *See e.g.*, *Brown*, 2021 WL 6064009, at *18.

Defendants' argument that Plaintiffs failed to adequately allege a violation of the UCL's "unfair" prong is based solely on their meritless claim that Plaintiffs failed to adequately allege a violation of the unlawful prong. MTD at 23. But a claim under the "unfair" prong of the UCL is independent of any claim under the "unlawful" prong, and Plaintiffs have adequately alleged facts demonstrating that Defendants' business practices "are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers[,]" and those practices are "not outweighed by any countervailing benefits to consumers or competition as contemplated under the UCL." Compl. ¶¶ 247, 250. *See Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1215 (9th Cir. 2020) (analyzing the pleading requirements under the UCL's "unfair" and "unlawful" prongs separately).

### D. Plaintiffs' Unjust Enrichment Claims Are Well-Pled.

Defendants argue that Plaintiffs' unjust enrichment claims are deficient for various reasons, none of which are persuasive. MTD at 23-25. At the outset, contrary to Defendants' assertion, Plaintiffs allege in detail how Defendants benefited from the collection of the data. *See* Compl. ¶ 260 ("Defendants received benefits from Plaintiffs and Class Members in the form of data with

---

[8] Plaintiffs do not allege fraudulent business practices in violation of the UCL.

24

substantial monetary value that Defendants sold for marketing and advertising purposes and unjustly retained those benefits at the expense of Plaintiffs and Class Members."); ¶¶ 90-98 (detailing how Defendants profit by monetizing user data). Defendants' additional arguments fail for the reasons below.

*First*, Plaintiffs may bring unjust enrichment claims despite seeking a legal remedy because Plaintiffs incorporated only the facts and not the preceding counts into their unjust enrichment claim. Compl. ¶ 259. This alternative pleading is permitted under Rule 8. *See* Fed. R. Civ. P. 8(d)(2)-(3); *Kahn v. Walmart Inc.*, No. 23-1751, 2024 WL 3282097, at *13 (7th Cir. July 3, 2024) (a plaintiff "may plead and pursue his unjust enrichment claim in the alternative"); *Larson v. Am. Honda Motor Co.*, No. 3:23-cv-01238-L-BGS, 2024 WL 3293875, at *10 (S.D. Cal. Apr. 2, 2024) (Florida and California); *Albright v. Concurrent Techs. Corp.*, No. 3:21-cv-00112, 2022 WL 4640115, at *6 (W.D. Pa. Sept. 30, 2022) (Pennsylvania).

*Second*, all of Plaintiffs' claims are well-pled, so even if their unjust enrichment claims were derivative—they are not—they survive.

*Third*, Defendants have not established that an express contract exists that governs the relationship of the parties and that such contract would preclude Plaintiffs' claim. *See* § II, *supra*. In any event, Plaintiffs properly plead their unjust enrichment claim in the alternative, as discussed above. *See Kahn*, 2024 WL 3282097, at *13.

*Fourth*, the Seventh Circuit confirmed earlier this month that unjust enrichment is a separate cause of action in Illinois. *See id.*; *accord Hernandez v. Illinois Inst. of Tech.*, 63 F.4th 661, 671 (7th Cir. 2023) (quoting the Illinois Supreme Court).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety. Alternatively, if the Court dismisses any of Plaintiffs' claims, Plaintiffs request leave to amend.

Respectfully Submitted,

Dated: August 6, 2024      /s/ *Roland Tellis*             
Roland Tellis
rtellis@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Blvd., Suite 1600
Encino, California 91436

*Chair of Plaintiffs' Steering Committee*

Stephen R. Basser
sbasser@barrack.com
**BARRACK, RODOS & BACINE**
One America Plaza
600 West Broadway, Suite 900

James E. Cecchi
jcecchi@carellabyrne.com
**CARELLA BYRNE CECCHI BRODY &
AGNELLO, P.C.**
5 Becker Farm Rd.
Roseland, NJ 07068

Bryan P. Thompson
bryan.thompson@cclc-law.com
**CHICAGO CONSUMER LAW CENTER, P.C.**
650 Warrenville Road, Suite 100
Lisle, IL 60532

MaryBeth V. Gibson
marybeth@gibsonconsumerlawgroup.com
**GIBSON CONSUMER LAW GROUP, LLC**
4729 Roswell Road
Suite 208-108
Atlanta, GA 30342

John C. Herman
jherman@hermanjones.com
**HERMAN JONES LLP**
3424 Peachtree Road, N.E., Suite 1650
Atlanta, Georgia 30326

Israel David
israel.david@davidllc.com
**ISRAEL DAVID LLC**

26

17 State Street, Suite 4010
New York, New York 10004

Tyler S. Graden
tgraden@ktmc.com
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087

Kate M. Baxter-Kauf
kmbaxter-kauf@locklaw.com
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue S., Suite 2200
Minneapolis, MN 55401

Michael R. Reese
mreese@reesellp.com
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025

Carey Alexander
calexander@scott-scott.com
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169

*Plaintiffs' Steering Committee*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorneys of record for each party through the Court's electronic filing service on this date, which will send notification of such filing to the e-mail addresses registered.


Dated:     August 6, 2024                    By:    */s/ Roland Tellis*_____