**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: TIKTOK INC. IN APP BROWSER PRIVACY LITIGATION | MDL 2948-A |
| | Master Docket No. 24-cv-2110 |
| This Document Relates to: ALL ACTIONS | Judge Rebecca R. Pallmeyer |
| | **Hearing Set for September 10, 2024 at 4 p.m.** |

**<u>DEFENDANTS TIKTOK INC. AND BYTEDANCE INC.'S REPLY
IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFFS' MASTER CONSOLIDATED COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I. PLAINTIFFS CANNOT AVOID DISMISSAL BY IGNORING THAT THE KRAUSE POST SAYS THERE IS NO BASIS FOR THEIR ALLEGATIONS ............. 2

II. PLAINTIFFS CANNOT AVOID DISMISSAL BY IGNORING THAT THE PRIVACY POLICY PERMITTED THE ALLEGED DATA COLLECTION ................ 4

    A. The Court Can and Should Consider the TikTok Privacy Policy ......................... 4

    B. The Privacy Policy Disclosed that Defendants May Collect the Data At Issue ................................................................................................................ 6

III. PLAINTIFFS' CONCLUSORY, COPY-PASTE ALLEGATIONS LACK THE INDIVIDUAL FACTS REQUIRED TO SHOW THEY HAVE A CLAIM ................. 10

IV. PLAINTIFFS' OPPOSITION FAILS TO IDENTIFY FACTUAL ALLEGATIONS SUFFICIENT TO CURE THE NUMEROUS OTHER DEFECTS ..................................................................................................... 13

    A. Plaintiffs Do Not State a Federal Wiretap Act Claim ........................................ 13

        1. Plaintiffs Have Not Identified Any Intercepted Communications ........... 13

        2. Defendants Were a Party to Any Communications ................................. 14

        3. The Ordinary Course of Business Exception Applies Here ..................... 16

        4. Defendants Did Not Disclose or Use "Intercepted" Communications ......................................................................................... 17

    B. Plaintiffs Fail to State a State Law Wiretapping or Eavesdropping Claim .......... 18

        1. No "Communications" or "Conversations" Were Intercepted ............... 18

        2. Defendants Were a Party to Any Communication, So the CIPA 631 and IEA Claims Fail .......................................................................... 18

        3. No "Confidential" or "Private" Communications Were Intercepted, So the CIPA 632, FSCA, and IEA Claims Fail ....................................... 18

        4. The FSCA Claim Fails for Multiple Independent Reasons ..................... 20

        5. The Alleged Collection Falls Within the Service Provider Exception, So the WESCA Claim Fails .................................................. 21

    C. Plaintiffs Fail to State a UCL Claim .................................................................. 22

        1. Plaintiffs Lack UCL Standing ................................................................ 22

        2. The UCL Claim Fails on the Merits ....................................................... 23

    D. Plaintiffs Fail to State Any Unjust Enrichment Claim ....................................... 24

CONCLUSION ..................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. by & through Turner v. Google LLC*,
2024 WL 3052969 (N.D. Cal. June 18, 2024) .........................................................................23

*A.S. v. Selectquote Insurance Servs.*,
2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) .........................................................................21

*Arteaga v. U.S.*,
711 F.3d 828 (7th Cir. 2013) .....................................................................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................................3, 12, 19

*Backhaut v. Apple Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014) ....................................................................................16

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ..................................................................................22

*Bogie v. Rosenberg*,
705 F.3d 603 (7th Cir. 2013) .....................................................................................................3

*Bonte v. U.S. Bank, N.A.*,
624 F.3d 461 (7th Cir. 2010) ...............................................................................................2, 17

*Brown v. Google LLC*,
2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ........................................................................23

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ......................................................................................9

*Browning v. AT&T Corp.*,
682 F. Supp. 2d 832 (N.D. Ill. 2009) .....................................................................................16

*Campbell v. Facebook*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ...............................................................................13, 17

*In re Clearview AI, Inc., Consumer Priv. Litig.*,
585 F. Supp. 3d 1111 (N.D. Ill. 2022) ...................................................................................22

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ......................................................................................12

## TABLE OF AUTHORITIES

Page(s)

*Doe v. CVS Pharmacy, Inc.*,
    982 F.3d 1204 (9th Cir. 2020) ...............................................................24

*Erickson v. Nebraska Mach. Co.*,
    2015 WL 4089849 (N.D. Cal. July 6, 2015)..............................................6

*EVO Brands, LLC v. Al Khalifa Grp. LLC*,
    657 F. Supp. 3d 1312 (C.D. Cal. 2023) .....................................................6

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ...................................................13, 19, 20

*Fin. Fiduciaries, LLC v. Gannett Co., Inc.*,
    46 F.4th 654 (7th Cir. 2022) .............................................................1, 3, 6

*Foreword Magazine, Inc. v. OverDrive, Inc.*,
    2011 WL 5169384 (W.D. Mich. Oct. 31, 2011).........................................6

*Goldstein v. GM LLC*,
    2022 WL 484995 (S.D. Cal. Feb. 16, 2022).............................................24

*Goldstein v. Luxottica of Am., Inc.*,
    2021 WL 4093295 (S.D. Fla. Aug. 23, 2021)......................................18, 21

*In re Google Assistant Privacy Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................................................13

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
    806 F.3d 125 (3d Cir. 2015)...........................................................14, 15

*In re Google Inc. Gmail Litig.*,
    2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .........................................17

*Griffith v. TikTok Inc.*,
    697 F. Supp. 3d 963 (C.D. Cal. 2023) ...............................9, 19, 20, 22

*Hammerling v. Google LLC*,
    2024 WL 937247 (9th Cir. Mar. 5, 2024)..................................................7

*Hazel v. Prudential Fin., Inc.*,
    2023 WL 3933073 (N.D. Cal. June 9, 2023)............................................22

*Henson v. CSC Credit Servs.*,
    29 F.3d 280 (7th Cir. 1994) ....................................................................11

iii

## TABLE OF AUTHORITIES

Page(s)

*Hepp v. Ultra Green Energy Servs., LLC*,
2016 WL 1073070 (N.D. Ill. Mar. 18, 2016)........................................................................5, 6

*Hernandez v. Illinois Inst. of Tech.*,
63 F.4th 661 (7th Cir. 2023) ...................................................................................................25

*Hogan v. Amazon.com, Inc.*,
2022 WL 952763 (N.D. Ill. Mar. 30, 2022)..............................................................................6

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024)......................................................................22, 23

*Jacome v. Spirit Airlines Inc.*,
2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ................................................................19, 21

*Kahn v. Walmart, Inc.*,
107 F.4th 585 (7th Cir. 2024) ..................................................................................................25

*Katz-Lacabe v. Oracle Am., Inc.*,
2023 WL 6466195 (N.D. Cal. Oct. 3, 2023)............................................................................20

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .................................................................................................23

*Kurowski v. Rush Syst. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) .......................................................................12, 13, 20

*Lau v. Gen Digital Inc.*,
2023 WL 10553772 (N.D. Cal. Sept. 13, 2023) ...................................................15, 16, 22, 23

*In re Lifschultz Fast Freight Corp.*,
63 F.3d 621 (7th Cir. 1995).....................................................................................................19

*Martins v. 3PD, Inc.*,
2013 WL 1320454 (D. Mass. Mar. 28, 2013)...........................................................................6

*McCauley v. City of Chicago*,
671 F.3d 611 (7th Cir. 2011) .............................................................................................12, 13

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ......................................................................................9

*In re Meta Pixel Tax Filing Cases*,
2024 WL 1251350 (N.D. Cal. Mar. 25, 2024)...................................................................22, 23

iv

# TABLE OF AUTHORITIES

Page(s)

*Moore v. Centrelake Med. Grp., Inc.*,
  83 Cal. App. 5th 515 (2022) ...................................................22

*Pond Guy, Inc. v. Aquascape Designs, Inc.*,
  2014 WL 2863871 (E.D. Mich. June 24, 2014).................................6

*Pruchnicki v. Envision Healthcare Corp.*,
  845 F. App'x 613 (9th Cir. 2021) ...........................................22

*Richardson v. Nat'l City Bank of Evansville*,
  141 F.3d 1228 (7th Cir. 1998) ................................................8

*Roe v. Amgen Inc.*,
  2024 WL 2873482 (C.D. Cal. June 5, 2024) ...............................22, 23

*S.D. v. Hytto Ltd.*,
  2019 WL 8333519 (N.D. Cal. May 15, 2019)...................................16

*Sa'Buttar Health & Med., P.C. v. Tap Pharms., Inc.*,
  2004 WL 1510023 (N.D. Ill. July 2, 2004).....................................4

*Saeedy v. Microsoft Corp.*,
  2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ..............................22

*Saroya v. Univ. of the Pac.*,
  2021 WL 2400986 (N.D. Cal. June 11, 2021)..................................24

*Sloan v. Anker Innovations Ltd.*,
  2024 WL 935426 (N.D. Ill. Jan. 9, 2024) ...................................15

*Specht v. Google*,
  747 F.3d 929 (7th Cir. 2014) ................................................5

*Swarts v. Home Depot, Inc.*,
  689 F. Supp. 3d 732 (N.D. Cal. 2023) .......................................22

*Thakkar v. Ocwen Loan Serv., LLC*,
  2019 WL 2161544 (N.D. Ill. May 17, 2019)...................................20

*Tierney v. Vahle*,
  304 F.3d 734 (7th Cir. 2002) ................................................5

*U.S. v. Eady*,
  648 F. App'x 188 (3d Cir. 2016) ............................................16

# TABLE OF AUTHORITIES

Page(s)

*U.S. v. Pasha*,
  332 F.2d 193 (7th Cir. 1964) ........................................................................................14, 15

*U.S. v. Santos*,
  553 U.S. 507 (2008)........................................................................................................16

*U.S. v. Taylor*,
  640 F.3d 255 (7th Cir. 2011) ..........................................................................................16

*Vasil v. Kiip, Inc.*,
  2018 WL 1156328 (N.D. Ill. Mar. 5, 2018)....................................................................20

*Walsh v. Teltech Sys., Inc.*,
  2015 WL 12856456 (D. Mass. July 30, 2015)...................................................................6

*Yuksel v. Twitter, Inc.*,
  2022 WL 16748612 (N.D. Cal. Nov. 7, 2022) ...................................................................6

*Zak v. Bose Corp.*,
  2019 WL 1437909 (N.D. Ill. Mar. 31, 2019)..............................................................14, 15

**Statutes**

720 ILCS 5/14 *et seq*..............................................................................................18, 19, 20

18 Pa. C.S. § 5701 *et seq* ..............................................................................................18, 21

18 U.S.C. § 2511 *et seq*..................................................................................................*passim*

Cal. Penal Code § 631 *et seq* ...............................................................................................18

Cal. Penal Code § 632 *et seq* .........................................................................................18, 19

Fla. Stat. § 934.01 *et seq* ............................................................................................18, 20, 21

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(1).....................................................................12

Federal Rules of Civil Procedure Rule 12(b)(6)..........................................................1, 5, 12

Federal Rules of Civil Procedure Rule 23(a) ........................................................................10

Federal Rules of Evidence Rule 201.............................................................................4, 5, 10

## <u>INTRODUCTION</u>

Relying entirely on the Krause Post,[1] every claim in Plaintiffs' Complaint is based on the allegation that Defendants used keystroke logging in the TikTok app's web browser to collect users' "contact information," "credit card information," "banking information," and other "personal" data. Compl. ¶¶ 1, 10. Yet Defendants' Motion to Dismiss showed that these claims must fail because (1) the Krause Post itself says there is no evidence to support the conclusion that Defendants collected this data (which is not surprising, since they did not collect this data); (2) the applicable privacy policy Plaintiffs agreed to permitted the collection of this data (even though Defendants did not actually collect it); and (3) Plaintiffs do not allege facts showing they personally typed such data into a website while using the TikTok app's web browser.

As explained below, Plaintiffs' Opposition attempts to evade these defects by misquoting and mischaracterizing the Krause Post, the TikTok Privacy Policy, and even Plaintiffs' own Complaint. For example, Plaintiffs tell the Court that "Krause's report includes an admission from TikTok that it used JavaScript code to *collect and use* the data" at issue (Opp. at 3 (emphasis altered)), when in fact the Krause Post actually states that "[t]he company confirmed those features exist in the code, but said TikTok is *not* using them" (Krause Post, Weibell Dec. Ex. 1, ECF No. 56-2 at 4 (emphasis added)). Even on a Rule 12(b)(6) motion, Plaintiffs cannot evade dismissal by misquoting the source documents on which their Complaint relies. *Fin. Fiduciaries, LLC v. Gannett Co., Inc.*, 46 F.4th 654, 663–64 (7th Cir. 2022) (this "doctrine prevents a plaintiff from avoiding dismissal by omitting facts or documents that undermine his case"). Because the Complaint is riddled with these and other terminal defects, it should be dismissed.

---

[1] Capitalized terms have the same meaning as in Defendants' opening memorandum. *See* ECF No. 56.

1

## ARGUMENT

I.  **PLAINTIFFS CANNOT AVOID DISMISSAL BY IGNORING THAT THE KRAUSE POST SAYS THERE IS NO BASIS FOR THEIR ALLEGATIONS**

As the Motion explained, the Complaint's allegations are not plausible because Krause repeatedly warned that his findings show *only* that the software at issue had the *ability* to collect the data at issue—not that this data was actually recorded *and then* transmitted to Defendants. *See* Mot. at 1, 5–7. Seeking to manufacture a plausible basis for their claims, Plaintiffs' Opposition (Opp. at 3) misreads cherry-picked language from the Krause Post that, read in context, only demonstrates the hole in their theory. Specifically, Plaintiffs rely on Krause's statement that the code "subscribes to all keyboard inputs," yet Plaintiffs completely ignore Krause's warning that "[w]e can't know what [the app] uses the subscription for" because "subscribing" to keystrokes does not mean recording or transmitting them to Defendants. Krause Post at 4.

Indeed, the Krause Post repeatedly rejects Plaintiffs' opposition argument: "**Important**: Just because an app injects JavaScript into external websites, doesn't mean the app is doing anything malicious. *There is no way for us to know* the full details on what kind of data each in-app browser collects, or how or *if the data is being transferred or used*." *See id.* at 3 (bold in original, italics added). Krause later repeated that his "research does not show that these companies are actually using that code to collect data, send it to their servers or share it with third parties," and that TikTok Inc.'s explanation that it was *not* collecting the alleged data "sounds very reasonable." Mot. at 6. Plaintiffs do not even attempt to respond to—and therefore concede—the many statements by Krause quoted in the Motion that contradict the Complaint's conclusions. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond constitutes waiver).

Incredibly, Plaintiffs instead attempt to fabricate an admission of liability by *misquoting* TikTok Inc.'s spokesperson as stating that it "used JavaScript code to collect and use the data" at

issue. Opp. at 3. But the Krause Post clearly states the opposite: TikTok Inc. said it was "*not* using" the code as a "keylogger" to collect the text users typed. *See* Krause Post at 4. It said "the Javascript code in question is used only for debugging, troubleshooting and performance monitoring of that experience—like checking how quickly a page loads or whether it crashes." *Id.* And contrary to Plaintiffs' Opposition (Opp. at 3), Krause never said that TikTok Inc.'s statement "confirm[ed]" that Defendants were *collecting* the text users typed. Again, quite the opposite: Krause stated only that it "confirms my findings [that the app] injects code into third party websites through their in-app browser[] that behaves like a keylogger. However [the company] claims it's *not being used*." *See* Krause Post at 4 (emphasis added).

This defect is dispositive because the mere *ability* to do something does not make it plausible that the thing was done. *See* Mot. at 5–7; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.").

Moreover, because the Krause Post is central to Plaintiffs' allegations, they cannot avoid dismissal by ignoring the unfavorable parts of the Krause Post. *Fin. Fiduciaries, LLC*, 46 F.4th at 663–64. "This incorporation-by-reference doctrine prevents a plaintiff from avoiding dismissal by omitting facts or documents that undermine his case." *Id.* Nor can Plaintiffs rely on allegations that contradict the Krause Post. "When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

Plaintiffs fail to find any other support for their claims. They argue that their claims rest on the software code itself, *see* Opp. at 4, but the Complaint cites the Krause Post for that code and is thus contradicted by Krause's other statements that Plaintiffs' conclusions cannot be drawn from

that code. *See* Compl. ¶ 139 n.157; *see generally id.* ¶¶ 137–40. Plaintiffs also identify a litany of other allegations but admit those allegations do not "relate specifically" to the TikTok in-app browser feature. Opp. at 5. Consequently, because there is nothing that provides a plausible basis for Plaintiffs' conclusory (and incorrect) theory that the text typed by users in the app's web browser was transmitted to Defendants, Plaintiffs' Complaint must be dismissed.

## II. PLAINTIFFS CANNOT AVOID DISMISSAL BY IGNORING THAT THE PRIVACY POLICY PERMITTED THE ALLEGED DATA COLLECTION

The TikTok Privacy Policy cited in the Complaint notified Plaintiffs that Defendants *could* collect the data that underlies their Complaint—even though Defendants did not actually collect it. *See* Mot. at 7–10. Plaintiffs try, but cannot escape the plain terms of the Privacy Policy.

### A. The Court Can and Should Consider the TikTok Privacy Policy

The Privacy Policy is properly subject to judicial notice.[2] Mot. at 7 n.4. Notably, Plaintiffs make no argument that Defendants submitted inaccurate copies of the Privacy Policy for judicial notice. Plaintiffs merely attack the Privacy Policy as "unauthenticated." But authentication is not required. Rule 201 (which Plaintiffs cite, *see* Opp. at 7) makes this clear by permitting the Court to take judicial notice *sua sponte*. *See* Fed. R. Evid. 201(c)(1). The rule would be meaningless if authentication was required. And authentication is a moot issue because Plaintiffs do not actually believe that the copies submitted by Defendants are materially inaccurate. *See Sa'Buttar Health & Med., P.C. v. Tap Pharms., Inc.*, 2004 WL 1510023, at *3 (N.D. Ill. July 2, 2004) (considering

---

[2] Plaintiffs suggest earlier versions of the Privacy Policy should not be considered because Defendants did not "demonstrate that they contained the same provisions" as those cited in the Motion. Opp. at 6 n.2. But that fact is evident from the face of the documents, and there is no requirement that all versions be identical for the Court to judicially notice their contents. *Compare* Weibell Dec. Ex. 4, ECF No. 56-5 (Privacy Policy, March 28, 2024) at 1–4, 7, 11 to Weibell Dec. Ex. 2, ECF No. 56-3 (Privacy Policy, June 2, 2021) at 1–2, 5, 7 and Weibell Dec. Ex. 3, ECF No. 56-4 (Privacy Policy, January 24, 2024) at 1–4, 7, 11.

document on motion to dismiss that plaintiff "claim[ed]" was "unauthenticated" absent "good faith grounds to dispute its authenticity").

For these reasons, Plaintiffs' reliance on *Specht v. Google* is misplaced. There, the Seventh Circuit had reasons to doubt the accuracy of certain archived screenshots of obscure websites from 2005 that were supported only by "fallible" witness memory. *See* 747 F.3d 929, 933 (7th Cir. 2014).[3] Here, unlike the obscure, defunct websites in *Specht*, the Court can certainly take judicial notice of the official public privacy policy for one of the most downloaded apps globally during the relevant years. The TikTok Privacy Policy was accessible within the app, on the website, and from the app stores where users downloaded it. Innumerable copies of the policy exist throughout the world. Thus, its contents "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

Notably, in other cases, the Seventh Circuit itself has relied on an archived version of a website retrieved via the Wayback Machine (without requiring authentication) in considering a motion to dismiss. *See Arteaga v. U.S.*, 711 F.3d 828, 834 (7th Cir. 2013). And even after *Specht*, district courts in the Seventh Circuit have continued to take judicial notice of the contents of web pages available through the Wayback Machine because *Specht* has no bearing on the standard for judicial notice. *See* Mot. at 7 n.4 (citing *Hepp v. Ultra Green Energy Servs., LLC*, 2016 WL 1073070, at *2 n.1 (N.D. Ill. Mar. 18, 2016)). Plaintiffs have no response to *Hepp*.

Plaintiffs' only other argument is that "a printed version of an internet link" is "hardly reliable." Opp. at 7. But courts agree that the Internet Archive (*i.e.*, the Wayback Machine) is a

---

[3] For the same reason, *Tierney v. Vahle*, which Plaintiffs cite for the proposition that "defendant cannot 'submit a document in support of his Rule 12(b)(6) motion that required discovery to authenticate'" does not apply. Opp. at 7 (citing 304 F.3d 734, 739 (7th Cir. 2002)). In any event, the *Tierney* court did consider the relevant document. *Tierney*, 304 F.3d at 738.

5

source whose "accuracy cannot reasonably be questioned." *Hepp*, 2016 WL 1073070, at *2 n.1 (citing *Erickson v. Nebraska Mach. Co.*, 2015 WL 4089849, at *1 (N.D. Cal. July 6, 2015)).[4]

In addition to judicial notice, the Privacy Policy may also be considered by the Court because it is incorporated by reference into Plaintiffs' Complaint. *See* Mot. at 7 n.4. Plaintiffs do not respond to *Hogan*, cited in the Motion, which makes clear that an online service provider's policies are incorporated by reference into a complaint where they "govern the usage of" the services at issue. *See id.* (citing *Hogan v. Amazon.com, Inc.*, 2022 WL 952763, at *3 (N.D. Ill. Mar. 30, 2022)). Plaintiffs do not deny that the Privacy Policy governs their usage of and privacy expectations on the TikTok app. *See* Compl. ¶ 180.

The Privacy Policy is also incorporated by reference because—as Plaintiffs admit—the Complaint "reference[s] Defendants' privacy policies." Opp. at 7. Those references are not just "in passing," *id.*; Plaintiffs specifically allege that "[n]owhere in Defendants' Terms of Service or the privacy policies" is Defendants' alleged data collection disclosed. Compl. ¶ 180. Plaintiffs cannot avoid the incorporation by reference rule stated in *Financial Fiduciaries*, 46 F.4th at 663–64, simply by omitting the specific date of the Privacy Policy from the Complaint.

### B. The Privacy Policy Disclosed that Defendants May Collect the Data At Issue

Plaintiffs concede that the test for consent to data collection "is whether a reasonable user" viewing the Privacy Policy "would have understood that [Defendants]" may collect the data at issue. Opp. at 7–8. But that is not the standard to which Plaintiffs actually try to hold Defendants. Instead, they argue that the Privacy Policy should have expressly listed the collection of "all of the

---

[4] *See also Walsh v. Teltech Sys., Inc.*, 2015 WL 12856456, at *2 n.2 (D. Mass. July 30, 2015) (advising parties to "acquaint themselves with the Wayback Machine"); *EVO Brands, LLC v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312, 1322–23 (C.D. Cal. 2023); *Yuksel v. Twitter, Inc.*, 2022 WL 16748612, at *2 (N.D. Cal. Nov. 7, 2022); *Pond Guy, Inc. v. Aquascape Designs, Inc.*, 2014 WL 2863871, at *4 (E.D. Mich. June 24, 2014); *Martins v. 3PD, Inc.*, 2013 WL 1320454, at *16 n.8 (D. Mass. Mar. 28, 2013); *Foreword Magazine, Inc. v. OverDrive, Inc.*, 2011 WL 5169384, at *3 (W.D. Mich. Oct. 31, 2011).

details" of any text entered into the app, including a user's name, "address, telephone number, credit card or bank information, usernames, passwords, dates of birth, etc." *Id.* at 8.[5] Contrary to this incorrect view, a defendant need not have parroted a plaintiff's exact allegations for consent to be valid. Indeed, a privacy policy would be hundreds of pages and unreadable to the average user if it were required to list all possible phrasings of countless types of data included when an app collects any text entered by a user in the app.

Here, a reasonable user reading the TikTok Privacy Policy would understand that Defendants *may* collect any text entered by users while using the app, and the in-app browser feature is part of the app. The policy specifically discloses that Defendants may collect "[u]ser-generated content, including . . . text." Weibell Dec. Ex. 4, ECF No. 56-5 at 2. This applies across the "Platform," which includes all "TikTok services." *Id.* at 1.

Plaintiffs argue that these disclosures are insufficient for four reasons; all are incorrect.

***First***, Plaintiffs argue that the disclosure that Defendants may collect "information from you when you use the Platform" is "nonspecific." Opp. at 8–9. But that language cannot be read in a vacuum; it must be read in context with the entire Privacy Policy *as a whole*. *See, e.g.*, *Hammerling v. Google LLC*, 2024 WL 937247, at *2 (9th Cir. Mar. 5, 2024) (Google's privacy policy "expressly disclosed" alleged collection because it "must be read in context and construed as a whole"). The phrase at issue alerts users that *any* information they generate while using the TikTok platform *may* be collected, and the remainder of the policy provides further details.

---

[5] Plaintiffs also take issue with the fact that the Privacy Policy does not disclose "TikTok's use of the IAB" or "that the IAB surpasses a user's default browser whenever a user clicks on an internet hyperlink." Opp. at 8. But those are not privacy issues and would have no place in a privacy policy. In any event, it is implausible that Plaintiffs did not know they were using an in-app browser. *See* Mot. at 14 n.8.

7

**Second**, Plaintiffs argue that the Privacy Policy does not mention collection of "text" typed by users other than text stored in a user's "clipboard." Opp. at 9. But Plaintiffs are looking at the wrong part of the Privacy Policy. The provision cited in the Motion does not mention clipboard data and has no such limitation: "User-generated content, including comments, photographs, livestreams, audio recordings, videos, **text**, hashtags, and virtual item videos that you choose to create with or upload to the Platform." Weibell Dec. Ex. 4, ECF No. 56-5 at 2 (emphasis added).

**Third**, Plaintiffs argue that the disclosure of "internet or other network activity" and "browsing and search history (including content you have viewed in the Platform)," must be limited to "video" browsing and "video" search history—even though the word "video" is nowhere to be found in the sentence. Opp. at 9. But Plaintiffs cannot read words of limitation into the text that are not there. The example in the parenthetical clearly refers to any "content" viewed in the "Platform," and that content would include websites viewed from within the app, not just "videos" watched in the app. *See* Weibell Dec. Ex. 4, ECF No. 56-5 at 3. Moreover, reasonable readers understand that the word "including" in this phrase is non-exhaustive. *See Richardson v. Nat'l City Bank of Evansville*, 141 F.3d 1228, 1232 (7th Cir. 1998) ("'Include' is a word of illustration, not limitation"). The Privacy Policy discloses that "browsing and search history" are among the types of "internet or other network activity"—*not* simply video-viewing data on the TikTok app. *See* Weibell Dec. Ex. 4, ECF No. 56-5 at 3.

**Fourth**, Plaintiffs do not dispute that Defendants adequately disclosed the possible collection of "keystroke patterns or rhythms," and instead argue that this disclosure does not cover "keystroke logging that captures and records everything typed into a third-party website." Opp. at 9. Plaintiffs thus acknowledge that this case is limited to the text users typed while using the TikTok app to communicate with third-party websites, which the policy discloses when it says

8

"[u]ser-generated content, including . . . text," without any limitation, as discussed above. *See* Weibell Dec. Ex. 4, ECF No. 56-5 at 2.

Beyond these incorrect arguments made by Plaintiffs, their own cited authority confirms that the TikTok Privacy Policy adequately disclosed the alleged data collection. In *Meta Pixel Healthcare*, although the privacy policy did not disclose the collection of the "health" information at issue in that case, the court held that users *did* agree to data collection "akin to [] general internet browsing" based on very general disclosures in the privacy policy that the defendants would collect "personal data" and "information about [users'] activities" while browsing the internet. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 794 (N.D. Cal. 2022). Here, the TikTok Privacy Policy provided even more detail than the language the *Meta Pixel Healthcare* court found sufficient. *See* Weibell Dec. Ex. 4, ECF No. 56-5 at 1–3 (disclosing possible collection of user-generated "text," "internet or other network activity," "browsing and search history").

Separately, Plaintiffs' citation to *Griffith v. TikTok Inc.* (Opp. at 8) is grossly misplaced because that case had absolutely nothing to do with the *TikTok* Privacy Policy. That case was brought by plaintiffs who alleged they were *not TikTok app users*, were not bound by the disclosures in the TikTok Privacy Policy, and allegedly had not been told by the websites they visited that TikTok would receive their browsing data. 697 F. Supp. 3d 963, 966–67 (C.D. Cal. 2023). Consequently, *Griffith* has no bearing on this case because it was limited to a discussion of the privacy policies of the third-party websites visited by non-TikTok app users, not the TikTok Privacy Policy. *Id.* at 972. Similarly, Plaintiffs' reliance on *Brown v. Google* is misguided. In that case, the plaintiffs alleged the defendant affirmatively and falsely told users their browsing data would not be disclosed to third parties while using "Incognito Mode," even though it was being disclosed. *See* 685 F. Supp. 3d 909, 928 (N.D. Cal. 2023). There are no such allegations here.

9

Plaintiffs' final attempt to avoid the Privacy Policy is to argue that they signed up for an account on the TikTok app before the date on the sign-up screenshots submitted by Defendants with their Motion.[6] *See* Opp. at 10. Plaintiffs' timing argument is contradicted by the Complaint's allegation that "[t]he claims of Plaintiffs and Class Members arise from the same conduct by Defendants" and are thus "typical" for purposes of Fed. R. Civ. P. 23(a). Compl. ¶ 192. But regardless, the issue is moot because Plaintiffs do not allege that they did not consent to the Privacy Policy. To the contrary, the Complaint implies that Plaintiffs agreed to and were misled by the disclosures in the Privacy Policy. *See id.* ¶ 180 ("Nowhere in Defendants' Terms of Service or the privacy policies is it disclosed that . . . .").

Because the Privacy Policy disclosed the possibility of the alleged data collection, Plaintiffs' claims are barred.

## III. PLAINTIFFS' CONCLUSORY, COPY-PASTE ALLEGATIONS LACK THE INDIVIDUAL FACTS REQUIRED TO SHOW THEY HAVE A CLAIM

The Motion identified the individualized allegations missing from the Complaint that would be necessary for any individual to state a claim, *i.e.*, facts showing that Plaintiffs' own contact, credit card, banking or similar information was intercepted by Defendants. *See* Mot. at 10–11. Plaintiffs' Opposition does not point to a single allegation in the Complaint that fills this void. Instead, they reiterate their conclusory, copy-and-paste allegations that each Plaintiff used the in-app browsing feature and thus their contact, financial, etc. information was intercepted. *See* Opp. at 11–12. Plaintiffs ask the Court to infer plausibility simply because Defendants "make billions of dollars from advertisers who solicit users to make purchases and/or enter personal

---

[6] The Court "may take judicial notice on its own" of these screenshots regardless of whether the brief explicitly requests judicial notice. Fed. R. Evid. 201(c)(1).

information through links on the app." *Id.* at 12. But the fact that Defendants earn revenue from advertising (an unremarkable proposition) does not mean that *these Plaintiffs* entered specific personal information on websites accessed via the in-app browsing feature, that Defendants actually intercepted their data, or that Defendants somehow profited from the use of that data.

In the sister case to this action—which raised nearly-identical claims against Meta based on the Krause Post—the court dismissed the case after rejecting the same generic allegations made by Plaintiffs here. *See* Supplemental Declaration of Anthony J Weibell, Sept. 6, 2024, Ex. 1, Transcript of Oral Argument, *In re Meta Browser Tracking Litigation*, No. 22-cv-5267 (N.D. Cal. Aug. 17, 2023), ECF No. 91.[7] As Plaintiffs do here, the *Meta Browser* plaintiffs relied on the Krause Post to allege that their personal information was intercepted while using Facebook's in-app browser, *see id.* at Tr. 14:12–15, but made no allegations identifying the third-party websites they visited or any actions they took that resulted in the alleged interception, *see id.* at Tr. 13:1– 18. The court held that this was fatal to the case:

> [W]here I'm having trouble with your complaint is that ***there's nothing that seems to connect***. ***I don't have any actions from your plaintiffs*** that show me how it is that Facebook received any information from them. . . . I have that you say they visited a third-party website. ***I don't know what third-party website it is.*** I don't know when they visited. ***I don't have particularized information*** to show that these were the acts that resulted in what I believe is a harm that could occur. . . . ***[W]here are the examples of the clicks and keystrokes that any plaintiff made that was taken?***

*Id.* (emphases added); *see also id.* at Tr. 12:11–22, 14:12–15 ("[Y]ou're putting forward that there is financial and health information that was taken from your plaintiffs without actually pointing to any website where they would have entered that information."), 19:21–20:22 (Because "[t]here

---

[7] The Court may take judicial notice of matters of public record, including public court documents. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

isn't much more in the complaint other than the Krause blog post . . . there's nothing tying several of these allegations back to your plaintiffs themselves.").[8]

Plaintiffs here also do not identify a single "action" they took, website they visited, or "examples of the clicks and keystrokes" made by Plaintiffs. *Id.* at Tr. 13:1–18; *see also* Mot. at 10–11. Plaintiffs even admit that not "every website collects the specified data," Opp. at 12, rendering allegations about which websites they visited all the more necessary. They thus have not "give[n] enough details about the subject-matter of the case to present a story that holds together." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Under *Iqbal* and *McCauley*, Defendants cannot be forced to litigate this case for two to three years through discovery only to later find out that none of the named Plaintiffs ever personally visited a website with the TikTok app into which they typed the alleged sensitive information.

Defendants' Motion also cited several other cases in which the claims failed because the plaintiffs did not plead personalized factual allegations. Mot. at 11. Plaintiffs here cannot avoid this plainly applicable case law. For example, in *Cook*, the plaintiff failed to state a claim because she did not offer answers to basic questions like "[w]hat did [plaintiff] click," "[w]hich keystrokes did she enter," and "[w]hat kind of webpages did she visit." *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 69 (W.D. Pa. 2023). Plaintiffs' Complaint here lacks these same "critical necessary details" *Id.* And *Kurowski* and *Hartley* are not, as Plaintiffs claim, limited to HIPAA. Their reasoning applies with equal force here. A plaintiff cannot "reasonably expect" to assert claims based on the putative interception of sensitive information (there, health information; here, financial and "personal" information) yet "completely evade revealing" what information was allegedly

---

[8] While the *Meta Browser* court dismissed for lack of standing under Rule 12(b)(1), courts also dismiss on these grounds for failure to state a claim under Rule 12(b)(6). *See* Mot. at 11 (collecting cases dismissing claims for failure to plead personalized allegations under Rule 12(b)(6)).

intercepted. *Kurowski v. Rush Syst. for Health*, 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023). So too with *Google Assistant*. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 817 (N.D. Cal. 2020) (plaintiffs had to allege facts supporting an inference their data was intercepted in violation of the Wiretap Act).

In contrast, Plaintiffs' cited case law *is* distinguishable and fails to save their pleading. Plaintiffs mistakenly point to *Facebook Tracking* as purportedly absolving them of the need "to identify the websites that they visited" and "the specific actions they took on any website." Opp. at 12. But the discussion they cite to in that case is not about the lack of a personal causal link; it is about whether the plaintiffs sufficiently pleaded a "reasonable expectation of privacy" for their "intrusion upon seclusion claim." *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601, 603 (9th Cir. 2020). That holding is inapposite because there is no claim for intrusion upon seclusion here. *Facebook Tracking* thus does not relieve Plaintiffs from their burden to plead sufficient facts showing that they are personally entitled to relief. *See McCauley*, 671 F.3d at 616 (plaintiff must provide "some specific facts" supporting their claims). Similarly, *Campbell v. Facebook* does not address any argument that the plaintiffs' facts were insufficiently personal and recognizes that the allegations "must be enough to raise a right to relief above the speculative level." *See* 77 F. Supp. 3d 836, 838–50 (N.D. Cal. 2014).

## IV. PLAINTIFFS' OPPOSITION FAILS TO IDENTIFY FACTUAL ALLEGATIONS SUFFICIENT TO CURE THE NUMEROUS OTHER DEFECTS

### A. Plaintiffs Do Not State a Federal Wiretap Act Claim

#### 1. *Plaintiffs Have Not Identified Any Intercepted Communications*

Plaintiffs' Wiretap Act claim fails because no Plaintiff alleges facts demonstrating that their personal communications were intercepted by Defendants. *See* Mot. at 13; *supra* Section III. Plaintiffs do not dispute that this is a fundamental requirement. *See* Opp. at 13–14. They point to

13

two allegations to argue they meet this requirement, but those allegations do not meet the agreed-upon standard. The first, the conclusory statement that interception of a communication occurred "whenever a user clicked on a link to a website external to TikTok," Opp. at 13 (citing Compl. ¶ 207), has nothing at all to do with Plaintiffs' factual theory of the case, which is that *after* a user clicks a link and starts interacting with the webpage subsequently loaded into the TikTok in-app browser, the injected JavaScript code starts to collect their "activities on those websites." Compl. ¶ 1; *see also id.* ¶ 139. Because only a limited subset of people who click on a website link actually start communicating with the website after landing there, it is a logical fallacy for Plaintiffs to argue that their communications were intercepted "whenever a user clicked on a link to a website external to TikTok." The second category of allegations identified by the Opposition are Plaintiffs' deficient copy-and-paste allegations addressed above and rejected by the court in *Meta Browser Tracking Litigation* because they fail to allege any actual communication made by any named Plaintiff on a third-party website that was intercepted by Defendants. *See* Opp. at 13–14 (citing Compl. ¶¶ 5–14); *supra* Section III.

### 2. *Defendants Were a Party to Any Communications*

As Plaintiffs concede, a party to a communication cannot be liable for wiretapping. *See* Mot. at 13; Opp. at 14. But they ask this Court to go against the controlling authority defining what it is to be a "party" in favor of out-of-circuit authority that is the minority view. *See* Opp. at 14–15. In this Circuit and others, "a defendant is a 'party' to the communication within the meaning of the Wiretap Act when the defendant is a participant, even if the defendant was not an ***intended*** participant[.]" *Zak v. Bose Corp.*, 2019 WL 1437909, at *3 (N.D. Ill. Mar. 31, 2019) (emphasis in original) (citing *U.S. v. Pasha*, 332 F.2d 193, 198 (7th Cir. 1964) (even someone who fraudulently impersonates the intended recipient is still a party to the communication)); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 144 (3d Cir. 2015) (agreeing with Fifth

14

and Sixth Circuits that "[b]y citing *Pasha*, Congress strongly intimated that one who impersonates the intended receiver of a communication may still be a party . . . .").[9]

Moreover, courts in this district agree that the provider of an app through which communications flow is a participant in those communications. *See* Mot. at 13 (citing *Sloan v. Anker Innovations Ltd.*, 2024 WL 935426, at *4 (N.D. Ill. Jan. 9, 2024); *Zak*, 2019 WL 1437909, at *3–4). Here, Plaintiffs admit that (1) TikTok app users "access [] third-party websites *via the IAB*," (emphasis added) and (2) when opening those sites within the TikTok app, Plaintiffs had "no option" but to use the in-app browsing feature. Opp. at 14; Mot. at 14 (citing Compl. ¶ 129). These allegations place Defendants squarely within *Sloan* and *Zak*: in all three cases, users communicated through the apps, rendering the apps' operators parties to those communications.

Even in the Ninth Circuit, whose standard Plaintiffs purport to impose, courts have begun to follow the lead of this Circuit in holding that the provider of an app through which a user communicates is a "party" for purposes of a wiretapping claim. For example, in *Lau v. Gen Digital Inc.*, the plaintiffs downloaded certain internet browser software, then sued the providers of that software for wiretapping their communications with websites. 2023 WL 10553772, at *1 (N.D. Cal. Sept. 13, 2023). The court dismissed their wiretapping claims under the party exception because the plaintiffs voluntarily downloaded and used the defendants' software to browse the internet, and thus they knew or should have known that the defendants were participants in the communications. *Id.* at *4. Here too: Plaintiffs chose to use the TikTok app and clicked on links

---

[9] Plaintiffs' attempt to distinguish *Google Cookie* is nonsensical: if a third party who places a cookie on a user's browser when that user interacts with an unrelated site can be a party to the communication between the user and the site, then the provider of the app Plaintiffs intentionally used to allegedly communicate with websites must be too. *See* Opp. at 15.

in the TikTok app, thereby requiring the TikTok app to launch a browser and facilitate any alleged communications with the websites Plaintiffs visited.

Plaintiffs' Opposition fails to rebut these points because it relies primarily on cases from *other* circuits that impose different standards, including California district court cases that predate *Lau* by several years or more. *See* Opp. at 14–15 (citing *U.S. v. Eady*, 648 F. App'x 188, 191 (3d Cir. 2016); *S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *1, *8 (N.D. Cal. May 15, 2019); *Backhaut v. Apple Inc.*, 74 F. Supp. 3d 1033, 1043 (N.D. Cal. 2014)). *Eady*, which Plaintiffs cite for the proposition that a party must be "known," Opp. at 14, addresses a totally different situation. There, a correctional facility director used prank phone call technology to eavesdrop on calls between high-level union members in order to retaliate against them. *Eady*, 648 F. App'x at 190. That defendant had no role in facilitating the communications or any legitimate purpose being part of them. That is not the situation here.

And even if there was ambiguity in the Seventh Circuit about whether unknown service providers are covered by the party exception to the Wiretap Act (there is no ambiguity), the less stringent standard must be applied because this is a criminal statute. *See* 18 U.S.C. § 2511(4)(a) (providing for criminal liability); *U.S. v. Taylor*, 640 F.3d 255, 259–60 (7th Cir. 2011) (as between two equally plausible statutory interpretations, "the defendant is entitled to the benefit of the more lenient one." (citing *U.S. v. Santos*, 553 U.S. 507, 514 (2008))).

### 3. The Ordinary Course of Business Exception Applies Here

Defendants' alleged conduct falls within both the broad and the narrow reading of the ordinary course of business exception to the Wiretap Act. *See* Mot. at 14–16. Courts in this Circuit have leaned toward the broad reading of the exception (which would exempt from liability any activity that furthers such a service provider's legitimate business interests). *See id.* at 15; *see also, e.g.*, *Browning v. AT&T Corp.*, 682 F. Supp. 2d 832, 836 (N.D. Ill. 2009) (the exception "allows

16

communications providers . . . to use and disclose customers' records in seeking to protect [their] rights and/or property"). Plaintiffs do not dispute that Defendants' alleged conduct would fall within the broad interpretation of this exception. *See* Opp. at 15–17.

But the narrow view of the exception also applies here—more so than any other case in which it has been applied. Plaintiffs' line of attack seems to be that this exception only applies if the alleged interception is "'need[ed]' . . . to operate" or "facilitates" Defendants' "'core' business as a video creating and sharing app." *Id.* at 16. But that imaginary limitation is found nowhere in the case law and contradicts Plaintiffs' own cited cases. Those cases demonstrate that the exception offers protection from liability where the alleged interception facilitates "the transmission *of the communication at issue*" (or is incidental to that transmission)—not that it was required to operate the defendant's "core business." *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *8 (N.D. Cal. Sept. 26, 2013) (emphasis added); *see also Campbell*, 77 F. Supp. 3d at 844 (analyzing nexus between scanning users' private messages for advertising purposes and Facebook's ability to provide its service, including messages). In fact, *Campbell*, on which Plaintiffs rely, *see* Opp. at 16, recognized that an interception falls within the exception if it is "related or connected to an electronic communication provider's service, even if it does not actually facilitate the service." *Campbell*, 77 F. Supp. 3d at 844.

As explained in the Motion, because Plaintiffs were using the TikTok app's in-app browsing feature to communicate with websites, the app's alleged "interception" of the communications transmitted from within the app both facilitates and is incidental to those transmissions. *See* Mot. at 15–16.

### 4. Defendants Did Not Disclose or Use "Intercepted" Communications

Plaintiffs do not contest, and therefore concede, that without an "interception," their disclosure and use claims fail. *See* Mot. at 16; Opp. at 13–18; *Bonte*, 624 F.3d at 466.

17

### B. Plaintiffs Fail to State a State Law Wiretapping or Eavesdropping Claim

#### 1. No "Communications" or "Conversations" Were Intercepted

Plaintiffs do not dispute that their state wiretapping claims (like their Wiretap Act claim) require the interception of "communications" or "conversations." *See* Opp. at 18. For the reasons explained in the Motion and above, they have not alleged an interception of any of their own communications or conversations. *See* Mot. at 16–17; *supra* Section III.

#### 2. Defendants Were a Party to Any Communication, So the CIPA 631 and IEA Claims Fail

Plaintiffs' CIPA Section 631 and IEA claims fail because Defendants were a party to any communications made within the app, and thus no interception occurred for the reasons explained in the Motion and above.[10] *See* Mot. at 17; *supra* Section IV.A.2.

#### 3. No "Confidential" or "Private" Communications Were Intercepted, So the CIPA 632, FSCA, and IEA Claims Fail

Plaintiffs do not dispute that their CIPA Section 632, FSCA, and IEA claims fail without the interception of "confidential" or "private" communications but argue, puzzlingly, that Defendants "fail[] to cite any authority" for that proposition. Opp. at 19. That is plainly untrue. *See* Mot. at 18 (citing Cal. Penal Code § 632(a); *Goldstein v. Luxottica of Am., Inc.*, 2021 WL 4093295, at *2 (S.D. Fla. Aug. 23, 2021); 720 ILCS 5/14-2(a)(3), (a)(5)). As Plaintiffs' cases recognize, liability only lies when this requirement is met. *See* Opp. at 19–20.

The Opposition does nothing to address the fatal flaw identified by the Motion: that despite the offhand references to personal and financial information, Plaintiffs' factual allegations do not

---

[10] Unlike the other statutes under which Plaintiffs sue, FSCA and WESCA do not include a party exception to the definition of an "interception." *See* Mot. at 18 n.11. Plaintiffs misunderstand Defendants' argument in suggesting that "Defendants incorporated a 'no interception' argument as to the FSCA and WESCA claims" on this basis. Opp. at 18 n.6. Defendants simply explained that should the Court find no interception under FSCA and WESCA on *any* basis, those claims must be dismissed because interception is an element thereof. *See* Mot. at 18 n.11.

give rise to a reasonable inference that their own confidential or private data was intercepted. *See* Mot. at 18; *supra* Section III. The Opposition only highlights this deficiency, merely repeating Plaintiffs' conclusions that their "personal," "private," "personally identifiable," "sensitive," and "confidential" data was intercepted. Opp. at 19.[11] These are "mere conclusory statements" and "[t]hreadbare recitals of the elements" that courts must reject. *Iqbal*, 556 U.S. at 678. The *Meta Browser* court rejected nearly identical allegations that the plaintiffs' financial and health information was intercepted. *See supra* Section III.

It is illogical to argue, as Plaintiffs do, that alleging "nonconsensual tracking" (Opp. at 19) is sufficient to plead that their confidential or private data was taken. If that were the case, there would be no reason for these statutes, and the courts interpreting these statutes, to require confidentiality *in addition to* lack of consent. *See* Cal. Penal Code § 632(a) (penalizing eavesdropping on or recording a "confidential communication" "without the consent of all parties to [that] confidential communication"); *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *6–7 (Fla. Cir. Ct. June 17, 2021) (dismissing claim because the plaintiff both failed to allege a "reasonable expectation of privacy" *and* consented to alleged interception); 720 ILCS 5/14-2(a)(3) (penalizing a person who intercepts "any private electronic communication" unless "with the consent of all parties"). Plaintiffs' interpretation fails because it renders the language about "confidential" or "private" communications superfluous. *In re Lifschultz Fast Freight Corp.*, 63 F.3d 621, 629 (7th Cir. 1995).

Plaintiffs' allegations also differ in fundamental ways from the cases they cite for this incorrect proposition. *Griffith*, *Facebook Tracking*, and *Katz-Lacabe* all address allegations that

---

[11] To the extent Plaintiffs rely on their allegations about studies related to the collection of personal data *in general*, nothing indicates that these studies relate to the data underlying Plaintiffs' allegations: keystrokes and button clicks. *See* Opp. at 19 (citing Compl. ¶¶ 169–75).

the defendants were compiling *detailed profiles* of internet users (the totality of which must have reflected sensitive information) *who were not using the defendants' services at the time of collection*.[12] *Vasil* similarly addresses a logged-out-user scenario. *See Vasil v. Kiip, Inc.*, 2018 WL 1156328, at *1, *4, *8 (N.D. Ill. Mar. 5, 2018). By contrast, Plaintiffs were using the TikTok app to send the alleged communications, and they make no allegations that Defendants used the allegedly intercepted data to create detailed profiles of them (because that never happened). *Kurowski* is irrelevant. The IEA discussion in that opinion centers around whether the defendant acted as a "principal" of the third parties whose technology was deployed on the defendant's website—not whether the communications were "confidential." 683 F. Supp. 3d at 853. Finally, *Thakkar* is a summary judgment opinion addressing a situation in which the defendants' agents "broke into" the plaintiff's house, "changed the locks, rummaged throughout the house, and removed his personal property," including "credit card statements and bank statements," "prescription medication," and "medical records." *Thakkar v. Ocwen Loan Serv., LLC*, 2019 WL 2161544, at *1, *13 (N.D. Ill. May 17, 2019). That is textbook invasion of privacy. Plaintiffs' allegations are not in the same universe as *Thakkar*.

### 4. The FSCA Claim Fails for Multiple Independent Reasons

Courts consistently dismiss FSCA claims in cases involving website tracking technology because the types of data collected by these technologies are neither "contents" nor "communications." *See* Mot. at 18–20. Plaintiffs' arguments in support of their FSCA claim

---

[12] *See Griffith*, 697 F. Supp. 3d at 970–72 (plaintiff was a *non-TikTok app user* who alleged—in facts that the court had to accept as true, but are, in reality, false—that TikTok assembled "comprehensive profiles of [] non-TikTok users"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601–02 ("the relevant question here is whether a user would reasonably expect that Facebook would have access to the user's individual data *after the user logged out*" (emphasis added)); *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 6466195, at *1, *5 (N.D. Cal. Oct. 3, 2023) (internet users received documents from Oracle indicating that it had created an "electronic profile" of them based on their "web browsing and other activity," which did not occur on the Oracle platform).

largely rest on the false premise that their allegations somehow differ meaningfully from the allegations in those many cases. They argue, for instance, that even if keystrokes are not "contents" under FSCA, personal, contact, credit card, and banking information and Social Security numbers are. *See* Opp. at 21. That is a distinction without a difference: it is the allegedly intercepted keystrokes that would comprise that information. *See, e.g.*, Compl. ¶¶ 138, 140, 152, 180, 230 (JavaScript allegedly intercepts "every keystroke, which could include" this information). Case after case holds that "mouse clicks and movements, keystrokes, ***search terms, information inputted by Plaintiff***, and pages and content viewed by Plaintiff were . . . precisely the type of non-record information that courts consistently find ***do not constitute 'contents'*** under the Federal Wiretap Act or any of its state analogs because it does not convey the substance or meaning of any message." *Goldstein*, 2021 WL 4093295, at *2–3 (emphases added) (quoting *Jacome*, 2021 WL 3087860, at *4) (citing cases).

Plaintiffs also incorrectly argue that the session replay cases are limited to the use of technology on one's own website and only for troubleshooting or other analytics purposes. Not so. *A.S. v. Selectquote Insurance Servs.*—a very recent case on this issue—is instructive. There, the plaintiff alleged that the defendant incorporated Facebook tracking technology on its website, allowing Facebook to "target advertisements." 2024 WL 3881850, at *2 (S.D. Cal. Aug. 19, 2024). Noting that the tracking technology was "similar in kind" to session replay, the court dismissed the FSCA claim. *Id*. at *13.

### 5. *The Alleged Collection Falls Within the Service Provider Exception, So the WESCA Claim Fails*

The WESCA claim fails because the alleged conduct falls within the service provider exception, as explained in the Motion and above. *See* Mot. at 20; *supra* at Section IV.A.3.

### C. Plaintiffs Fail to State a UCL Claim

#### 1. *Plaintiffs Lack UCL Standing*

Plaintiffs argue that they have UCL standing—which requires them to have suffered "economic injury," *see* Mot. at 20—because the data allegedly collected is "extremely valuable to companies." Opp. at 22. That is not the law. To show economic injury in this context, the vast majority of courts agree that a plaintiff must plausibly allege both the value of the data *to them* and the impairment of that value as a result of the defendant's conduct. *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) (plaintiff cannot establish he has personally lost money or property if the information has "no economic value *to [himself]*" (emphasis added)).[13] Plaintiffs thus must allege "a market for their data and the impairment of the ability to participate in that market." *Saeedy*, 2023 WL 8828852, at *6.[14]

Nowhere in the Opposition do Plaintiffs attempt to identify allegations that they tried to sell their data, let alone that they were impaired in doing so by Defendants' alleged collection. Under the well-accepted standard (and as explained by *Griffith*, on which Plaintiffs heavily rely), their claim fails on this basis alone. *See Griffith*, 697 F. Supp. 3d at 978 (dismissing UCL claim "[i]n the absence of allegations that Plaintiff incurred actual financial losses").

Under *Meta Pixel Tax Filing*, on which they rely, Plaintiffs would not have UCL standing. That case holds that to plead a diminished value theory (as Plaintiffs attempt to do here, Opp. at 23), a plaintiff must allege they either "attempted or intended to participate" in the market for their

---

[13] *See also, e.g.*, *In re Clearview AI, Inc., Consumer Priv. Litig.*, 585 F. Supp. 3d 1111, 1128 (N.D. Ill. 2022); *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021); *Hubbard v. Google LLC*, 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024); *Roe v. Amgen Inc.*, 2024 WL 2873482, at *8 (C.D. Cal. June 5, 2024); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 748 (N.D. Cal. 2023); *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *6 (W.D. Wash. Dec. 21, 2023); *Lau*, 2023 WL 10553772, at *7; *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023).

[14] *See also, e.g.*, *Roe*, 2024 WL 2873482, at *8; *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538 (2022).

data. *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *24 (N.D. Cal. Mar. 25, 2024). Plaintiffs cannot make such an allegation. Nor can they rely on a "right to exclude" or "benefit-of-the-bargain" theory (Opp. at 23–24) because they do not plead those theories or the facts to support them in their Complaint. *See id.* at *25; Compl. ¶¶ 168, 254–57.

Plaintiffs' other cited cases are plainly against the "weight of authority," which "indicates that the mere misappropriation of personal information does not establish compensable damages." *Lau*, 2023 WL 10553772, at *7 (cleaned up). They also do not help Plaintiffs' case. *Calhoun*'s holding is based on cases analyzing Article III standing, not UCL—but Article III standing is broader and does not require lost money or property. *See Roe*, 2024 WL 2873482, at *8 (disagreeing with *Calhoun* on this basis). In *Brown*, the plaintiffs alleged that the defendant itself ran programs paying users for the allegedly collected data. *Brown v. Google LLC*, 2021 WL 6064009, at *15 (N.D. Cal. Dec. 22, 2021). Plaintiffs here have identified no program that would pay for their keystroke and button-click data, let alone one run by Defendants. *Turner* is based on these cases and fails for the same reasons. *See A.B. by & through Turner v. Google LLC*, 2024 WL 3052969, at *7 (N.D. Cal. June 18, 2024). In fact, just two weeks after *Turner*, yet another court in the same district reached the opposite conclusion and refused to find UCL standing based on nearly identical allegations. *Compare Hubbard*, 2024 WL 3302066, at *9, *with Turner*, 2024 WL 3052969, at *7.

### 2. The UCL Claim Fails on the Merits

A UCL claim can only be based on fraudulent, unlawful, or unfair conduct. *See* Mot. at 22. Plaintiffs concede that they do not bring a claim under the fraudulent prong of the UCL and that their unlawful prong rises and falls with their predicate claims. *See* Opp. at 24 n.8, 24.

That leaves the unfair prong. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Plaintiffs do not dispute that their unfair claim is predicated on the same alleged conduct as

the unlawful claim but argue that the two should be analyzed separately under *Doe v. CVS Pharmacy, Inc. See* Opp. at 24 (citing 982 F.3d 1204, 1215 (9th Cir. 2020)). The *CVS* court only undertook the unfair analysis after finding a viable unlawful claim. Plaintiffs here have no valid unlawful claim, so *CVS* does not save the unfair claim. *See* Mot. at 23.

### D.  Plaintiffs Fail to State Any Unjust Enrichment Claim

The Motion identified four separate issues that mandate dismissal of the unjust enrichment claims. *Id*. at 24–25. Plaintiffs' responses to those issues do not save their claims.

***First***, the claims fail because Plaintiffs have an adequate remedy at law. *See id*. at 24. Plaintiffs do not dispute that they have an adequate legal remedy, arguing only that their unjust enrichment claims may be pleaded in the alternative. Opp. at 25. Even if pleaded in the alternative, an unjust enrichment claim must plead that the plaintiff lacks an adequate remedy at law. *Goldstein v. GM LLC*, 2022 WL 484995, at *6 (S.D. Cal. Feb. 16, 2022). Plaintiffs do not.

***Second***, the Opposition confirms that Plaintiffs' unjust enrichment claims are premised on the same alleged conduct as their predicate claims. *See* Opp. at 25 (conceding incorporation of facts in preceding counts into the unjust enrichment claim). Those claims fail, *see supra* Sections I–IV, so these derivative claims fail too. *See* Mot. at 24 n.16.

***Third***, the unjust enrichment claim, which sounds in quasi-contract, fails in the face of the express contract between the parties: the TikTok Terms of Service. *See id*. at 24. Plaintiffs argue that Defendants have not shown the existence of an express contract but they themselves plead the existence of those terms. *See* Compl. ¶ 180. Plaintiffs' unjust enrichment claim is precluded by the Terms of Service even if pleaded in the alternative. *See Saroya v. Univ. of the Pac.*, 2021 WL 2400986, at *3 (N.D. Cal. June 11, 2021) (dismissing unjust enrichment claim asserted in the alternative because of express contract).

24

**Finally**, Plaintiffs assert that unjust enrichment is recognized as an independent cause of action in Illinois, but the case on which they rely proves the opposite. In *Kahn*, the Seventh Circuit only reinstated the unjust enrichment claim *because* the plaintiffs adequately pleaded the predicate claims. *Kahn v. Walmart, Inc.*, 107 F.4th 585, 606 (7th Cir. 2024). And *Hernandez*, which is plainly limited to "contract claim[s]," does not govern here. *Hernandez v. Illinois Inst. of Tech.*, 63 F.4th 661, 671 (7th Cir. 2023).

<u>**CONCLUSION**</u>

For the foregoing reasons and those explained in the Motion, the Complaint should be dismissed with prejudice, as there is no amendment to the Complaint that Plaintiffs could make that would be both (i) consistent with their Rule 11 obligations and (ii) sufficient to state a claim.

Dated: September 6, 2024

By: */s/ Anthony J Weibell*

Anthony J Weibell
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
(650) 331-2030
aweibell@mayerbrown.com

*Lead Counsel for All Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorneys of record for each party through the Court's electronic filing service on this date, which will send notification of such filing to the e-mail addresses registered.

Dated: September 6, 2024

*/s/ Anthony J Weibell*

26