**Pages 1 - 22**

                       UNITED STATES DISTRICT COURT

                     NORTHERN DISTRICT OF CALIFORNIA

    Before The Honorable Araceli Martinez-Olguin, Judge Presiding

    IN RE META BROWSER TRACKING      )
    LITIGATION,                      )
                                     )
                                     )    **NO. C 22-5267 AMO**
                                     )
    _____ )


                                     San Francisco, California
                                     Thursday, August 17, 2023

                     **TRANSCRIPT OF PROCEEDINGS**

    **APPEARANCES**:

    For Plaintiffs:
                             GIRARD SHARP LLP
                             601 California Street, Suite 1400
                             San Francisco, California 94108
                        BY:  **SIMON S. GRILLE**
                             **REID W. GAA**
                             **ATTORNEYS AT LAW**

                    **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


    Stenographically Reported By:

    Kelly Shainline, CSR No. 13476, RPR, CRR
    Official Reporter

1          Good afternoon, Mr. Gaa.

2               **ATTORNEY GAA:**  Good afternoon, Your Honor.

3               **THE COURT:**  All right.  Let me see.  No, I've got what

4     I need.

5          All right.  So, Mr. Turner, kick us off.

6               **ATTORNEY TURNER:**  Thank you, Your Honor.

7          So, Your Honor, the fundamental problem with the

8     plaintiffs' complaint is that they're trying to infer

9     conclusions about what Meta does based on hypothetical concerns

10    about what it could do.

11         The plaintiffs brought suit based on the Krause blog post

12    which highlights potential risks to users from Meta's use of

13    JavaScript in its net browser.  Krause says in his post that

14    JavaScript could be used to monitor everything a user does in

15    their browser.

16         And plaintiffs, from that, leap to the conclusion that

17    Meta is actually doing that even though that's not what the

18    Krause post says.

19         Krause specifically explains any allegation that Meta is

20    collecting everything that a user is doing in that browser.  He

21    specifically disclaims any allegation that Meta is using data

22    from the browser for advertising in a way that would violate

23    Apple's ATT policy.

24         As he says, he doesn't know what data the browser might be

25    sending back to Meta or what Meta might doing with it.

1    on us, and therefore we can reasonably assume the government is

2    spying on us.  The court found that that was mere conjecture

3    and not enough to establish injury in fact.

4         And, of course, it can't be.  Because otherwise the

5    plaintiff could speculate their way into court based on pretty

6    much any suspicion they have.

7         I would add, moreover, that plaintiffs don't even posit a

8    plausible motive here for the specific conduct they allege.

9    They claim that Meta collects user credit card numbers and

10   passwords without users' consent.  What plausible motive would

11   Meta have to do that?  How is that supposed to be used for

12   advertising?  It doesn't make any sense.

13        It is clear, absolutely clear what's going on here.  This

14   is a sheer fishing expedition.  The plaintiffs are seeking to

15   bluff their way to discovery, and they hope to fill in the

16   blanks in their allegations later.

17        But both the standing doctrine and the plausibility

18   standard in *Twombly* and *Iqbal* are supposed to serve to prevent

19   a plaintiff from suing on speculation just like that.

20        Meta should not have to bear the costs and the burdens of

21   discovery unless plaintiffs have a plausible factual basis in

22   their complaint at the outset.  They don't, and that's why

23   their complaint should be dismissed.

24             **THE COURT:**  Thank you, Mr. Turner.

25        Go ahead, Mr. Gaa.

1    is satisfied.

2        Paragraphs 13 to 52 demonstrate that each individually

3    named plaintiff has a Facebook account, has an Apple device

4    that operates on IOS 14.5 or higher, which is needed to utilize

5    the app tracking transparency preference settings, and that

6    they configured their settings in a way to deny Facebook from

7    accessing their personal data and tracking them as they

8    navigated from the app to the third-party website.

9        **THE COURT:**  Let me pause you there because this is --

10   I've seen all of that in your complaint.

11       What I am having trouble with is that at that point, I

12   have nothing about any of your individual plaintiffs that say

13   what third site -- what third-party site they visited, what

14   information was gathered.  Right?

15       At paragraph 2, you reference financial and health

16   information.  But I have nothing in your complaint about what

17   websites they visited, where that information would have

18   been -- could have been taken.  Right?

19       In paragraph 147, you're talking about protected health

20   information, but I have nothing that any of these individual

21   plaintiffs visited a third-party site within the Facebook

22   browser and somehow that information was intercepted.

23       And so the place where I -- the place where you -- so I

24   appreciate your submitting Judge Gonzalez Rogers' decision

25   about the fact that, yes, there is harm.  I'm not -- I don't

1    doubt that.  Where I have trouble -- where I'm having trouble

2    with your complaint is that there's nothing that seems to

3    connect.  I don't have any actions from your plaintiffs that

4    show me how it is that Facebook received any information from

5    them.

6         I have that they have it.  I have that you say they

7    visited a third-party site.  I don't know what third-party site

8    it is.  I don't know when they visited.  I don't have

9    particularized information to show that these were the acts

10   that resulted in what I believe is a harm that could occur.

11        So can you point me -- can you point me in your complaint,

12   because I assure you we have looked, and I could give you a

13   couple more examples where you're noting that, for example,

14   private -- paragraph 142, the private and personally

15   identifiable information or communications, including their

16   clicks, keystrokes, and the like, but where are the examples of

17   the clicks and keystrokes that any plaintiff made that was

18   taken?

19             **ATTORNEY GAA:**  Well, Your Honor, we don't have a

20   specific website alleged for each plaintiff.  But what we would

21   contend is that at this point, it's not necessary to do so

22   because any website that they did visit, once they had that

23   setting that Apple -- that app tracking transparency setting

24   set while they were on the Facebook mobile app and had hit a

25   link and it went to that third-party website would have been

1    captured.

2         So every plaintiff who -- because they have those settings

3    and because this conduct occurs for anyone who has those

4    settings and also uses the Facebook mobile app, every website

5    that they visited and every bit of information that they've

6    communicated to those websites by entering text into those

7    boxes, the search boxes, or by running a search on that site

8    necessarily would have been implicated here.

9         So the complaint doesn't have a specific website from each

10   plaintiff.  But every website that plaintiff would have visited

11   after a certain point of time would qualify there.

12        **THE COURT:**  But, Mr. Gaa, you're asking -- you're

13   putting forward that there is financial and health information

14   that was taken from your plaintiffs without actually pointing

15   to any website where they would have entered that information.

16        I think part of the issue that I'm having, ultimately this

17   is why you all got the little order, and I thank you both for

18   sticking to your time and focusing on standing, is that

19   fundamentally, as you can see, I'm not inclined to get even to

20   the 12(b)(6) issues.  I'm still at 12(b)(1).

21        And so, you know, I'm -- because I want to make sure --

22   because I want to make sure that Mr. Turner gets a chance to

23   reply to the degree that we're supposed to let you open and let

24   you speak and let you respond, I want to make sure that you do,

25   but I'll share with you that for the most part, I'm at the

1  point where I'm intending to -- you all are the rare ones who

2  get a ruling from the bench today, but I want to make sure I

3  get a chance to hear from you again if you're so inclined.

4          **ATTORNEY TURNER:**  Sure, Your Honor.  I can speak a

5  little to that specific issue.

6          Your Honor is absolutely right that the allegations made

7  about the specific plaintiffs' activity are completely

8  boilerplate and generic.  They don't allege any specifics, not

9  only about what websites, but just how extensively they used

10  the Internet browser.

11          Remember this is not just your everyday browser.  This is

12  the browser that's built into the Facebook app.  Not everybody

13  uses that.  A lot of people can use Facebook without ever using

14  the in-app browser altogether, or maybe they only use it, you

15  know, one or two times.

16          So there's absolutely no allegations about how often they

17  used it, about what sorts of sites they visited, about what

18  sorts of data that they input into those websites.

19          We refer Your Honor to the *Birdsong v. Apple* case, which

20  is 590 F.3d 955.  It's a Ninth Circuit 2009 case that explains

21  that the plaintiff does not state an Article III injury unless

22  their allegations are particularized as to themselves.

23          In that case, it was about Apple earbuds, and there were

24  no particular allegations about how each plaintiff used the

25  earbud product there.

1          And just turning briefly back to Your Honor's first point,

2     I think this is what we would think of as a bit of a chicken

3     and the egg problem is that for us to get a level deeper and be

4     able to plead precisely what -- you know, what websites our

5     plaintiffs accessed and what information was conveyed, we would

6     be able to need to do some discovery in order to figure that

7     out because this practice didn't come to light until after our

8     plaintiffs had been engaged in that activity.

9          So they had no way of knowing that Meta was collecting

10    this information, that this practice was even happening in the

11    first place.

12         So after the fact, once this news had broke, they were

13    able to recognize that they had the device, that they use it in

14    this fashion, but they're not keeping a contemporaneous record

15    of the actual websites they're visiting through the Facebook

16    in-app browser.  That's a difficult level of detail for them to

17    have.

18         **THE COURT:**  Well, Mr. Gaa, what I think you all do

19    need, what I do think you need, and so let me get to it here.

20         I'm going to dismiss your complaint with leave to amend.

21    What I think you all need to do is you have more than the blog

22    post.  There isn't much more in the complaint other than the

23    Krause blog post.  But according to your papers, you've been

24    investigating, you have more than what you've given us so far.

25         So some of that is what needs to show up in your next

1    iteration -- the next iteration of your complaint.

2        I understand the chicken and egg problem.  But of course

3    you all conducted some investigation before filing this suit or

4    that would be a whole different conversation that we would be

5    having.

6        So whatever you do have from your plaintiffs about what

7    websites they visited, what sort of information they gave

8    through the Facebook browser, and if you need to file bits of

9    that under seal because it's sensitive information, by all

10   means, there's procedures in the Local Rules to get that done.

11       But in order to get you to that next stage, you've got to

12   show me that these folks did more than just have Facebook on

13   their iPhone, that they in fact -- what it is that they have

14   put in.

15       And to some -- you know, if Kaiser Permanente

16   advertises -- I'm trying to think of something I've seen more

17   recently.  But if someone visited a link to their Kaiser and

18   ended up putting stuff in, that would get you some of what

19   you're describing in terms of health information, certainly.

20       But aside from that, otherwise there's nothing tying

21   several of these allegations back to your plaintiffs

22   themselves.

23       And absent that, I don't know how -- I cannot find that

24   these folks have standing sufficient to be here to invoke

25   jurisdiction under Article III.

1

2

3                    **<u>CERTIFICATE OF REPORTER</u>**

4          I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:    Saturday, August 19, 2023

8

9

10

11    _____

12          Kelly Shainline, CSR No. 13476, RPR, CRR
                    U.S. Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25