# EXHIBIT A

**IN THE CHANCERY COURT OF DAVIDSON COUNTY, TENNESSEE**
**FOR THE TWENTIETH JUDICIAL DISTRICT AT NASHVILLEE**

| | | |
|---|---|---|
| **IN RE** | ) | |
| **INVESTIGATION OF TIKTOK, INC.** | ) | **Case No. 23-0298-I** |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION REQUESTING REMEDIES TO ADDRESS SPOLIATION AND COMPEL COMPLIANCE WITH AGREED ORDER

### INTRODUCTION

The State of Tennessee, Office of the Attorney General and Reporter (the "State" or "Attorney General") moves this honorable Court to provide remedies to address the spoliation uncovered during the State's investigation into TikTok, Inc. ("TikTok" or the "Company") as provided by statute and precedent, and to compel the Company to comply with the Agreed Order on Motion for an Order Compelling TikTok, Inc. to Comply with the Attorney General's Request for Information entered herein on April 17, 2023 (the "Agreed Order").

As stated, the Attorney General seeks judicial intervention to address TikTok's egregious spoliation of evidence. The Company doesn't deny that data has been destroyed by means of dubious chat features created by its corporate sibling. And worse, TikTok has admitted it deployed an autodelete function nine (9) months after the RFI was served, which destroyed responsive metadata. The Court has statutory authority to assess a civil penalty on TikTok for its misconduct as well as impose any other sanction deemed appropriate.

The Attorney General also requests the Court compel TikTok to produce all records related to interviews of thirty-five (35) custodians conducted by the Company's in-house and outside counsel regarding spoliation. The State believes this material is the only remaining evidence that can shed light on the extent of relevant data which has been destroyed. TikTok has refused to

1

produce this material claiming it is subject to attorney-client and work product privileges. The Company's misconduct warrants compelling production of this material, and in any event, the underlying facts relayed by these custodians are not shielded by any privilege.

Finally, the Attorney General requests the Court compel TikTok to fully comply with the RFI as the parties previously agreed. The Agreed Order requires the Company to "use its best efforts to respond fully and completely to the State's [RFI] as soon as possible." Unfortunately, TikTok has refused to produce responsive text messages, wrongfully redacted user-generated content within its communications, withheld preserved metadata, and repeatedly failed to produce complete privilege logs in a timely manner. The State requests the Court compel TikTok to comply with the RFI and rectify these deficiencies.

## BACKGROUND

The State is investigating TikTok for potential violations of the Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. §§ 47-18-101 to -135 ("TCPA"). Specifically, the State is concerned that TikTok is violating the TCPA by aggressively marketing its social media platform to children in Tennessee despite knowing the risks that platform poses to the mental health and well-being of those young consumers, and without providing sufficient warning of these risks.

On March 2, 2022, the Attorney General served TikTok with an investigative Request for Information ("RFI") pursuant to Tenn. Code Ann. § 47-18-106. The RFI requests 29 categories of documents, at least seven of which expressly call for "Communications," which the RFI defines as "emails; instant messages; internet relay chat logs; [and] enterprise communication tools (such as, but not limited to Lark)[.]" *See* Janssen Declaration[1] ¶ 4; Exhibit A, p. 3. The RFI clearly and

---

[1] The Janssen Declaration is annexed hereto as Exhibit 1.

conspicuously includes a notice of preservation duty obligating TikTok to preserve data which may be responsive to the State's investigation. Janssen Declaration ¶ 4; Exhibit A, p. 2.

During discussions regarding the company's responses to the RFI, TikTok's outside counsel explained that chat threads facilitated by TikTok's Lark collaboration platform are a primary channel for communications between TikTok employees. Janssen Declaration ¶¶ 14-16. TikTok's outside counsel also disclosed that the Lark platform has a function by which users can "recall" previously sent messages, which results in their loss and destruction. Janssen Declaration ¶¶ 17-19. Further, Lark has a "secure messaging" feature, which enables TikTok employees to send "disappearing chats." Janssen Declaration ¶¶ 20-21. When using the "secure messaging" tool, employees designate Lark messages for rapid deletion before a conversation begins. Janssen Declaration ¶ 21. When the "secure messaging" tool is activated, a message will be preserved for no more than seven days. Stein Declaration ¶ 24.[2]

Notwithstanding TikTok's duty to preserve documents and data during the State's investigation, TikTok's counsel revealed that TikTok employees continued to have access to the Lark chat "recall" and "secure" messaging features for more than a year after the RFI was served. Janssen Declaration ¶ 17-21; Exhibit M, p. 5. In other words, during the pendency of this investigation, TikTok employees maintained the ability to irreversibly delete messages responsive to the RFI—creating a significant risk of data loss and destruction that could impede the Attorney General's investigation.

In response to these revelations, on March 6, 2023, the State filed a Motion for an Order Compelling TikTok, Inc. to Comply with the Attorney General's Request for Information. By that Motion, the State requested, among other things, that the Court compel TikTok to preserve

---

[2] The Stein Declaration is annexed hereto as Exhibit 2.

3

evidence and provide sworn testimony through a corporate designee regarding the company's document retention practices.

That Motion was resolved by the Agreed Order dated April 17, 2023, which required TikTok to, among other things, produce corporate representative(s) for examination on seven (7) issues related to spoliation. Stein Declaration ¶¶ 4 and 6, Exhibit E, ¶ 7. As set forth in the Agreed Order, the "purpose of this examination [was] for the Attorney General to assess the retention or potential loss of relevant data during the course of this investigation and the impact that the Company's use of the Lark platform may have had on its ability to retain or export data from Lark."

On June 1, 2023, TikTok produced Warren Solow as its corporate representative for examination. During the examination, Mr. Solow confirmed that TikTok employees maintained the ability to use Lark features to delete potentially relevant information after the State issued the RFI. Mr. Solow, however, was unwilling or unable to testify to a number of the topics set forth in the Agreed Order, (Stein Declaration ¶¶ 7-8), and TikTok refused the State's request to produce additional corporate representative(s) who could testify to issues to which Mr. Solow could not. Accordingly, on September 15, 2023, the Attorney General filed a Motion to Compel TikTok's compliance with the Agreed Order.

By Order dated February 5, 2024, the Court granted the State's request to compel TikTok to produce additional corporate representative(s) for examination on issues relating to TikTok's failure to preserve and destruction of evidence (the "Feb. 2024 Order"). Stein Declaration ¶¶ 8-10 and 12; Exhibits G and J. Pursuant to the requirements of the Feb. 2024 Order, on April 25, 2024, TikTok produced for examination two additional corporate representatives named Aiden Booth and Noreen Yeh. The testimony of those witnesses, while insufficient in a number of respects,

nonetheless established that TikTok in fact destroyed documents while under a duty to preserve evidence during the Attorney General's investigation, including through the use of Lark's "recall" and "secure" chat functionality. For example, the witnesses testified that:

- "[T]here is no, like, individual behavioral audit" of custodians to ensure that they comply with a legal hold. Exhibit F, p. 96, ln. 22-23.

- At TikTok, "the vast majority of work is done within the Lark platform." Exhibit F, p. 120, ln. 17-18.

- A chat message may be recalled by an administrator up to a year after it was sent. Exhibit K, p. 40, ln. 21 – p. 41, ln. 1.

- "It's not possible for [TikTok] to readily determine" how many messages were recalled since the RFI was served. Exhibit K, p. 43, ln. 6-9.

- "Secure chat is a – an ephemeral messaging functionality or feature that allows for setting a … temporal life cycle time on a – a particular message." Exhibit F, p. 135, ln 9-12.

- "I do not believe that we have any way to know how many secure chats were sent or received" since the RFI was served. Exhibit K, p. 28., ln. 20-23.

- In December of 2022 an autodelete function was deployed which destroyed metadata related to the use of secure chat. Exhibit K, p. 59, ln. 15-19.

TikTok's spoliation established by the company's corporate designees is further borne out by documents the company produced during this investigation, including documents showing:

- Messages in admittedly relevant chat threads sent by custodians on legal hold were destroyed by means of recall. Exhibit K, pp. 70-101.

- Many executives whose communications were called for in the RFI were not placed on legal hold when the RFI was served. Exhibit A ¶ 25; Exhibit O.

Additionally, TikTok has met with the State many times since entry of the Agreed Order to "address issues regarding the Company's performance under and progress in seeking to comply with the State's Request for Information." Stein Declaration ¶ 5; Exhibit E, ¶ 3. During the course of those discussions, TikTok has refused to comply with the State's RFI in a number of respects, including by refusing to produce:

- text messages sent or received by TikTok's executives and Trust & Safety Communications personnel (responsive to RFI No. 25 and 27);

- unredacted copies of documents containing user-generated content (potentially responsive to every RFI document request);

- relevant metadata preserved by the Company's forensic team (potentially responsive to every RFI document request); and

- comprehensive privilege logs with every rolling production.

The State has met and conferred with TikTok's counsel on numerous occasions to secure TikTok's compliance with the requirements of the RFI, but despite the State's good-faith efforts, the parties have reached an impasse on these issues. Stein Declaration ¶ 45.

## ARGUMENT

I. **The Court should assess a civil penalty on TikTok for its spoliation of evidence and grant the State other appropriate relief.**

Under Tenn. Code Ann. § 47-18-106(e), the Court may impose "a civil penalty of not more than one thousand dollars ($1,000)" and "any other appropriate sanction" upon a showing that a company to which the Attorney General issued a RFI "destroy[ed] [] or by any other means alter[ed] any documentary material in [its] possession, custody, or control" with "intent to avoid, evade, or prevent compliance, in whole or in part, with any civil investigation." *See generally Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (defining spoliation as "the

destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation").

Here, the evidence shows that following receipt of the Attorney General's March 2, 2022, RFI and accompanying "NOTICE OF PRESERVATION DUTY," TikTok employees not only failed to preserve evidence, but continued to have access to and actively used features on the company's communications platform to destroy documents, including communications relevant to the Attorney General's investigation. The circumstances demonstrate that TikTok permitted the use of document-destruction features for the purpose of interfering with the Attorney General's investigation, as TikTok did so in disregard of the Attorney General's preservation notice and in contravention of the company's own litigation hold notices that acknowledge the use of such features would violate its preservation obligations. Exhibit A, p. 2; Exhibit H; Exhibit I. Accordingly, the Court should find that TikTok spoliated evidence with an intent to impede the Attorney General's investigation into TikTok's potential violations of the TCPA and require TikTok pay a civil penalty to the State in the amount of one thousand dollars (USD $1,000.00) for its unlawful spoliation. Further, the State requests that as an "appropriate sanction" under Tenn. Code Ann. § 47-18-106(e), the Court should order TikTok to produce recordings and other records of interviews regarding TikTok employees' use of document destruction features throughout this investigation, so that the scope of TikTok's spoliation and potential further penalties may be assessed.

**A. TikTok employees destroyed evidence by means of "recall" and "secure" chat features on its electronic communications system.**

TikTok's corporate designees testified, and available documents confirm, that TikTok employees had access to and used two main features – "recall" and "secure chat" – to destroy evidence during the course of this investigation.

The recall feature, when used by a TikTok employee, overwrites the original content of a chat message with Chinese characters that, roughly translated into English, state "message retracted, cannot view content." Janssen Declaration ¶ 18. All TikTok employees had access to recall up until May of 2023. Janssen Declaration ¶¶ 17-19; Stein Declaration ¶¶ 15 and 17. The feature can be used by the author of a chat message up to twenty-four (24) hours after the message is sent, or by an administrator up to a year after the message is sent. Stein Declaration ¶ 16. The use of recall was evidently widespread and unrestricted at TikTok. Stein Declaration ¶ 17. Lark maintains no backup, audit log or metadata to preserve the original content after recall is used, so while the recall notice persists indefinitely, the original content is irretrievably destroyed. Stein Declaration ¶ 19.

TikTok's documents show numerous messages in admittedly relevant chat threads were destroyed by means of recall after the RFI was served, and in some instances these messages had been sent by custodians on legal hold. Stein Declaration ¶ 23. The Company's corporate representative admitted many of these chat threads are relevant to the State's investigation, and cover subjects such as eating disorders among TikTok users, sexualized content on the platform, data regarding research into wellness as well as TikTok's well-being efforts, content moderation and control, safety reports, suppression of violent content, and a video of a ten (10) year old boy committing suicide. Stein Declaration ¶ 23.

As for "secure chat," it allows TikTok employees to create messages that are encrypted end-to-end and automatically deleted by the platform at an expiration time specified when the message is created, which can be no later than seven (7) days after creation. Stein Declaration ¶ 24. TikTok maintains a list of users who can send secure chat messages called the allow list, and a second list of users who cannot use secure chat in any capacity (the "Disallow List"). Stein

8

Declaration ¶ 25, Exhibit M, p. 2. Users who appear on neither list cannot initiate secure chat threads but can receive and reply to a secure chat message sent by another user. Stein Declaration ¶ 25, Exhibit M, p. 2. The Lark platform maintains no audit log or metadata related to a secure chat message which is sent to only one recipient, so the entire message is irretrievably destroyed at the expiration time. Stein Declaration ¶ 26, Exhibit M, p. 3-4.

According to TikTok's corporate representatives, there was broad access to secure chat and there are no written guidelines governing its use, so access to secure chat was pervasive and unrestricted at the Company. Stein Declaration ¶¶ 24 and 29. Further, the Disallow List was put into operation before the RFI was served, so TikTok could have added all custodians to the Disallow List when the RFI was received and thereby prevented any destruction of data by means of secure chat. Stein Declaration ¶ 30. But the Company failed to add custodians to the Disallow List for over a year after the RFI was served, and only then at the State's insistence as memorialized in the Agreed Order. Stein Declaration ¶ 33; Exhibit E, ¶ 4d.; Exhibit O. TikTok's corporate representative confirmed an unknown number of secure chat messages have been sent and destroyed since the RFI was served any of which could have been relevant to the State's investigation. Stein Declaration ¶ 34.

Moreover, Lark creates a file with metadata (a "Container File") when a user sends a secure chat message to multiple recipients (a "Group Secure Chat"). Stein Declaration ¶ 27, Exhibit M, pp. 3-4. Container Files include metadata identifying, among other things: the user who initiated the Group Secure Chat thread, when the thread was created, the name of the group, and which users have access to the thread. Stein Declaration ¶ 27, Exhibit M, pp. 3-4. The individual secure chat messages exchanged within a Group Secure Chat thread are automatically deleted by the Lark platform at the designated expiration time, but historically the associated Container File persisted

indefinitely. Stein Declaration ¶ 28, Exhibit M, pp. 3-6. However, nine months after the RFI was served, an automated process was deployed to automatically delete Container Files associated with inactive Group Secure Chat threads. Stein Declaration ¶ 28; Exhibit M, p. 6. An analysis of Container Files could have provided the State with some understanding of the scope and extent to which Group Secure Chat was used at TikTok, but like secure chats themselves, all Container Files have now been destroyed.

### B. TikTok destroyed evidence with an intent to prevent compliance with the State's TCPA investigation.

The Court has authority to infer "from surrounding facts and circumstances" that TikTok destroyed evidence with an intent to prevent compliance with the RFI. *State v. Brown*, 311 S.W.3d 422, 432 (Tenn. 2010); *see also Vander Pas v. Bd. of Regents of Univ. of Wisconsin Sys.*, 664 F. Supp. 3d 893, 906–07 (E.D. Wis. 2023) (quoting *Malibu Media, LLC v. Tashiro*, No. 1:13-CV-00205-WTL, 2015 WL 2371597, at *13 (S.D. Ind. May 18, 2015)) (finding a court "may infer bad faith from the circumstances of the destruction of the evidence").

Here, on March 2, 2022, TikTok received "NOTICE OF PRESERVATION DUTY" from the State which provided that:

> This Request for Information shall serve as notice to you [TikTok] that Documents and information that may be relevant to this investigation, including the Documents requested below, should be preserved during the pendency of this investigation and during any resulting enforcement action. Failure to preserve relevant Documents may result in a civil penalty, in addition to any other appropriate sanction, pursuant to Tenn. Code Ann. § 47-18-106(e).

Janssen Declaration ¶ 4; Exhibit A, p. 2; *see generally Silvestri*, *supra* at 591 (finding a duty to preserve data "arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."). Further, the Company, by its legal hold notices issued to custodians with documents and

information relevant to the State's investigation, directed custodians to preserve evidence, and admonished that employees must not destroy evidence with features such as "recall." Stein Declaration ¶ 20. Yet, TikTok continued to allow employees full use of "recall" and "secure chat" document destruction features for a full year after commencement of the Attorney General's investigation, and never took any steps to ensure that employees were complying with preservation obligations under the company-implemented legal hold. Stein Declaration ¶ 36; Exhibits M and N. *See also Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) (noting counsel "must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents."). Accordingly, because TikTok allowed its employees to continue document destruction practices when it knew that their doing so was prohibited by law and could deprive the Attorney General of information sought by this investigation, it is evident that TikTok intended to prevent compliance with the investigation. *See generally Hirsch v. Gen. Motors Corp.*, 628 A.2d 1108, 1130 (N.J. Super. Ct. Law. Div. 1993) (holding intent to destroy evidence can be inferred from the surrounding circumstances).

Moreover, as explained by The Sedona Conference, a "client's use of ephemeral messaging for relevant communications after a duty to preserve has arisen may be particularly problematic, as it would have the potential to deprive adversaries and the court of relevant evidence." The Sedona Conference, *The Sedona Conference Primer on Social Media, Second Edition*, 20 Sedona Conf. J. 1, 90-91 (2019); *see also WeRide Corp. v. Kun Huang*, No. 5:18-CV-07233-EJD, 2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) (finding bad faith where litigant failed to disable autodelete functions and made use of ephemeral messaging service). Here, TikTok failed to disable its ephemeral messaging system, secure chat, after this investigation commenced and TikTok's duty to preserve attached (which TikTok could have done by simply adding custodians to its Disallow

11

List). Further, as confirmed by TikTok's corporate designees, secure chat messages continued to be sent and destroyed after the RFI was served. Stein Declaration ¶ 34. Accordingly, because TikTok enabled the sending of communications potentially relevant to this investigation that would self-destruct before they could be collected and produced in response to the Attorney General's RFI, TikTok engaged in what The Sedona Conference would consider "particularly problematic" conduct that, under the circumstances, demonstrates an intent to thwart the State's investigation.

C. **The Court should assess a civil penalty against TikTok and compel production of interviews regarding the scope of data destruction at the Company.**

Because the evidence, set forth above, shows that TikTok destroyed evidence and did so with an intent to interfere with the State's investigation, the Court should find that TikTok engaged in spoliation prohibited by Tenn. Code Ann. § 47-18-106(e) and require TikTok to pay the State a civil penalty of one thousand dollars (USD $1,000.00) for violating that statute.

TikTok's conduct in the State's investigation is even more egregious than Google's conduct in recent antitrust litigation, where Google was sanctioned for spoliation of evidence. *See In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981, 993 (N.D. Cal. 2023) (finding "Google did not take reasonable steps to preserve electronically stored information that should have been preserved in the anticipation or conduct of litigation."). TikTok's use of secure chat is analogous to Google's use of Google Chat with history turned off as both provided employees with ephemeral chat messaging services which were widely available and unrestricted. *Id.* at 985 (noting the messages are automatically "deleted forever and cannot be recovered"). TikTok, like Google, is a tech giant that is quite familiar with litigation and has teams of in-house counsel managing hundreds of legal holds at any time which the Court should consider when evaluating the Company's conduct. *Id.*; Stein Declaration ¶ 31. *See* Fed. Rule Civ. P. 37(e) advisory

committee's 2015 note (remarking that a "court should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts."); *Apple, Inc. v. Samsung Elecs., Co*, 888 F. Supp. 2d 976, 992 (N.D. Cal. 2012) (finding distributing legal hold notices without disabling automatic email deletion or providing evidence custodians complied fell short of duty to preserve); *VOOM HD Holdings LLC v. EchoStar Satellite L.L.C.*, 939 N.Y.S.2d 321, 330 (N.Y. App. Div. 2012) (finding "[i]t is well settled that a party must suspend its automatic-deletion function" as part of a litigation hold). Google was found to have acted with intent "to subvert the discovery process" through the use of ephemeral messages which could not be restored or replaced. *In re Google Play Store Antitrust Litig.*, *supra* at 993; *see also* 994 (awarding attorneys' fees and costs while reserving determination of non-monetary sanctions for further proceedings). Similarly, here the Company's use of ephemeral secure chat messages, which only stopped at the State's insistence more than a year after the RFI was served, is sufficient to infer TikTok's intent to thwart the State's investigation.

Far worse than Google's conduct described above, and in stark contrast to the obligation to disable autodelete functions as part of a litigation hold, TikTok designed and developed a program to autodelete Container Files, which the Company deployed nine (9) months after the RFI was served. The State avers that if a failure to disable autodelete functions when a duty to preserve arises warrants spoliation sanctions, then surely the deployment of autodelete functions after a duty to preserve arises is deserving of even greater sanctions. *See Tatham v. Bridgestone Americas Holding, Inc.*, 473 S.W.3d 734, 746-47 (Tenn. 2015) (discussing factors relevant to spoliation sanctions which include culpability of the spoliator and prejudice to the non-spoliator); *Franklin v. Stephenson*, No. 20-CV-0576 MIS-JFR, 2022 WL 6225303, at *10 (D.N.M. Feb. 16, 2022) (finding the "two most important factors in determining spoliation sanctions are culpability of the

offending party and actual prejudice to the other party."). TikTok is highly culpable having intentionally destroyed data, and the prejudice to the State is severe since the data is deleted forever and cannot be recovered. The knowing deletion of Container Files must be deemed sufficient to infer the Company's intent to thwart the State's investigation.

Furthermore, the Court may impose "any other appropriate sanction" and such relief would only be overturned for an abuse of discretion. *In re Wall & Assocs., Inc.*, No. M202001687COAR3CV, 2021 WL 5274809, at *2 (Tenn. Ct. App. Nov. 12, 2021) (noting a trial court's decisions regarding sanctions for violations of Tenn. Code Ann. § 47-18-106 are reviewed for an abuse of discretion). TikTok's in-house and outside counsel conducted interviews of thirty-five (35) custodians in the State's investigation related to spoliation. Stein Declaration ¶ 38, Exhibit Q. The statements of these custodians comprise the only remaining evidence which can establish the scope and extent of TikTok's misconduct, so the Company should be compelled to produce the related materials. TikTok is withholding the substance of these interviews claiming attorney-client and work product privileges, but the Company's spoliation overcomes the claim of privilege. *See Rambus, Inc. v. Infineon Techs. AG*, 222 F.R.D. 280 (E.D. Va. 2004) (finding litigant's scheme of spoliation was sufficient to satisfy crime-fraud exception and pierce attorney-client privilege); *Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288 (D.N.M. 2016) (ordering the production of materials from internal investigations subject to work product and attorney-client privileges as a sanction for spoliation).[3]

---

[3] Alternatively, the Court could review these documents *in camera* and redact what it deems necessary to preserve TikTok's attorney-client privilege. *See Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 226 (Tenn. Ct. App. 2002) (noting the trial court has discretion to inspect materials *in camera* for privilege review). The State only wishes to discover the underlying facts relayed by these custodians; those are not shielded by any privilege. *Ecolab, Inc. v. Ridley*, No. 1:22-CV-050-TRM-SKL, 2023 WL 11762682, at *7 (E.D. Tenn. Mar. 28, 2023) (quoting *Askew v. City of Memphis*, No. 14-cv-2080-STA-tmp, 2015 WL 12030096, at *2 (W.D. Tenn. July 23, 2015)) (finding the attorney-client privilege "does not protect underlying facts from disclosure."). The statements of these custodians may identify relevant evidence which was destroyed as well as shine a light on the culpability of TikTok associated with such

II.     **The Court should compel TikTok to comply with the Agreed Order.**

The Agreed Order requires TikTok to "use its best efforts to respond fully and completely to the [RFI] as soon as possible." Exhibit E, ¶ 8. Far from using its best efforts, the Company has refused to produce text messages responsive to the RFI, improperly and unnecessarily redacted user-generated content from produced documents, withheld metadata which the State is entitled to receive and review, and provided inadequate and untimely privilege logs. The State seeks an order compelling TikTok's compliance with the Agreed Order to address these issues.

**A. TikTok should be compelled to produce text messages.**

The RFI defines "Communication" so as to encompass "any oral or written communication of any kind, including but not limited to: … telephone communications (including voice mail, **text messages,** or any other means of communication utilizing a telephone)…." (emphasis supplied). Exhibit A, p. 3. The RFI requested communications related to numerous subjects, including but not limited to TikTok's efforts to attract and retain young users, the prevalence of fake accounts and engagement on the platform, research into the harms TikTok causes, changes to the recommendation system, and most importantly, executive communications regarding the use of TikTok and harms caused to young users. Exhibit A, pp. 7-10, ¶¶ 6, 17-18, 22, 23, and 25. TikTok even acknowledged that text messages may be potentially relevant to the State's investigation and must be preserved by way of the legal hold notices distributed to custodians. Exhibit H, p. 2; Exhibit I, p. 3. For the past nine months, the State has requested that TikTok produce text messages of its executives and trust and safety personnel that are responsive to the RFI. Stein Declaration ¶ 39. The Company, however, has refused to even check if responsive text messages were sent or received by those custodians.  As TikTok has no excuse for wholly refusing to perform even this

---

destruction. It would be appropriate for the Court to compel TikTok to file the documents under seal for *in camera* review so any material subject to the attorney-client privilege may be redacted prior to production.

basic search, the Court should compel production of all text messages sent or received by Company executives as well as Trust & Safety Communications personnel that are responsive to the RFI. *Plofchan v. Hughey*, No. M202100853COAR3CV, 2024 WL 64164, at *5 (Tenn. Ct. App. Jan. 5, 2024), *appeal dismissed*, No. M202100853SCR11CV, 2024 WL 1509189 (Tenn. Apr. 2, 2024) (affirming discovery sanction for failure to produce text messages).

### B. TikTok should be compelled to reproduce materials without SCA redactions.

TikTok employees routinely share content generated by TikTok users in their internal company correspondence, including emails, Zoom recordings, and Lark chat messages. To the extent TikTok has produced documents with user-generated content in this investigation, TikTok has been redacting such content prior to production. Stein Declaration ¶ 40, Exhibit S. The State has requested that TikTok reproduce all such materials without redactions, but the Company has refused, citing the Stored Communications Act's ("SCA") prohibition on divulging user content. Stein Declaration ¶ 40. However, as the SCA is inapplicable to TikTok, the redactions are not warranted, and the Court should therefore compel TikTok to produce full and complete copies of the documents without redactions.

The SCA prohibits electronic communications services ("ECS") and remote computing services ("RCS") from knowingly divulging the contents of user communications. 18 U.S.C. § 2702(a). The statute defines an ECS as "any service which provides to users thereof the ability to send or receive wire or electronic communications," and an RCS as a service that provides "to the public [] computer storage or processing services by means of an electronic communications system." 18 U.S.C. §§ 2510(15) and 2711(1)-(2).

TikTok, however, is neither an ECS nor RCS subject to the SCA's provisions. As the California Court of Appeals recently held, social media companies do not qualify as either an ECS

or RCS under the SCA to the extent that such companies make use of user-generated content "for their own profit-driven purposes." *Snap, Inc. v. Superior Ct. of San Diego Cnty.*, 323 Cal. Rptr. 3d 576, 602 (Cal. Ct. App. 2024).

Here, TikTok's terms of service create "a legally binding agreement between [TikTok users] and [the Company]." Exhibit T, p. 2. TikTok's privacy policy, which is incorporated into the terms of service, discloses that the Company may make use of all user-generated content uploaded to the platform, regardless of whether it is configured to be public or private, for a host of for-profit business purposes. Exhibit T, p. 3; Stein Declaration ¶ 42. These profit-driven business purposes include but are not limited to customizing the content presented to users, distributing promotional materials, studying the effectiveness of advertising, publishing as part of advertising materials, and "facilitat[ing] sales, promotion, and purchases of goods and services" on the platform. Stein Declaration ¶ 42, Exhibit Y. Accordingly, because TikTok makes use of user-generated content for a host of profit-driven business purposes, the social media company is well outside the definitions of either an ECS or RCS, and not subject to SCA's restrictions on user-generated conduct.

Even assuming, *arguendo*, the Court remains unpersuaded, the SCA still provides the Company no authority to redact user-generated content. The SCA prohibition against divulging user-generated content includes an exception where the user has provided lawful consent to the disclosure. 18 U.S.C. § 2702(b)(3). TikTok's privacy policy provides in pertinent part "[w]e may disclose any of the Information We Collect to respond to subpoenas, court orders, legal process, law enforcement requests, legal claims, or government inquiries…." Exhibit Y. The "Information We Collect" is a list of user data TikTok captures including, but not limited to "[u]ser-generated content, including comments, photographs, livestreams, audio recordings, videos, text, hashtags,

and virtual item videos that you choose to create with or upload to the Platform." Exhibit Y. The privacy policy makes no distinction between content which the user configures as public or private and applies to user-generated content even after a user deletes their account.

The Company's privacy policy to which TikTok users are contractually bound explicitly provides that any user-generated content shared on the platform may be disclosed in response to government inquiries, so their implicit consent to the disclosure must be inferred. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019) (finding privacy policy should be incorporated into contractual agreement between Facebook and its users then examined under state contract law). The analysis boils down to an assessment of "whether the users 'agreed' to allow [TikTok] to disseminate their sensitive information in the ways described" in the Company's privacy policy. *Id.* A privacy policy must be "assessed objectively, from the perspective of a reasonable [TikTok] user," *Id.*, and contract interpretation requires a court to "ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language" *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). *See also Facebook, Inc. v. Superior Ct.*, 417 P.3d 725, 742 (Cal. 2018) (quoting *Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 265 (S.D.N.Y. 2008) (finding "one who posts a communication with a reasonable basis for knowing that it will be available to the public should be considered to have implicitly consented to such disclosure under section 2702(b)(3)"). TikTok's users have consented to the disclosure of their user-generated content in response to a government inquiry pursuant to the ordinary meaning of the Company's privacy policy, so even if SCA applied to TikTok, the Company should be compelled to reproduce these materials without redactions.

TikTok might seek to rely upon dicta from a Tennessee decision suggesting "that the SCA is applicable to communications shared on social media websites." *State v. Johnson*, 538 S.W.3d

18

32, 69 (Tenn. Crim. App. 2017). But the *Johnson* court did not perform a thorough statutory analysis of the SCA, and the State contends that a court doing so today would reach a contrary conclusion.

### C. TikTok should be compelled to produce preserved secure chat metadata.

The Agreed Order requires TikTok to, among other things, "[t]ake reasonable steps to recover any metadata or "relics" of secure chats potentially responsive to the RFI that may have been deleted since the RFI was served, such as information related to who participated in the secure chat, when it occurred, and the size of any such files." Exhibit E, ¶ 4.h. TikTok's corporate representative revealed that the Company's forensic team preserved some group secure chat metadata before it could be automatically and irretrievably deleted nine (9) months after the RFI was served. Exhibit K, p. 104, ln.15-p. 105, ln. 17. The definitions of Communications[4] and Documents[5] found in the RFI are certainly broad enough to encompass this preserved metadata, so TikTok has an obligation to produce it to the State. Exhibit A, p. 3. Yet, the Company has refused to produce the preserved secure chat metadata, claiming it is not responsive to the State's investigation and is privileged attorney work product.

The TCPA vests the Attorney General with broad investigatory power to serve requests for information. *In re Wall & Assocs., Inc.*, *supra* at *3; TENN. CODE ANN. § 47-18-106. Targets of a State investigation are afforded the statutory right to pursue a protective order to modify or set aside a request for information, but must comply with it if no such protective order is timely secured. TENN. CODE ANN. §§ 47-18-106(b)-(c). TikTok did nothing to secure a protective order

---

[4] The RFI's definition of Communication includes "written communication of any kind including but not limited to: … internet relay chat logs; enterprise communication tools (such as, but not limited to, Lark); … and includes any Document that digests, memorializes, or records a communication." Exhibit A, p. 3.

[5] The RFI's definition of Document includes "written … matter of any kind, including without limitation: writings; … any electronic data transmission or compilation; and documents stored in personal computers, … mainframes, servers, cloud computing servers, …." Exhibit A, p. 3.

as permitted by statute, so it must comply with the RFI and produce this preserved metadata. The material sought is metadata related to the use of Group Secure Chat by TikTok employees, so it is not privileged and is subject to compelled disclosure. *See John B. v. Goetz*, 879 F. Supp. 2d 787 (M.D. Tenn. 2010) (granting motion to compel production of electronically stored information and metadata).

TikTok has been withholding the preserved metadata claiming it is not responsive to the RFI and shielded by the work product doctrine, but the Company is wrong on both counts. The metadata is relevant to the investigation as it can answer many questions regarding the use of Group Secure Chat at TikTok such as frequency, manner, and identity of employees (including those who might be custodians) participating, all of which is relevant to evaluating TikTok's compliance with the RFI. More importantly, the work product doctrine only shields those materials which "were prepared in anticipation of litigation or for trial …." *Boyd, supra* at 221. The metadata at issue was not prepared in anticipation of litigation or for trial, but automatically generated by the Lark platform and subsequently preserved by TikTok's forensic team. TikTok cannot avail itself of the work product doctrine with respect to metadata automatically generated by the Lark collaboration platform through a process which was designed, developed and deployed before the RFI was even served. *Santiago v. Miles*, 121 F.R.D. 636 (W.D.N.Y. 1988) (finding computer-generated data created in the ordinary course of business is not subject to the work product doctrine). The preserved secure chat metadata is relevant and is not TikTok's work product, so the Company should be compelled to produce this metadata to the State.

**D. TikTok should be compelled to produce complete privilege logs.**

The RFI includes instructions for the production of a privilege log which requires TikTok to supply information "in sufficient detail to permit the State to assess the applicability of the

privilege claimed." Exhibit A, pp. 5-6. *See In re Wall & Assocs., Inc.*, *supra* at *6 (noting the requirement to produce a privilege log in the context of a state investigation). Privilege log entries TikTok has produced regarding Lark chats often fail to include important detail (e.g., the Lark_ConversationId, Conversation_Date_Begin, Conversation_Date_End, Lark_message_type, and Lark_Conv_members), while entries for non-Lark productions frequently fail to identify the author or recipients. Stein Declaration ¶ 43; Exhibit V. In fact, TikTok's admitted failure to list redacted legal hold notices in a privilege log for over five (5) months prompted this Court to chastise the Company's outside counsel during a hearing on November 20, 2023. Unfortunately, the Court's forewarning did not motivate TikTok to improve its conduct, so the Attorney General seeks an order compelling TikTok to produce comprehensive privilege logs with each rolling production as the State's investigation proceeds.

## CONCLUSION

For the foregoing reasons, Movant, the State of Tennessee, pursuant to TENN. CODE ANN. § 47-18-106 and this Court's own equitable powers,

requests that this honorable Court issue an order:

A.     Setting forth findings of fact and conclusions of law that TikTok's conduct alleged herein constituted spoliation of relevant evidence;

B.     Directing TikTok to:

1.     Pay the State a civil penalty in the amount of one thousand dollars (USD $1,000.00) as provided by TENN. CODE ANN. § 47-18-106(e); and

2.     Produce all documents related to interviews of custodians conducted by the Company's in-house and outside counsel as part of an internal investigation into spoliation.

C.     Compelling TikTok to:

1. Produce relevant text messages sent or received by the Company's executives as well as Trust & Safety Communications personnel;

2. Produce unredacted copies of documents previously produced with redactions purportedly required by the Stored Communications Act;

3. Produce all preserved metadata associated with group secure chat threads; and

4. Produce a comprehensive privilege log with all future rolling productions in the State's investigation.

D. Taxing all costs against TikTok, as no costs may be taxed against the State pursuant to TENN. CODE ANN. § 47-18-116.

E. Granting the State such other and further relief as this Court deems just and proper.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter
B.P.R. No. 031551

JONATHAN STEIN, B.P.R. No. 026919
Assistant Attorney General
MATTHEW JANSSEN, B.P.R. No. 035451
Senior Assistant Attorney General
Office of the Tennessee Attorney General
Public Protection Section
Consumer Protection Division
UBS Tower, 20th Floor
315 Deaderick Street
Nashville, Tennessee 37243
615.253.8765, phone
615.532.2910, fax
jonathan.stein@ag.tn.gov
matthew.janssen@ag.tn.gov
*Attorneys for State of Tennessee*

## CERTIFICATE OF SERVICE

I, Jonathan Stein, hereby certify that I caused a copy of the foregoing to be served upon the following by electronic mail:

Craig TenBroeck, Esq.
Travis LeBlanc, Esq.
Cooley LLP
10265 Science Drive
San Diego, California 92121
*Via E-Mail*: ctenbroeck@cooley.com
tleblanc@cooley.com

Thomas Cullen, Esq.
Kate Skagerberg, Esq.
Nelson Mullins Riley & Scarborough, LLP
150 Fourth Avenue North, Suite 1100
Nashville, Tennessee 37219
*Via E-Mail*: thomas.cullen@nelsonmullins.com
kate.skagerberg@nelsonmullins.com

This the 11th day of October 2024.

_____
JONATHAN STEIN, B.P.R. No. 026919
Assistant Attorney General

23

**IN THE CHANCERY COURT OF DAVIDSON COUNTY, TENNESSEE**
**FOR THE TWENTIETH JUDICIAL DISTRICT AT NASHVILLE**

| | | |
|---|---|---|
| IN RE | ) | |
| INVESTIGATION OF TIKTOK, INC. | ) | Case No. 23-0298-I |
| | ) | |

**MOTION REQUESTING REMEDIES TO ADDRESS SPOLIATION
AND COMPEL COMPLIANCE WITH AGREED ORDER**

The State of Tennessee, by and through its Attorney General and Reporter (the "State" or "Attorney General"), moves this honorable Court to provide remedies to address the spoliation uncovered during the State's investigation into TikTok, Inc. ("TikTok" or the "Company") as provided by statue and precedent, and to compel the Company to comply with the Agreed Order on Motion for an Order Compelling TikTok, Inc. to Comply with the Attorney General's Request for Information entered herein on April 17, 2023 (the "Agreed Order").

Specifically, the Attorney General requests the Court issue an order: (1) imposing a civil penalty on TikTok of one thousand dollars (USD $1,000.00) pursuant to TENN. CODE ANN. § 47-18-106(e) for spoliation of evidence; (2) directing TikTok to produce all documents related to interviews of custodians conducted by the Company's in-house and outside counsel as part of an internal investigation into spoliation; (3) compelling TikTok to produce relevant text messages sent or received by the Company's executives as well as Trust & Safety Communications personnel; (4) compelling TikTok to produce unredacted copies of materials previously produced with redactions purportedly required by the Stored Communications Act; (5) compelling TikTok to produce all preserved metadata associated with group secure chat threads; and (6) compelling TikTok to produce a comprehensive privilege log with all future rolling productions in the State's investigation.

1

## BASES FOR MOTION

1.      The Attorney General has reason to believe TikTok engages in unfair and deceptive business acts and practices in connection with the social media platform it makes available to consumers in Tennessee and elsewhere.

2.      The Attorney General is investigating TikTok pursuant to the Tennessee Consumer Protection Act of 1977, codified at TENN. CODE ANN. § 47-18-101 *et seq.*

3.      During the course of the State's investigation, and as more fully described in the Memorandum of Law filed contemporaneously herewith, the Attorney General has learned that after the RFI was served messages in admittedly relevant chat threads sent by custodians on legal hold were destroyed using the recall feature of Lark, and an unknown number of potentially relevant Lark secure chat messages were irretrievably destroyed.

4.      In addition, an unknown number of files containing metadata associated with group secure chat messages were destroyed by an automated system deployed nine (9) months after the RFI was served which could have shed light on the relevance of secure chat messages.

5.      In light of the foregoing, the Attorney General seeks an order imposing a civil penalty on TikTok in the amount of one thousand dollars (USD $1,000.00) as provided by TENN. CODE ANN. § 47-18-106(e) for spoliation of evidence.

6.      In addition, the Company's in-house and outside counsel conducted interviews of custodians as part of an internal investigation into spoliation, but the Company has refused to disclose the substance of these interviews asserting attorney-client and work product privileges.

7.      Because TikTok irretrievably destroyed data in violation of the duty to preserve set forth in the RFI, the Attorney General seeks an order directing TikTok to produce all documents

related to interviews of custodians conducted by the Company's in-house and outside counsel as the best remedy presently available to address the Company's spoliation.

8. Compounding the Company's egregious misconduct related to spoliation, TikTok has willfully refused to comply with the Agreed Order which provides, in pertinent part: "[t]he Company shall use its best efforts to respond fully and completely to the [RFI] as soon as possible."

9. Far from using its best efforts to respond fully and completely to the RFI, TikTok has refused to produce relevant text messages, unjustifiably redacted all user-generated content from materials prior to production, withheld relevant preserved metadata, and consistently provided untimely and inadequate privilege logs.

10. The Attorney General seeks an order compelling TikTok to comply with the RFI and remedy these deficiencies.

## PRAYER FOR RELIEF

For the reasons stated herein and in the Memorandum of Law filed contemporaneously herewith, Movant, the State of Tennessee, pursuant to TENN. CODE ANN. § 47-18-106 and this Court's own equitable powers, requests that this honorable Court issue an order:

A. Setting forth findings of fact and conclusions of law that TikTok's conduct alleged herein constituted spoliation of relevant evidence;

B. Directing TikTok to:

  1. Pay the State a civil penalty in the amount of one thousand dollars (USD $1,000.00) as provided by TENN. CODE ANN. § 47-18-106(e); and

  2. Produce all documents related to interviews of custodians conducted by the Company's in-house and outside counsel as part of an internal investigation into spoliation.

C. Compelling TikTok to:

1.  Produce relevant text messages sent or received by the Company's executives as well as Trust & Safety Communications personnel;

2.  Produce unredacted copies of documents previously produced with redactions purportedly required by the Stored Communications Act;

3.  Produce all preserved metadata associated with group secure chat threads; and

4.  Produce a comprehensive privilege log with all future rolling productions in the State's investigation.

D. Taxing all costs against TikTok, as no costs may be taxed against the State pursuant to TENN. CODE ANN. § 47-18-116.

E. Granting the State such other and further relief as this Court deems just and proper.

<div style="margin-left:40%">

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter
B.P.R. No. 031551

JONATHAN STEIN, B.P.R. No. 026919
Assistant Attorney General
MATTHEW JANSSEN, B.P.R. No. 035451
Senior Assistant Attorney General
Office of the Tennessee Attorney General
Public Protection Section
Consumer Protection Division
UBS Tower, 20th Floor
315 Deaderick Street
Nashville, Tennessee 37243
615.253.8765, phone
615.532.2910, fax
jonathan.stein@ag.tn.gov
matthew.janssen@ag.tn.gov
*Attorneys for State of Tennessee*

</div>

## NOTICE OF HEARING

THIS MOTION SHALL BE HEARD ON <u>FRIDAY, THE 25th DAY OF OCTOBER 2024,</u> <u>AT 9:00 A.M. IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE,</u> AT NASHVILLE METROPOLITAN COURTHOUSE, 1 PUBLIC SQUARE, NASHVILLE, TENNESSEE 37201. FAILURE TO FILE AND SERVE A TIMELY WRITTEN RESPONSE TO THE MOTION WILL RESULT IN THE MOTION BEING GRANTED WITHOUT FURTHER HEARING.

## CERTIFICATE OF SERVICE

I, Jonathan Stein, hereby certify that I caused a copy of the foregoing to be served upon the following by electronic mail:

Craig TenBroeck, Esq.
Travis LeBlanc, Esq.
Cooley LLP
10265 Science Drive
San Diego, California 92121
*Via E-Mail*: ctenbroeck@cooley.com
tleblanc@cooley.com

Thomas Cullen, Esq.
Kate Skagerberg, Esq.
Nelson Mullins Riley & Scarborough, LLP
150 Fourth Avenue North, Suite 1100
Nashville, Tennessee 37219
*Via E-Mail*: thomas.cullen@nelsonmullins.com
kate.skagerberg@nelsonmullins.com

This the 8th day of October 2024.

JONATHAN STEIN, B.P.R. No. 026919
Assistant Attorney General