UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TIKTOK INC. IN APP BROWSER PRIVACY LITIGATION<br><br>This Document Relates to:<br>ALL ACTIONS | MDL 2948-A<br><br>Master Docket No. 24-cv-2110<br><br>Judge Rebecca R. Pallmeyer |

**DEFENDANTS' STATUS REPORT**

Defendants TikTok Inc., ByteDance Inc., and ByteDance Ltd. ("Defendants") (together with Plaintiffs, the "Parties") hereby submit their Status Report ahead of the status conference scheduled for February 27, 2025.[1] This Report provides the Court with an update on Plaintiffs'

---

[1] Defendants were forced to file this separate statement because they were unable to comply with an arbitrary and unreasonable deadline imposed on them by Plaintiffs. Defendants had been planning to submit a joint status statement with Plaintiffs in advance of the February 27, 2025 status conference set by the Court. However, on February 11, 2025, Plaintiffs surprised Defendants by emailing a draft joint status report to Defendants and asking for any proposed revisions by the following day (February 12) so it could be filed that same day, reasoning that they wanted to get it on file one week before the February 19 ESI protocol hearing, even though the Court never asked to receive the February 27 status conference statement by that date. (Plaintiffs had previously rejected Defendants' proposal of combining the ESI dispute hearing with the February 27 status conference.) Although Plaintiffs' desire to be helpful to the Court is commendable, it was not reasonable for them to expect Defendants to be able to join in their statement on such short notice, especially given how one-sided and objectionable some of the language of that statement would be for Defendants. As Plaintiffs were aware, counsel for Defendants were traveling and unavailable starting February 12 and therefore would not have the opportunity to discuss with and get approval from their client to file on Plaintiffs' requested timeline. Even so, Defendants' counsel made an extraordinary effort to review and revise Plaintiffs' proposed joint statement, and obtain client approval for the same, by mid-day on February 12 and offered to meet and confer during the remaining one hour before they departed for their travels if there were any concerns about their edits. Plaintiffs did not respond within this time frame, and when they did respond, they merely sent over a new redline reversing most of the key edits Defendants had made. Therefore, the Parties were not able to come to agreement on a joint report before Plaintiffs filed their unilateral status report.

1

inspection of TikTok Inc.'s source code, various discovery matters, the Parties' settlement discussions, and Defendants' proposal to streamline discovery in this case.

**Source Code Inspection**

Source code is the key category of discovery in this case. At the heart of this litigation is a disagreement between the Parties regarding how the TikTok app's in-app browser ("IAB") actually works. Plaintiffs allege that certain JavaScript code "intercepts all of the details of the user's activities on third-party websites while the in-app browser is open, and Defendants track and capture all of these details simultaneous with the user's activities." Compl., Dkt. 44 at ¶ 135. Defendants have consistently denied these allegations and repeatedly explained to Plaintiffs why they are untrue. The Court recognized that if Defendants are right, Plaintiffs' Wiretap Act claim "may very well fail." MTD Op., Dkt. 77 at 21. And the Court stated that the "critical question" that Plaintiffs will "need to confront" is whether the TikTok app not only had the ability to record users' keystrokes in the IAB, but actually did collect and contemporaneously transmit this data to the company's servers. *Id.* at 21–22 (noting that there may be no violation of wiretapping laws if the TikTok app merely subscribes to keystrokes locally without ever conveying that data to the company's servers). Source code answers that critical question.

For that reason, since the beginning of this litigation, TikTok Inc. has sought to make the relevant source code available for Plaintiffs' inspection. Plaintiffs' source code expert conducted an initial inspection of TikTok Inc.'s source code on July 25–26, 2024. Thereafter, the Parties met and conferred regarding additional source code materials to be reviewed by Plaintiffs' expert and the timing of a subsequent review. Plaintiffs' expert resumed his source code inspection on January 31, 2025, and February 3, 2025.[2] Prior to his continued review, Defendants explained to Plaintiffs

---

[2] The Parties originally anticipated the inspection occurring on January 16–17, 2025, but rescheduled due to the active wildfires in Los Angeles. Notwithstanding the fire-related impacts on the staff members who

that their expert would have access to a tool TikTok Inc. provided, which was intended to make their expert's review easier, and produced a document explaining exactly how that tool can be used. TikTok Inc. also produced an index of the additional code materials made available for Plaintiffs' expert's review. After the inspection, TikTok Inc. produced a revised index with additional information on the code materials, as requested by Plaintiffs.

Although progress was made, Plaintiffs have informed Defendants that they believe they will need a Rule 30(b)(6) deposition regarding the source code before further expert inspections of the source code should take place. Defendants have requested that Plaintiffs provide a detailed list of questions about the source code in advance of any such deposition so that they can adequately prepare the designated witness for the deposition. The source code is too complex and too voluminous to reasonably prepare any witness to testify about it generally without knowing the specific questions in advance. Indeed, the optimal discovery tool for the answers sought by Plaintiffs would most likely be through interrogatories, not deposition, because interrogatories allow the company to survey the individuals with relevant knowledge and obtain a consensus on the correct and accurate information about the source code, where any one individual is not likely to have that information. Even so, TikTok Inc. has not opposed, and has agreed to meet and confer to determine the timing and scope of this deposition.

**Written Discovery**

On June 17, 2024, Plaintiffs served TikTok Inc. with 28 Requests for Production of Documents ("Plaintiffs' RFPs"). On July 17, 2024, TikTok Inc. served responses and objections to Plaintiffs' RFPs. After extensive meet-and-confer efforts, the Parties resolved all initial issues

---

oversee and assist with source code inspection per the Parties' Agreed Confidentiality Order (Dkt. 76), the Parties were able to work together in good faith to reschedule Plaintiffs' expert's review two days after Defendants' employees were able to regain access to their office.

related to Plaintiffs' RFPs, subject to Plaintiffs' reservation of rights to meet and confer about issues that arise during the course of TikTok Inc.'s document production.

The Parties have been diligently negotiating various discovery-related orders. The Rule 502(d) and Privileged Materials Order (Dkt. 75) and Agreed Confidentiality Order (Dkt. 76) were entered by the Court on September 27, 2024. The negotiations on the Stipulated Order Regarding the Protocol for Producing Documents and Electronically Stored Information (the "ESI Protocol") have been time consuming, as the Parties worked to address their respective concerns regarding the preservation, collection, and production of potentially relevant data or information. Those have taken place over the course of more than eight months due to Plaintiffs' repeated requests for more, and more granular, information about TikTok Inc.'s software and ability to export various types of metadata. TikTok Inc. worked diligently to address those questions, spending numerous hours investigating and explaining the details of its software to Plaintiffs on a series of meet-and-confers. To address Plaintiffs' stated concerns, TikTok Inc. also provided Plaintiffs a declaration from its E-Discovery Lead in November 2024 regarding the company's technical capabilities. *See* Dkt. 98-4. Negotiations and additional questions followed for an additional two-plus months. Pursuant to the Court's direction, the Parties filed a Joint Statement re: ESI Protocol Dispute outlining their remaining disputes on February 10, 2025 (Dkt. 98), and will address them during the February 19, 2025 hearing.

On January 24, 2025, Defendants served all Plaintiffs with 23 Requests for Production of Documents and six Interrogatories. Plaintiffs' responses and objections thereto are due on February 24, 2025.

**Document Production**

Notwithstanding the ongoing ESI Protocol negotiations, TikTok Inc. has been producing documents to Plaintiffs under an interim agreement between the Parties, so that discovery was not unduly delayed during the Parties' negotiation of the Agreed Confidentiality Order and ESI Protocol. TikTok Inc. initially produced certain information to Plaintiffs during the Parties' discussions in 2023, and produced what it believed to be the relevant source code in July 2024. As explained above, TikTok Inc. produced further source code materials on a rolling basis since that time, including 171 requested pages of source code following Plaintiffs' expert's inspections and additional code materials made available for Plaintiffs' expert's review following the initial July 2024 inspection dates. Although TikTok Inc. believes that the relevant source code should be dispositive of Plaintiffs' claims, it also made a production of non-source code documents on December 6, 2024, consisting of 126 documents totaling 369 pages, and another production on January 17, 2025, consisting of 42 documents totaling 137 pages. On February 4, Plaintiffs requested that TikTok Inc. share proposed search terms for custodial collections. TikTok Inc. shared its proposal the next day. As of filing, Plaintiffs have not responded to that proposal. TikTok Inc. is also actively searching for non-custodial documents within scope.

As explained above, TikTok Inc. has been producing documents on a rolling basis prior to the entry of the ESI Protocol in order to keep discovery moving forward. Any requirement to produce privilege logs exists only in the non-finalized ESI Protocol. On February 4, 2025, Plaintiffs requested that TikTok Inc. produce privilege logs. Notwithstanding the ongoing ESI Protocol negotiations, in the spirit of compromise, on February 14, TikTok Inc. proposed producing a privilege log for its productions to date, 30 days after the February 19, 2025, hearing.

Plaintiffs have not yet produced documents in this litigation, nor have they given any timeline by which they expect to produce responsive documents.

**Settlement Discussions**

As previously reported, the Parties held a mediation session with Gregory P. Lindstrom of Phillips ADR. The mediation session was informative but unsuccessful. A further mediation has been tabled until Plaintiffs' expert can complete his inspection of TikTok Inc.'s source code.

**Proposal to Streamline Resolution of this Action**

As noted above, the JavaScript and related IAB source code pertaining to user communications with third-party websites using the IAB holds the key to resolving this case. If the data collection alleged by Plaintiffs ever occurred (it did not), such collection would be readily apparent from the relevant source code. For this reason, Defendants have sought from the beginning of this case to put the relevant source code in the hands of Plaintiffs' expert so that he can confirm the alleged data collection did not occur. Yet, most of the time, expense, and delay in resolving discovery disputes between the Parties has been spent on non-critical, secondary discovery that has nothing to do with what the app's source code actually did in terms of data collection. To the contrary, these disputes are a sideshow focused on documents and information that do not matter in this case if the source code proves the alleged data collection did not occur. In other words, if the source code itself proves the alleged data collection did not occur, Plaintiffs' claims will fail and further costly and time-intensive discovery will be unnecessary.

Defendants therefore request that the Court streamline the litigation by setting a date for an early summary judgment motion (e.g., six months out) on the issue of what data was actually collected from U.S. users when they visited third-party websites from within the IAB as shown by the relevant source code. The Parties could then prioritize or bifurcate their discovery efforts to

focus on this issue, which will likely be dispositive of the remainder of the case. Such discovery would include (i) completion of Plaintiffs' expert's review of the relevant code, (ii) interrogatories about the function of the code, and (iii) a deposition about the function of the code. The Court may also find it advantageous to appoint a special neutral expert to review the code and prepare a report for the Court independent of the Parties' experts. In the unlikely event this motion is not dispositive, the Parties could continue with the remainder of their discovery efforts, nothing lost. But for all practical purposes, bifurcation of the primary issue in this litigation will lead to a far more efficient resolution of this action, regardless of the outcome.

Dated: February 18, 2025

By: */s/ Anthony J Weibell*

Anthony J Weibell
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
(650) 331-2030
aweibell@mayerbrown.com

*Lead Counsel for All Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorneys of record for each party through the Court's electronic filing service on this date, which will send notification of such filing to the e-mail addresses registered.

Dated: February 18, 2025

/s/ Anthony J Weibell