**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: TIKTOK INC. IN APP BROWSER PRIVACY LITIGATION <br><br> This Document Relates to: <br> ALL ACTIONS | MDL 2948-A <br><br> Master Docket No. 24-cv-2110 <br><br> Judge Rebecca R. Pallmeyer |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION FOR PROTECTIVE ORDER**

**PRELIMINARY STATEMENT**

As the Court acknowledged, source code stands at the heart of this case. TikTok Inc. ("TTI") has already produced source code, produced a 30(b)(6) witness for testimony regarding the source code, and agreed on future productions from related data sources. This motion arises instead from the parties' dispute over the preservation of three largely inaccessible and highly burdensome data sources: (i) "deleted, slack, fragmented, or other data only accessible by forensics"; (ii) "server, system, or network logs"; and (iii) "data remaining from systems no longer in use that is unintelligible on the systems currently in use" (the "Disputed Data Sources").[1] *See* Dkt. 98, Joint Statement Re: ESI Protocol Dispute at 1 n.4.

For nearly a year, TTI, ByteDance Inc., and ByteDance Ltd. (collectively, "Defendants") have made sustained good faith efforts to explain to Plaintiffs the case law and literature showing the "how and why" of courts' and parties' consensus that the Disputed Data Sources need not be preserved or produced absent certain rare exceptional circumstances—not one of which Plaintiffs can point to here. Recently, Defendants provided Plaintiffs with two detailed declarations. One explains the case law and literature showing that courts and parties agree to forego preservation and production of these sources. *See* Declaration of Jonathan M. Redgrave, Mar. 31, 2025 ("Redgrave Declaration") attached hereto. The other provides specific facts about TTI's systems and data, particularly relating to these data sources. *See* Declaration of Warren Solow, Mar. 31, 2025 ("Solow Declaration") attached hereto. Together, the declarations demonstrate why TTI's

---

[1] Initially, the Parties also disputed preservation of "back-up data that is entirely duplicative of data that can be collected from reasonably accessible sources located elsewhere," with Plaintiffs insisting that this "entirely duplicative" data also be preserved. In the course of meet-and-confers in an effort to resolve this dispute, Plaintiffs eventually conceded that such back-up data should be excluded from the Parties' preservation obligations and thus included in the list of sources that do not need to be preserved as set forth in Paragraph 2 of the ESI Protocol.

data volume and number of systems will impose unreasonable and disproportionate burden and cost should these three sources be subject to preservation.

Yet Plaintiffs have steadfastly rejected Defendants' good faith efforts to explain the relevant law and literature as applied to TTI's data and systems. Instead, Plaintiffs continue to press for the preservation of these data sources that are almost never part of discovery, are largely inaccessible, and are unlikely to contain unique, relevant materials. These sources remain disputed only because Plaintiffs *speculate* that each *could* contain unique data with potential relevance to the case. Yet Plaintiffs have been unable to articulate what that potential relevance could even be. Indeed, Plaintiffs have refused to provide responses to TTI's precise questions as to why these sources would have any relevance, particularly in this matter where source code that TTI has already produced is the data at the heart of the case.

Notwithstanding TTI's significant efforts to resolve this dispute—including provision of two declarations demonstrating ample reason why these sources should be excluded—Plaintiffs' speculative and sustained refusal to substantiate their position has resulted in a need once again for judicial intervention, diverting resources from more important issues in this litigation. For the reasons set forth below, the Court should grant Defendants' motion for Protective Order modifying the "Joint Stipulated Order Regarding the Protocol for Producing Documents and Electronically Stored Information" submitted by Plaintiffs and entered by the Court on February 24, 2025 (Dkt. 107, the "As-Entered ESI Protocol") and excluding the Disputed Data Sources from Defendants' preservation obligations. *See* Declaration of Anthony J Weibell in Support of Defendants' Motion for Protective Order, May 13, 2025 ("Weibell Declaration"), Ex. 1 (proposed ESI Protocol reflecting the modifications requested in this motion) & Ex. 2 (redline of the proposed ESI Protocol against the As-Entered ESI Protocol).

**FACTUAL BACKGROUND**

On May 24, 2024, the Court entered a Stipulation and Order Re: Preservation of Evidence (the "May 2024 PO") governing the Parties' preservation obligations "[u]ntil the Parties reach an agreement on a preservation plan or the Court orders otherwise." *See* Dkt. 53 at 2. The Parties then began negotiating an ESI protocol, which included Paragraph 2 governing preservation obligations. As of mid-February 2025, the Parties had largely reached agreement in principle on a protocol and were negotiating a handful of remaining provisions—most relevant here, whether the Disputed Data Sources should be among the data sources excluded from preservation under Paragraph 2's preservation obligations.[2] *See* Dkt. 98, Joint Statement Re: ESI Protocol Dispute at 1 n.4.

At a status hearing on February 19, 2025, the Court heard argument on disputes identified in the Parties' Joint Statement on the ESI Protocol Dispute, including application of the May 2024 PO to the Disputed Data Sources. *Id*. Plaintiffs repeatedly stated that a declaration showing evidence of TTI's burden to preserve the Disputed Data Sources would be "helpful" in resolving the dispute. *See* Feb. 19, 2025, Hearing Tr. ("Hearing Tr.") at 6:15–7:4 ("without the ability to test the statements that TikTok has made, . . . it's just hard for [Plaintiffs] to assess" why a carve-out is needed); *see also id.* at 22:20–23:24. In particular, Plaintiffs' counsel told the Court that they were "reasonable counsel" who would "work with" TTI if TTI provided "good evidence" of the burdens associated with the preservation of these sources. *Id*. at 23:23–24:5. Plaintiffs also agreed that it made sense to "carve this issue out of the ESI protocol" to allow other discovery to proceed, given the additional work needed for Plaintiffs to understand the burden related to the Disputed Data Sources and to negotiate a resolution. *Id*. at 22:21–23.

---

[2] Certain other provisions of the ESI Protocol remained disputed as of February 24, 2025 (*see* Dkt. 104-1 & 104-2). In a show of good faith, as conveyed to Plaintiffs in meet-and-confers, Defendants will agree to Plaintiffs' revisions to the remaining disputed provisions (*see* Dkt. 104-1) to bring this to resolution.

3

The Court asked Plaintiffs to submit a "red line version" of the ESI protocol that "reflect[ed] the parties' disputes" outstanding at that time. *Id.* at 31:9–14. Plaintiffs thereafter filed three versions of the protocol: (1) a red line showing Plaintiffs' proposal, Dkt. 104-1, (2) a red line showing Defendants' proposal, Dkt. 104-2, and (3) a clean version reflecting only Plaintiffs' proposals, styled as a "Joint Stipulated Order," Dkt. 104-3 at 1. The next day, the Court issued a minute order "affirm[ing]" the May 2024 PO and "den[ying] without prejudice the request to alter" it. *See* Dkt. 105 (the "February 20 Order"). On February 24, 2025, the Court entered as a "joint stipulated order" *Plaintiffs'* version of the protocol, reflecting *Plaintiffs'* version of Paragraph 2, which referenced the Disputed Data Sources as items to be preserved if relevant. *See* Dkt. 107.

Following entry of the Court's February 20 Order and the As-Entered ESI Protocol, TTI has undertaken substantial efforts to reach resolution with Plaintiffs on Paragraph 2. Specifically, in the weeks following the hearing, TTI prepared and shared with Plaintiffs two detailed declarations from TTI's eDiscovery Lead and a nationally recognized e-discovery expert regarding the three Disputed Data Sources and associated burdens and inaccessibility of preserving each. *See* Solow Decl.; Redgrave Decl. These declarations—which Plaintiffs themselves requested at the hearing multiple times—set forth ample basis for why the Disputed Data Sources need not be preserved under the law, industry custom, and the specific circumstances of this case. Indeed, they provide the precise type of information that Plaintiffs indicated would assuage their concerns about these sources. *See* Hearing Tr. at 6:15–7:4 (Plaintiffs recognized declarations likely to "move[] the needle substantially in the parties' negotiations" as in another discovery dispute); 23:3–24 (Plaintiffs acknowledged "it would be helpful for TikTok . . . to provide some sort of declaration, explaining this stuff" and that "[i]f they give us some good evidence, we'll work with them").[3]

---

[3] The declarations contain references to "back-up" data because that source was still in dispute at the time the declarations were provided to Plaintiffs. However, that source is no longer disputed (*see supra* n.1).

4

In the months since the Court's February 20 Order and the As-Entered ESI Protocol, TTI has undertaken substantial good faith efforts to meet and confer with Plaintiffs to resolve the Parties' dispute without the Court's intervention, as set forth in the Civil Local Rule 37.2 Statement in the Motion. Defendants have spent significant time and money to assemble the declarations requested by Plaintiffs. Notwithstanding these declarations, Plaintiffs have declined to agree to modify the protocol, yet failed to identify any unique, responsive data that would reside on the Disputed Data Sources. Instead, they have pressed for guarantees about the contents of these data sources, ignoring the detailed analysis in TTI's two declarations and additional clarification from TTI that these data sources are "unlikely to contain any relevant information." *See* Dkt. 98, Joint Statement Re: ESI Protocol Dispute at 3. On this speculative basis, Plaintiffs refuse to agree to modify Paragraph 2 of the ESI Protocol to exclude those sources from preservation obligations.[4] Defendants thus now seek the Court's intervention to confirm that the Disputed Data Sources may be excluded from TTI's preservation obligations to protect TTI from the unreasonable and disproportionate burden of preserving these largely inaccessible, highly burdensome data sources.

## ARGUMENT

Rule 26(c)(1) permits a court, for good cause shown, to protect a party from, *inter alia*, "undue burden or expense," including by "forbidding the disclosure or discovery" or "prescribing a discovery method other than the one selected" by the requesting party.[5] Fed. R. Civ. P. 26(c)(1); *see also Knox v. Walter*, No. 20-3344, 2022 WL 61432, at *2 (7th Cir. Jan. 6, 2022) (affirming protective order where the party protected had "articulated the burdens and expense" it would face

---

[4] During the meet-and-confer process, Plaintiffs agreed to exclude duplicative back-up data from the preservation obligations contemplated in Paragraph 2 of the ESI Protocol. *See supra* n.1.

[5] Such a motion may be brought after the movant has first attempted to meet and confer with the requesting party to resolve the dispute without court action. Fed. R. Civ. P. 26(c)(1). As detailed in the Civil Local Rule 37.2 Statement in the Motion, Defendants have engaged in an extensive meet-and-confer process.

5

absent the order); *Kleen Prods. LLC v. Packaging Corp. of Am.*, No. 10 C 5711, 2012 WL 4498465, at *17 (N.D. Ill. Sept. 28, 2012) ("The decision whether to require a responding party to search for and produce information that is not reasonably accessible depends not only on the burdens and costs of doing so, but also on whether those burdens and costs can be justified in the circumstances of the case"); *see also* Dkt. 107 at 36 ¶ O.2 (granting the right to seek modification if a Party "cannot comply with any material aspect" and/or "compliance with such material aspect would be unreasonable"). Good cause "generally signifies a sound basis or legitimate need to take judicial action." *Nieves v. OPA, Inc.*, 948 F. Supp. 2d 887, 891 (N.D. Ill. 2013).

Here, good cause exists to modify the As-Entered ESI Protocol. *First*, despite being styled as such, the As-Entered ESI Protocol was never "stipulated." Rather, at the time the Court entered the Protocol, the Parties had not yet reached agreement on Paragraph 2 and whether the Disputed Data Sources should be excepted from preservation. *Second*, consistent with established law and industry custom as set forth in the declarations attached hereto, preservation of the Disputed Data Sources is not required in light of the disproportionate burden associated with each and their inability to be reasonably accessed. This burden is not outweighed by any anticipated benefit from such sources, and Plaintiffs have not identified any relevant data unique to those the sources.

As such, the Disputed Data Sources should be excluded from the Parties' preservation obligations and a modified ESI Protocol entered reflecting the same.[6] *See* Weibell Declaration Ex. 1 (proposed ESI Protocol reflecting the modifications requested in this motion). Paragraph 2 should be further modified to clarify that this provision governs the Parties' preservation obligations moving forward, replacing the May 2024 PO (Dkt. 53).

---

[6] In the alternative, even if the Court denies Defendants' request to modify the As-Entered ESI Protocol to exclude the Disputed Data Sources from the Parties' preservation obligations, the Court should enter an amended order reflecting that the As-Entered Protocol was not "jointly stipulated."

### I. The Disputed Data Sources Should be Excluded from the Parties' Preservation Obligations.

The Disputed Data Sources should be excluded from preservation based on long-standing industry practice, case law, and relevant literature. These authorities deem these sources to be outside the scope of preservation because their volume, volatility, and inaccessibility render them too burdensome, disproportionate, impractical, and unreasonable to preserve. Both declarations, previously shared with Plaintiffs and attached hereto, establish an ample basis for the Court to so conclude.

The touchstones in determining whether preservation is required are *reasonableness* and *proportionality*. *See* Fed. R. Civ. P. 26(b); *see also* Redgrave Decl. ¶ 20. Parties may only obtain discovery of materials that are relevant and "proportional to the needs of the case" when considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Parties are *not* required to provide discovery of ESI sources that are "not reasonably accessible because of undue burden or cost," *id.* 26(b)(2)(B), and the scope of discovery must be limited if discovery from the source would be "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," *id*. 26(b)(2)(C)(i). Preservation of these sources is required only in the presence of unusual circumstances, evidenced by a specific and articulable need of the requesting party, and Plaintiffs' silence on this issue is telling. *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment ("*The parties and the court have a collective responsibility to consider the*

7

*proportionality* of all discovery and consider it in resolving discovery disputes"; "[a] *party claiming that a request is important to resolve the issues should be able to explain* the ways in which the underlying information bears on the issues as that party understands them.") (emphasis added); *Small v. Amgen, Inc*., No. 212CV476FTM29MRM, 2016 WL 7228863, at *10 (M.D. Fla. Sept. 28, 2016) (denying in part motion to compel and explaining that the requesting party is "in the best position to explain the importance of the requested discovery in resolving the issues").

  ***Deleted, Slack, Fragmented, or Other Data Only Accessible by Forensics.*** This Disputed Data Source generally refers to data that has been deleted and is no longer discoverable to an ordinary user. *See* Solow Decl. ¶ 5; Redgrave Decl. ¶ 29. Reconstruction of this data requires a forensic investigator to use specialized forensic software or tools. *See* Solow Decl. ¶¶ 6, 8; Redgrave Decl. ¶ 29. As such, preservation of this data would be a resource-intensive and costly endeavor given the hundreds of thousands of devices, servers, systems, and databases implicated in TTI's data environment—and still may not be possible, as this data may have been overwritten during normal use. *See* Solow Decl. ¶¶ 5-8.

  Given the high burden of accessing this data, as explained in detail in the declarations, its preservation would be grossly disproportionate to the needs of this case. This is particularly true where, as here, Plaintiffs have articulated no particular need for or relevance of this data and have identified no reason, other than their own speculation, why the use of extraordinary measures, such as attempts at forensic reconstruction of this data, are warranted by special circumstances present in this case. *See* Redgrave Decl. ¶ 24; 19 Sedona Conf. J. 1, Principle 9; *cf. Coburn v. PN II, Inc*., No. 2:07-cv-00662, 2008 WL 879746, at *2–3 (D. Nev. Mar. 28, 2008) (requiring forensic examiner to mirror a hard drive because of credible allegations those forensics would reveal theft

8

of trade secrets and because the mirrored version would preserve privacy and confidentiality of irrelevant data on the device).

*Server, System, or Network Logs.* This Disputed Data Source includes data that is often ephemeral and temporary, like error messages, login attempts, and configuration updates, and that is not normally preserved for litigation. *See* Solow Decl. ¶¶ 9-10. This data is commonly overwritten because it is only of temporary value and indefinitely storing it would overwhelm storage capacity and degrade system performance. *See* Redgrave Decl. ¶ 30. As such, this data is by and large inaccessible for preservation.

Furthermore, the sheer volume of potential logs for preservation here is enormous. As set forth in the Solow Declaration, there are more than 160,000 internal application and network systems at TTI, each of which generate an untold number of logs. *See* Solow Decl. ¶ 11. Multiplied by the four-year time period in question, the potential volume of log data contemplated by preservation of this source is patently unreasonable and disproportionate, particularly when balanced against the needs of the case. *See Barnes-Staples v. Murphy,* No. 20-CV-3627, 2021 WL 1426875, at *9 (N.D. Ill. Apr. 15, 2021) ("[W]hile some amount of fishing is generally necessary in the pretrial discovery process," the requester has to provide "the Court a reason to believe that the pond might be stocked with fish.").

The disproportionate burden and unreasonableness of preserving these logs is further exacerbated by the fact that Plaintiffs have not articulated which type of server, system, or network log they believe may contain *any* responsive information. *See, e.g., Love v. City of Chicago*, No. 09 C 03631, 2017 WL 5152345, at *5 (N.D. Ill. Nov. 7, 2017) (duty to preserve "encompasses any relevant evidence that the party knew or could reasonably foresee would be relevant to the action"); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d 758, 766 (7th Cir. 2015)

9

(affirming grant of protective order against additional depositions where the requesting party had "not presented any evidence that the six depositions, if permitted, would yield relevant information"). Plaintiffs made only cursory references to these sources at the February 19, 2025, hearing and have never articulated these sources' potential relevance. Hearing Tr. 5:6–11, 23:10. With no reason given for why this data may become "useful" or "relevant," *see* Fed. R. Civ. P. 26(b)(2)(B) advisory committee's note to 2006 amendment, its preservation should not be required. Indeed, these types of logs are typically only preserved where they are the *only* evidence of activity that is at the heart of the case, *see* Redgrave Decl. ¶ 30, which is not alleged here.

*Data Remaining from Systems No Longer in Use That Is Unintelligible on the Systems Currently in Use.* This Disputed Data Source consists of systems that are no longer in use and data from which is unintelligible on systems currently in use. *See* Solow Decl. ¶ 14. To even begin to preserve and assess these, the "unintelligible" data within each would have to be rendered intelligible, which will require specialized technical expertise, time, software development, and significant costs. *See id*. ¶¶ 14-15. Indeed, for TTI's approximately 30,000 legacy systems, the cost of restoring such data would likely be in the hundreds of millions of dollars. *Id*. ¶ 16 (estimating a cost of up to $300 million).

Accordingly, accessing and restoring this largely inaccessible data by its very nature would require extraordinary measures—if it could be restored at all. As such, it is typically included within the scope of preservation obligations *only* if it is critical to fair resolution of the dispute. *See* Redgrave Decl. ¶ 31. Here, Plaintiffs have not even alleged a potential nexus to relevant discovery as contemplated by Fed. R. Civ. P. 26(b)(1), let alone that such data is "critical" to "fair resolution" of a case that centers on already produced source code.

\*   \*   \*

10

For the reasons set forth above, each of the Disputed Data Sources should be excluded from the preservation obligations of Paragraph 2, because of the unreasonable and disproportionate burden their preservation would impose and the absence of any showing by Plaintiffs of any special need and relevance of these sources.

## II.  The ESI Protocol Should be Modified to Reflect that Paragraph 2 Governs the Parties' Preservation Obligations, Consistent with the May 2024 PO.

The amended ESI Protocol also should be amended to clarify that Paragraph 2 of any entered ESI Protocol will become the operative preservation plan, as contemplated in the May 2024 PO. By its terms, the May 2024 PO was to apply only "[u]ntil the parties reach an agreement on a preservation plan or the Court orders otherwise." Dkt. 53. As such, any ESI Protocol agreed upon by the Parties and/or entered by the Court exercises one of those options and would apply moving forward, pursuant to the terms of the May 2024 PO.

## CONCLUSION

For the above reasons, the Court should grant Defendants' motion for a protective order modifying Paragraph 2 of the As-Entered ESI Protocol.

Dated: May 13, 2025

Respectfully submitted,

By: */s/ Anthony J Weibell*

Anthony J Weibell
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
(650) 331-2030
aweibell@mayerbrown.com

*Lead Counsel for All Defendants*

11

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorneys of record for each party through the Court's electronic filing service on this date, which will send notification of such filing to the e-mail addresses registered.

Dated: May 13, 2025

*/s/ Anthony J Weibell*