UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TIKTOK INC. IN APP BROWSER PRIVACY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | MDL No. 2948-A<br><br>Master Docket No. 24 C 2110<br><br>Judge Rebecca R. Pallmeyer |

# PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION

# FOR PROTECTIVE ORDER

## INTRODUCTION

Defendants' motion[1] avoids the only question that matters: whether the Disputed Data Sources contain potentially relevant information. If they do not, no relief is needed. If they do, then preservation is already required under the parties' May 2024 **stipulated** preservation order (the "Preservation Order").

Not much has changed since the February 19 hearing, when the Court *affirmed* the Preservation Order and rejected Defendants' attempt to carve out the Disputed Data Sources through the ESI Protocol. Yet, Defendants treat preservation of the Disputed Data Sources as an open issue and recycle arguments the Court already rejected. They also submit declarations that fail to support the relief they seek. Importantly, none addresses the core issue – whether *preserving* potentially relevant information in the Disputed Data Sources is unduly burdensome. Instead, the declarations suggest that Defendants **may not** be preserving those sources at all. Thus, the only meaningful development since the February 19 hearing is Plaintiffs' growing concern—based on Defendants' evasive responses during the meet and confer process—that Defendants have not complied with their preservation obligations and their motion seeks to absolve them of any spoliation concerns.

If anything, Defendants' motion is, in substance, an improper request for reconsideration under Rule 54(b). But having already lost this issue once, and with no manifest error or newly discovered evidence to justify reconsideration, Defendants offer no reason to relitigate it again.

## SUMMARY OF RELEVANT FACTS

The parties began negotiating a stipulated preservation order on April 29, 2024. Ex. 1. Plaintiffs circulated a draft on May 8. Exs. 2-3. While those negotiations were ongoing, Plaintiffs

---

[1] Although filed on behalf of all Defendants, the motion makes no argument and cites no evidence about ByteDance Inc. ("BDI") or ByteDance Ltd. ("BDL") other than by defining "Defendants." Dkt. 112 at 1; Dkt. 113 at 2.

1

also circulated a draft ESI protocol. Exs. 4-5. On May 21, 2024, the Parties reached agreement on a preservation order which the Court entered on May 24. Dkt. 53. That Order requires the parties to "take reasonable steps to preserve all documents, data, and tangible things containing information potentially relevant to the subject matter of this litigation," including "telephone message records or logs, computer and network activity logs, hard drives, backup data, removable computer storage media such as tapes, discs and cards." *Id*. at 1-2.

On June 28, well after the Court entered the agreed-upon Preservation Order, Defendants proposed carving out their obligation to preserve the Disputed Data Sources via an ESI Protocol. Ex. 6, Exs. 7-8 (revisions at ¶ 2). Plaintiffs raised concerns about the scope of Defendants' proposal and asked Defendants to explain "what kinds of data and/or documents would be implicated." Ex. 9, Exs. 10-11 (comments from S. Cluff to ¶ 2). That central question, reflected in the parties' comments to paragraph 2, remains unanswered.

Over the following months, the parties continued exchanging comments on paragraph 2. Plaintiffs considered Defendants' cited authorities and pressed Defendants for "a particularized showing of burden." Ex. 12, Exs. 13-14 (Dec. 3, 2024, and Jan. 23, 2025, comments from S. Cluff to ¶ 2).

After reaching an impasse, the parties filed a Joint Statement on February 10, 2025. Dkt. 98. In their section, Defendants stated that they were preserving, "TikTok source code, word processing documents, spreadsheets, and presentations, chats, e-mails, and hard-copy documents." *Id.* at 3. But they said nothing about their compliance with the Preservation Order as to the Disputed Data Sources. *See*, *e.g.*, *id.* at 3-5. Instead, they offered vague statements that those sources were "unlikely to contain responsive information." *Id*. at 3.[2]

---

[2] Regarding legacy systems, TikTok stated that it had "identified no legacy systems that could contain responsive information." Dkt. 98 at 4. E-Discovery Counsel echoed that point in their May 6 email: "As for legacy data, TikTok

At the February 19 hearing, Defendants repeated the same arguments about the potential lack of relevant information and claimed that preserving the Disputed Data Sources would be unduly burdensome. The Court rejected Defendants' arguments and affirmed the Preservation Order. Dkt. 105; *see also* Hearing Tr. at 29:10-14 (Feb. 19, 2025). The Court noted there was no need for relief if the Disputed Data Sources lacked potentially relevant information and emphasized that the burden "may greatly exceed the benefit, but that was an agreement . . . hammered out by very competent lawyers months ago." *Id*. at 28:20-29:3, 29:15-17. The Court then adopted Plaintiffs' version of the ESI Protocol. Dkt. 104, 107.

More than a month later, Defendants' counsel asked to meet and confer about the declarations discussed at the February 19 hearing. Ex. 15. During a March 31 meeting, Plaintiffs were introduced to attorneys Shannon Capone Kirk and Emily A. Cobb of Ropes & Gray LLP ("E-Discovery Counsel"), who had no role in negotiating the Preservation Order or the ESI Protocol—at least none apparent to Plaintiffs' counsel – and who have not even filed an appearance or sought admission *pro hac vice* in this matter.

Despite extensive meet and confer correspondence with E-Discovery Counsel, Defendants continued to refuse to answer critical questions regarding their preservation obligations. *See* Ex. 16 (April 28 and May 7 emails from D. Fernandes); *see also* Ex. 17. Defendants' continued refusal, along with their responses during the meet and confer process, only heightened Plaintiffs' concern that Defendants are not complying with the Preservation Order.

Indeed, Defendants' own submissions support that concern. The Redgrave and Solow declarations suggest the Disputed Data Sources are not being preserved. Solow Dec. ¶ 6 (deleted,

---

is not aware of anything responsive in legacy data[.]". *See* Ex. 16 at 3. If that is true, it is unclear why Defendants moved for a protective order as to this source.

slack and fragmented data are "subject to constant overwriting during normal use"); ¶ 6 (citing Redgrave Dec. ¶ 30; "server, system or network logs are typically short-lived"); Redgrave Dec. ¶ 30 (server, system or network logs "are routinely overwritten"). And, E-Discovery Counsel would not confirm Defendants' preservation of anything beyond "TikTok source code, word processing documents, spreadsheets, and presentations, chats, e-mails, and hard-copy documents." Ex. 16 (April 25 and May 6 emails from S. Capone Kirk); Dkt. 98 at 4. Nor would they answer any questions about Defendants' compliance with the May 2024 Preservation Order. Ex. 16 (same).

## ARGUMENT

**I.     DEFENDANTS' MOTION DOES NOT WARRANT A PROTECTIVE ORDER.**

    **A.     Defendants Simply Refuse to Answer Whether the Disputed Data Sources Contain Potentially Relevant Information or Describe the Burden of Preserving It.**

Rule 26 requires Defendants and their counsel to conduct "an active and affirmative [investigation of Defendants'] information technology structure." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 963 (N.D. Ill. 2021). That includes, "asking difficult, thorough questions to identify custodians and locations of potentially relevant ESI" and developing "a reasonable understanding of [Defendants'] information systems" sufficient to "allow[] counsel to create a systematic process and plan for" "monitoring of the identification, preservation, collection, and production of ESI." *Id.* at 963-64.

Despite multiple opportunities to do so during the meet and confer process, Defendants have repeatedly refused to answer questions surrounding their preservation obligations, including: (1) whether they are complying with the Preservation Order and preserving potentially relevant information in the Disputed Data Sources; (2) if so, what burden, if any, they have experienced to date in preserving potentially relevant information from these sources; and (3)

4

whether counsel conducted a reasonable inquiry into the contents of the Disputed Data Sources and determined, based on that inquiry, that they do not contain any potentially relevant information. Ex. 16 (April 28 and May 7 emails from D. Fernandes); Ex. 17.

These are not new or difficult questions. Defendants have answered them in this case about other data, and in other cases. *See* Hearing Tr. at 28:16-29:3 (Feb. 19, 2025); *see also* Defendants' Memorandum in Opposition to Plaintiff's Motion for Contempt and Sanctions, at 4-5, *Stitch Editing Ltd. v. TikTok Inc.*, C.D. Cal. Case No. 2:21-cv-06636-SB-SK, ECF No. 174 (filed on Nov. 11, 2022). Had Defendants answered Plaintiffs' questions, this entire dispute might have been avoided.[3]

Both the Preservation Order and the ESI Protocol are clear: only relevant information must be preserved. Dkt. 53 at 2; Dkt. 107 ¶ 2; *see also* Hearing Tr. at 28:20–29:3 (Feb. 19, 2025) (noting there is no need for relief if the sources lack relevant information). Defendants refuse to definitively say whether the Disputed Data Sources contain relevant information. But the decision to seek a protective order makes clear what Defendants will not admit directly—that the Disputed Data Sources ***must*** contain potentially relevant information. That implicit admission, coupled with their refusal to answer basic questions, underscores the absence of any basis for issuing a protective order.

---

[3] In their May 6 email, E-Discovery Counsel stated that, "TikTok is not aware of anything responsive in legacy data." Ex. 16 at 3. But they made no such representation for the other Disputed Data Sources. *Id.* Instead, they offered only a conclusory assertion that, "there is nothing that could be defined as potentially relevant." *Id.* That distinction is telling. If Defendants had conducted a reasonable inquiry and determined that all three Disputed Data Sources lacked potentially relevant information, they presumably would have said so. Their failure to do so—particularly given their affirmative statements regarding legacy data—suggests either no such inquiry occurred, or that Defendants are unwilling to make a statement they may be held to later.

### B. The Redgrave Declaration Offers Legal Argument, Not Expert Testimony, and Says Nothing About Defendants' Disputed Data Sources.

"Rules 702 and 704 prohibit experts from offering opinions about legal issues." *Roundy's Inc. v. N.L.R.B.*, 674 F.3d 638, 648 (7th Cir. 2012). Courts routinely exclude legal arguments disguised as expert opinions. *See, e.g.*, *Gonzalez v. ADT LLC*, No. 3:15CV290-PPS/MGG, 2019 WL 762512, *4 (N.D. Ind. Feb. 20, 2019) ("legal conclusion masquerading as expert opinion is inadmissible" because it lacked "any explanation of facts"); *Scottsdale Ins. Co. v. City of Waukegan*, 689 F. Supp. 2d 1018, 1024 (N.D. Ill. 2010) (opinions on "legal duties" were inadmissible because "citing to a legal opinion to support the conclusion" "merely [told] the trier of fact what result to reach") (cleaned up).

The Redgrave Declaration, authored by a purported ESI preservation expert who apparently did not bother to review the contents of the Disputed Data Source or even speak to a single knowledgeable TikTok employee - violates these standards. Redgrave simply offers legal conclusions on: (1) the applicable preservation standard (¶¶ 20-23); (2) what qualifies as an "extraordinary measure" and that such "extraordinary measures" are not required (¶¶ 24-27); (3) whether Plaintiffs must make a threshold showing of need (¶¶ 28-32); and (4) whether they have met that standard (*id.*).

Defendants rely heavily on Redgrave's legal conclusions, and the authorities he cites to support them. *Compare*, *e.g.*, Motion at 7 with Redgrave Dec. at ¶¶ 20-21, n.6. Rebutting those arguments would require substantial legal briefing—well beyond the parties' page limits. That is precisely why legal argument "should be presented to the court in counsel's analysis, not expert opinion." *Roundy's*, 674 F.3d at 648.

Even if the Court considers the Redgrave Declaration, it offers little value. It says nothing about the Disputed Data Sources in Defendants' possession, custody, or control or the burden

6

Defendants' bear in preserving such sources. Instead, it offers generic descriptions of what these types of sources *might* contain. *See* Redgrave Dec. ¶¶ 29-31. Redgrave's only mention of a specific party is a single sentence noting he was retained by TikTok Inc. *Id*. ¶ 1.

Redgrave's opinions are also misplaced because they conflate preservation with access and forensic discovery. *See id.* ¶ 29 ("accessing" deleted, slack and fragmented data, or other data through "forensic discovery"), ¶ 31 ("[a]ccessing legacy data"). But preservation does not require access or forensic discovery. The question is simply whether a source might contain potentially relevant information. That can be determined by speaking with knowledgeable custodians or reviewing a reasonable sample of information from a particular source. If relevant information is likely present, the source can be preserved without analyzing or collecting it in full. Yet Defendants have never indicated—either through their motion, their declarations, or the meet and confer process—that they have consulted knowledgeable custodians or reviewed any sample of the Disputed Data Sources to support their claims that they are unlikely to contain responsive information.

Notably, Redgrave concedes that server, system, and network logs are "routinely overwritten," yet he offers no indication that Defendants are taking steps to prevent that from happening. *Id.* ¶ 30. His analysis does nothing to explain what Defendants are doing to meet their preservation obligations, or whether they face any burden that might warrant relief.

    **C.**    **The Solow Declaration Misleadingly Describes the Burden of Discovering All Evidence in the Disputed Data Sources Rather Than Preserving Potentially Relevant Information.**

The Solow Declaration[4] is unpersuasive for two reasons. First, although it lists massive volumes of systems, devices, and data within the Disputed Data Sources, Solow never identifies

---

[4] The Solow Declaration cites to and summarizes heavily from the Redgrave Declaration. *See*, *e.g.*, Solow Dec. ¶¶ 5-6, 9-10, 14. Those paragraphs should be excluded for the same reasons as the Redgrave Declaration.

whether any of it is relevant or subject to preservation. Solow Dec. ¶ 7 ("[d]eleted, slack, fragmented, and similar data accessible by forensics exists for approximately 190,000 systems and applications, along with an estimated 220,000 devices such as phones, computers, and laptops" but not describing how many are relevant); ¶ 11 ("TTI maintains more than approximately 160,000 internal application and network systems, each of which could generate various logs that are necessary for its systems to function" but not describing how many are relevant); ¶ 14 ("TTI has approximately 30,000 legacy systems" but not describing how many are relevant).

Second, Solow's burden analysis addresses the cost of *discovery*, which is irrelevant here, not *preservation*. *See id*. ¶ 8 (explaining that "[d]iscovery of this data" "from a single, one terabyte hard drive may cost approximately $35,000"), ¶¶ 10-13 (no discussion of burden for preserving or discovering server, system, or network logs), ¶¶ 15-16 (describing $300,000,000 cost of rendering all 30,000 of TikTok's legacy systems intelligible rather than preserving them).

The Solow Declaration does not support a credible claim of preservation burden. It conflates *preservation* with *production*, cites cost estimates without addressing potential relevance, and makes no effort to distinguish burdens tied to potentially relevant data from those that are not. It falls far short of justifying a protective order.

## II. DEFENDANTS' LEGAL AUTHORITIES DO NOT SUPPORT THE RELIEF THEY SEEK.

All but two of the cases Defendants cite address the *discoverability* of data and documents, *not preservation obligations*. *See Knox v. Walter*, No. 20-3344, 2022 WL 61432, at *1-2 (7th Cir. Jan 6, 2022) (affirming protective order against document production); *Kleen Prods. LLC v. Packaging Corp. of Am.*, No. 10 C 5711, 2012 WL 4498465, at *7, 17-18 (N.D. Ill. Sept. 28, 2012) (noting defendants agreed to preserve all backup tapes before denying motion

8

to compel production); *Nieves v. OPA, Inc.*, 948 F. Supp. 2d 887, 891 (N.D. Ill. 2013) ("good cause" standard for "[t]he Discovery Issues Raised in the Motion for the Protective Order"); *Small v. Amgen, Inc.*, No. 2:12-cv-476-FtM-29MRM, 2016 WL 7228863, at *9-10 (M.D. Fla. Sept. 28, 2016) (denying plaintiff's requested discovery); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d 758, 766 (7th Cir. 2015) (affirming order protecting against additional depositions).

The only preservation cases Defendants cite—*Barnes-Staples v. Murphy,* No. 20-cv-3627, 2021 WL 1426875 (N.D. Ill. Apr. 15, 2021) and *Love v. City of Chicago*, No. 09 C 03631, 2017 WL 5152345, at *5 (N.D. Ill. Nov. 7, 2017)—are inapposite. Here, unlike in those cases, the parties negotiated a preservation order that covers the Disputed Data Sources. The Preservation Order does not require Plaintiffs to identify specifically relevant information or files in the Disputed Data Sources – a task Plaintiffs obviously cannot complete without examining the sources —only that Defendants preserve potentially relevant information, wherever it may reside.

While Rule 26(b)(1) requires that discovery be proportional to the needs of the case—considering factors such as "the importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit"—Defendants' refusal to disclose the contents of the Disputed Data Sources precludes any meaningful assessment by Plaintiffs or the Court as to whether *preservation* is warranted. Likewise, although Rule 26(b)(2)(B) permits a court to limit discovery from sources that are unduly burdensome or costly, it also authorizes such discovery upon a showing of good cause. Plaintiffs cannot make that showing without first understanding what relevant data the Disputed Data Sources may contain. In any case, Defendants have not demonstrated that merely

*preserving* those sources imposes any undue burden or cost. Even the Sedona Principles, which Defendants cite, supports Plaintiffs' position that Defendants should understand "what ESI is available and the burden or expense of preserving, collecting, and producing that ESI." Sedona Conf. J. 1, Principle 9, Third Edition. Defendants have not made this showing.

### III. DEFENDANTS MOTION MAY BE CONSIDERED AS A RULE 54(b) MOTION TO ALTER OR AMEND THE AS-ENTERED ESI PROTOCOL AND DENIED.

Though styled as a motion for a protective order, Defendants' request more closely resembles a Rule 54(b) motion to reconsider the Court's prior order adopting Plaintiffs' ESI Protocol. *City of Chicago v. Purdue Pharma, L.P.*, No. 14 CV 4361, 2020 WL 3578497, *2 (N.D. Ill. July 1, 2020) (granting motion for protective order pursuant to Rule 54(b) where, unlike here, a significant change in plaintiff's claims justified modification). Rule 54(b) "motions for reconsideration are generally 'viewed with disfavor' and granted 'only in the rarest of circumstances and when there is a compelling reason,' to wit, 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Hurt v. Javed*, No. 17 C 7909, 2024 WL 640849, *2 (N.D. Ill. Feb. 15, 2024) (Pallmeyer, J.) (quoting *Saccameno v. Ocwen Loan Servicing, LLC*, No. 15 C 1164, 2018 WL 1240347, at *2 (N.D. Ill. Mar. 9, 2018)).

There is no basis to reconsider the Court's prior order here. Defendants do not argue that the Court made a manifest error of law or fact in entering the February 19 Minute Order or adopting Plaintiffs' ESI Protocol, nor do they offer newly discovered evidence. The Redgrave and Solow Declarations contain information that was entirely within Defendants' possession, custody, or control prior to the February 19 hearing. *Walls v. Vre Chicago Eleven, LLC*, No. 16-cv-4048, 2020 WL 887488, *3 (N.D. Ill. Feb. 24, 2020) ("a 'party may not use a motion for reconsideration to introduce evidence that could have been presented earlier'") (citation omitted).

10

Defendants could have submitted declarations at the appropriate time but chose not to do so. As such, they cannot now use Rule 54(b) to relitigate this settled issue.

## **CONCLUSION**

For the reasons stated above, the Court should deny Defendants' motion in its entirety and order Defendants to confirm they are preserving potentially relevant information in all sources, including the Disputed Data Sources, as required by the Preservation Order.

Dated: May 27, 2025                                         Respectfully submitted,

                                                   */s/ Roland Tellis*
                                                   Roland Tellis
                                                   **BARON & BUDD, P.C.**
                                                   15910 Ventura Boulevard, Suite 1600
                                                   Encino, California 91436
                                                   (818) 839-2333
                                                   rtellis@baronbudd.com

                                                   *Chair, Plaintiffs' Steering Committee*