| | |
|---|---|
| **From:** | Roland Tellis |
| **To:** | Sterling Cluff |
| **Subject:** | Fwd: TikTok IAB Litigation - Request to Withdraw Portions of the Consolidated Complaint |
| **Date:** | Monday, May 13, 2024 11:55:20 AM |
| **Attachments:** | TikTok Draft Evidence Preservation Order 5.8.docx |

Begin forwarded message:

**From:** Roland Tellis <rtellis@baronbudd.com>
**Date:** May 8, 2024 at 9:35:46 AM PDT
**To:** "Weibell, Tony" <AWeibell@mayerbrown.com>
**Subject: Re: TikTok IAB Litigation - Request to Withdraw Portions of the Consolidated Complaint**

Tony, your spin on Krause's report is neither evidence nor convincing. Indeed, given TikTok's use of the JavaScript commands "keypress" and "keydown," Krause's "note on subscribing" below seems to actually confirm that TikTok subscribes to the JavaScript events of that type. But, of course, Krause says he cannot verify "what happens with the data." And Krause's interview simply says that as an "outsider," he doesn't know what specific data was obtained because that happens "under the hood." But, again, he confirms that there are "systems in place" that "allow the companies to track additional data," and he says TikTok confirms the code exists.

In any event, none of your citations below undermine Krause's very specific research about TikTok's keylogging or TikTok's JavaScript commands, nor do they cause our allegations to be implausible. As such, if you proceed with your misguided Rule 11 motion, we will respond accordingly.

I am available for a Rule 26f conference on Friday at 10:00 am. Please let me know if this works for you. In the meantime, I've attached a draft evidence preservation order that was modeled after the one entered by Judge Lee at the outset of MDL 2948. Please send me any edits so we can get it on file.

Thanks,

**Roland Tellis**
Baron & Budd, P.C. | Shareholder
Class Action Practice Group | Chair

818.839.2333 main
818.839.2320 direct
rtellis@baronbudd.com

www.baronandbudd.com

Dallas | Austin | Baton Rouge | New Orleans | Chico
Los Angeles | San Diego | New York | Washington, D.C.

---

**From:** Weibell, Tony <AWeibell@mayerbrown.com>
**Sent:** Tuesday, May 7, 2024 6:15 PM
**To:** Roland Tellis <rtellis@baronbudd.com>
**Subject:** RE: TikTok IAB Litigation - Request to Withdraw Portions of the Consolidated Complaint

Hi Roland,

Thanks for preparing those draft orders. We will review and discuss with our client and get back to you.

On the Krause issue, I think a little more back and forth by email or in a live phone discussion with your technical person is going to help. There appears to be a misunderstanding of the word "subscribe." To avoid people jumping to the wrong conclusion (which is what has happened in the current complaint), Krause himself added this explanation to his post:

> **Note on subscribing**: When I talk about "*App subscribes to*", I mean that the app subscribes to the JavaScript events of that type (e.g. all taps). There is no way to verify what happens with the data.

In other words, what the app *code* has access to is not the same as what the *TikTok company* receives from the app. When Krause uses the word "subscribe," he is only saying that the TikTok app has the ability to access that data through the JS code, and he unequivocally states this does not mean the app actually uses this data, let alone that TikTok the company ever receives keystroke data from the app. Note that Krause has been very clear in his blog post and in many public statements that his research does not show TikTok (the company, not the app) is actually receiving keystroke data despite the presence of the JS code:

- "Do the apps above actually steal my passwords, address and credit card numbers? No!" https://krausefx.com/blog/announcing-inappbrowsercom-see-what-javascript-commands-get-executed-in-an-in-app-browser
- "Krause explained that his report 'doesn't say TikTok is actually recording and using this data.'" https://mashable.com/article/tiktok-browser-monitoring
- Question: "Is there any way to tell which information TikTok or any of these other apps have actually been tracking?" Answer by Krause: My findings "do not prove or talk about the data that is actually being tracked" and that the only thing I "was able to prove is that there are systems in place to do some additional tracking so it would allow those

- companies to track additional data." https://www.youtube.com/watch?v=_im23Ccq5wo.
- He further states in that interview that TikTok's explanation "is very reasonable" when TikTok says the keystroke logging code "is not actively being used." https://www.youtube.com/watch?v=_im23Ccq5wo

Again, there seems to be no room in anything Krause has said (especially in light of his clarifying statements) for someone to make the leap from TikTok having the *ability to collect* the data at issue to TikTok *actually collecting* the data. Friday may be a good day to discuss live if you are open to that, but I can do something sooner if you prefer.

Tony

---

**From:** Roland Tellis <rtellis@baronbudd.com>
**Sent:** Tuesday, May 7, 2024 4:24 PM
**To:** Weibell, Tony <AWeibell@mayerbrown.com>
**Subject:** Re: TikTok IAB Litigation - Request to Withdraw Portions of the Consolidated Complaint [MB-AME.FID13870969]

CAUTION: **External Email -** Only click on contents you know are safe.

Tony, happy to hop on a call to discuss but we encountered a variation of this argument in the last MTD briefing. Essentially your argument rests on a flawed interpretation of a Forbes article which, in turn, misinterprets the import of Krause's research. Krause's research report very clearly states that "When you open any link on the TikTok iOS app, it's opened inside their in-app browser. While you are interacting with the website, **TikTok subscribes to all keyboard inputs** (including passwords, credit card information, etc.) and every tap on the screen, like which buttons and links you click." (empasis in original). Krause goes on to say that "TikTok iOS subscribes to every keystroke (text inputs) happening on third party websites rendered inside the TikTok app. This can include passwords, credit card information and other sensitive user data. (keypress and keydown)" The JavaScript commands (i.e. "EventListners" for keypress and keydown) detected on the app appear to confirm Krause's statements.

You (and the Forbes reporter) seem focused on Krause's statement that "We can't know what TikTok uses the subscription for, but from a technical perspective, **this is the equivalent of installing a keylogger** on third party websites." (emphasis in original). That statement cannot reasonably be read as a concession that TikTok is not using the injected code for keystroke logging, it really means nothing more than Krause doesn't know why TikTok is collecting the data. Krause also quotes a statement by a TikTok spokesperson — saying the code is used for "debugging, troubleshooting and performance monitoring of that experience" which, according to Krause, "confirms my findings." Discovery will shed light on all of this. To that end, we'd like to schedule a 26f conference asap

so we can get on with formal discovery. Please let me know your availability to discuss this week. To facilitate the Rule 26f discussion, I've attached a draft ESI protocol, Rule 502(d) order, and confidentiality order. Note that the confidentiality order is based on the N.D. Illinois model order and contains our redlines to show the Court where we made changes. If you have additional changes, please put them in redline on top of ours (rather than accepting our redlines).

Thanks,

**Roland Tellis**
Baron & Budd, P.C. | Shareholder
Class Action Practice Group | Chair

818.839.2333 main
818.839.2320 direct

rtellis@baronbudd.com

www.baronandbudd.com

Dallas | Austin | Baton Rouge | New Orleans | Chico
Los Angeles | San Diego | New York | Washington, D.C.

---

**From:** Weibell, Tony <AWeibell@mayerbrown.com>
**Sent:** Monday, May 6, 2024 3:35 PM
**To:** Roland Tellis <rtellis@baronbudd.com>
**Subject:** TikTok IAB Litigation - Request to Withdraw Portions of the Consolidated Complaint [MB-AME.FID13870969]

Hi Roland,

As we were reviewing the Consolidated Complaint to prepare our motion to dismiss, we noticed that all ten plaintiffs allege that Defendants used the in-app browser to collect plaintiffs' "personal information," "contact information," "social security number," "credit card information," and/or "banking information." Given what we know about the IAB's JavaScript injection (that it did not collect any such information from these plaintiffs), and what we understand Plaintiffs' counsel to know about the IAB (that the research on which they rely concedes there is no evidence TikTok actually used the injected code to collect such information), TikTok does not believe that Plaintiffs have a Rule 11 basis to make these allegations.

In particular, Mr. Krause (the researcher at issue) states definitively that the in-app browser does not collect that information: "Do the apps above actually steal my passwords, address and credit card numbers? No! I wanted to showcase that bad actors could get access to this data with this approach." https://krausefx.com/blog/announcing-inappbrowsercom-see-what-javascript-commands-get-executed-in-an-in-app-browser ("Krause Post"). Krause conceded that he "can't know what TikTok uses [the injected JavaScript] for," and that "[j]ust because an app injects JavaScript into external websites, doesn't mean the app is doing anything malicious." *Id.* Likewise, a Forbes article quoted by the Krause Post and cited by Plaintiffs (see MCC ¶ 141 n.158) explains

that "the research does not show that these companies are actually using that code to collect data, send it to their servers or share it with third parties." *See Richard Nieva, TikTok's In-App Browser Includes Code That Can Monitor Your Keystrokes, Research Says, Forbes* (Aug. 18, 2022) (emphasis added). The Krause Post also includes a statement from TikTok explaining that the injected JavaScript is not used for keystroke logging but rather "only for debugging, troubleshooting and performance monitoring of that experience—like checking how quickly a page loads or whether it crashes." Krause Post.

In view of these facts, we think Plaintiffs are required by the relevant standards to withdraw the problematic portions of the Complaint. The specific portions of the Complaint at issue are the following paragraphs and any other paragraphs that rely on these factual allegations:

- 5. Plaintiff Austin Recht … an in-app browser which Defendants secretly used to monitor and capture … his personal information, contact information, and credit card information.
- 6. Plaintiff Sean Guzman … an in-app browser which Defendants secretly used to monitor and capture … his personal information, contact information, and credit card information.
- 7. Plaintiff Michael Walsh … an in-app browser which Defendants secretly used to monitor and capture … his personal information, contact information, and credit card information.
- 8. Plaintiff Steve Berrios … an in-app browser which Defendants secretly used to monitor and capture … his personal information, contact information, and social security number.
- 9. Plaintiff Christi Stowers … an in-app browser which Defendants secretly used to monitor and capture … her personal information, contact information, and credit card information.
- 10. Plaintiff Anibeth Bravo … an in-app browser which Defendants secretly used to monitor and capture … her personal information, contact information, banking information, and credit card information.
- 11. Plaintiff Katie Murphy … an in-app browser which Defendants secretly used to monitor and capture … her personal information, contact information, and credit card information.
- 12. Plaintiff Jessica Gann … an in-app browser which Defendants secretly used to monitor and capture … personal information, contact information, and credit card information.
- 13. Plaintiff Delaney Arnold … an in-app browser which Defendants secretly used to monitor and capture … her personal information, contact information, and credit card information.
- 14. Plaintiff Bradley Fugok … an in-app browser which Defendants secretly used to monitor and capture … his personal information, contact information, and credit card information.

I thought it would be helpful to raise this request informally to give us a chance to discuss before proceeding with the formal process in case you are aware of pertinent facts that change the calculus with respect to the IAB-injected code. I also think we both would want to resolve this issue before filing our briefs on the motion to dismiss so we don't waste pages discussing issues that are not in the case.

Thanks,

Tony

_____
**Anthony J Weibell**
*Partner*

Mayer Brown LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
T +1 650 331 2030
aweibell@mayerbrown.com
Website Bio