| | |
|---|---|
| **From:** | Roland Tellis |
| **To:** | Sterling Cluff |
| **Subject:** | Fwd: TikTok IAB Litigation - Request to Withdraw Portions of the Consolidated Complaint [MB-AME.FID13870969] |
| **Date:** | Monday, May 13, 2024 11:55:51 AM |
| **Attachments:** | 2024.05.06 TikTok Draft ESI Protocol.docx |
| | 2024.05.06 TikTok Draft NDIL Model Confidentiality Order.docx |
| | 2024.05.06 TikTok Draft Rule 502(d) Order.docx |

Begin forwarded message:

**From:** Roland Tellis <rtellis@baronbudd.com>
**Date:** May 7, 2024 at 4:24:13 PM PDT
**To:** "Weibell, Tony" <AWeibell@mayerbrown.com>
**Subject: Re: TikTok IAB Litigation - Request to Withdraw Portions of the Consolidated Complaint [MB-AME.FID13870969]**

Tony, happy to hop on a call to discuss but we encountered a variation of this argument in the last MTD briefing. Essentially your argument rests on a flawed interpretation of a Forbes article which, in turn, misinterprets the import of Krause's research. Krause's research report very clearly states that "When you open any link on the TikTok iOS app, it's opened inside their in-app browser. While you are interacting with the website, **TikTok subscribes to all keyboard inputs** (including passwords, credit card information, etc.) and every tap on the screen, like which buttons and links you click." (empasis in original). Krause goes on to say that "TikTok iOS subscribes to every keystroke (text inputs) happening on third party websites rendered inside the TikTok app. This can include passwords, credit card information and other sensitive user data. (keypress and keydown)" The JavaScript commands (i.e. "EventListners" for keypress and keydown) detected on the app appear to confirm Krause's statements.

You (and the Forbes reporter) seem focused on Krause's statement that "We can't know what TikTok uses the subscription for, but from a technical perspective, **this is the equivalent of installing a keylogger** on third party websites." (emphasis in original). That statement cannot reasonably be read as a concession that TikTok is not using the injected code for keystroke logging, it really means nothing more than Krause doesn't know why TikTok is collecting the data. Krause also quotes a statement by a TikTok spokesperson — saying the code is used for "debugging, troubleshooting and performance monitoring of that experience" which, according to Krause, "confirms my findings." Discovery will shed light on all of this. To that end, we'd like to schedule a 26f conference asap

so we can get on with formal discovery.  Please let me know your availability to discuss this week.  To facilitate the Rule 26f discussion, I've attached a draft ESI protocol, Rule 502(d) order, and confidentiality order.  Note that the confidentiality order is based on the N.D. Illinois model order and contains our redlines to show the Court where we made changes.  If you have additional changes, please put them in redline on top of ours (rather than accepting our redlines).

Thanks,

**Roland Tellis**
Baron & Budd, P.C. | Shareholder
Class Action Practice Group | Chair

818.839.2333 main
818.839.2320 direct
rtellis@baronbudd.com

www.baronandbudd.com

Dallas | Austin | Baton Rouge | New Orleans | Chico
Los Angeles | San Diego | New York | Washington, D.C.

---

**From:** Weibell, Tony <AWeibell@mayerbrown.com>
**Sent:** Monday, May 6, 2024 3:35 PM
**To:** Roland Tellis <rtellis@baronbudd.com>
**Subject:** TikTok IAB Litigation - Request to Withdraw Portions of the Consolidated Complaint [MB-AME.FID13870969]

Hi Roland,

As we were reviewing the Consolidated Complaint to prepare our motion to dismiss, we noticed that all ten plaintiffs allege that Defendants used the in-app browser to collect plaintiffs' "personal information," "contact information," "social security number," "credit card information," and/or "banking information." Given what we know about the IAB's JavaScript injection (that it did not collect any such information from these plaintiffs), and what we understand Plaintiffs' counsel to know about the IAB (that the research on which they rely concedes there is no evidence TikTok actually used the injected code to collect such information), TikTok does not believe that Plaintiffs have a Rule 11 basis to make these allegations.

In particular, Mr. Krause (the researcher at issue) states definitively that the in-app browser does not collect that information: "Do the apps above actually steal my passwords, address and credit card numbers? No! I wanted to showcase that bad actors could get access to this data with this approach." https://krausefx.com/blog/announcing-inappbrowsercom-see-what-javascript-commands-get-executed-in-an-in-app-browser ("Krause Post"). Krause conceded that he "can't know what TikTok uses [the injected JavaScript] for," and that "[j]ust because an app injects JavaScript into external websites, doesn't mean the app is doing anything malicious." *Id.* Likewise, a Forbes article quoted by the Krause Post and cited by Plaintiffs (see MCC ¶ 141 n.158) explains

that "the research does not show that these companies are actually using that code to collect data, send it to their servers or share it with third parties." *See Richard Nieva, TikTok's In-App Browser Includes Code That Can Monitor Your Keystrokes, Research Says, Forbes* (Aug. 18, 2022) (emphasis added). The Krause Post also includes a statement from TikTok explaining that the injected JavaScript is not used for keystroke logging but rather "only for debugging, troubleshooting and performance monitoring of that experience—like checking how quickly a page loads or whether it crashes." Krause Post.

In view of these facts, we think Plaintiffs are required by the relevant standards to withdraw the problematic portions of the Complaint. The specific portions of the Complaint at issue are the following paragraphs and any other paragraphs that rely on these factual allegations:

- 5. Plaintiff Austin Recht … an in-app browser which Defendants secretly used to monitor and capture … his personal information, contact information, and credit card information.
- 6. Plaintiff Sean Guzman … an in-app browser which Defendants secretly used to monitor and capture … his personal information, contact information, and credit card information.
- 7. Plaintiff Michael Walsh … an in-app browser which Defendants secretly used to monitor and capture … his personal information, contact information, and credit card information.
- 8. Plaintiff Steve Berrios … an in-app browser which Defendants secretly used to monitor and capture … his personal information, contact information, and social security number.
- 9. Plaintiff Christi Stowers … an in-app browser which Defendants secretly used to monitor and capture … her personal information, contact information, and credit card information.
- 10. Plaintiff Anibeth Bravo … an in-app browser which Defendants secretly used to monitor and capture … her personal information, contact information, banking information, and credit card information.
- 11. Plaintiff Katie Murphy … an in-app browser which Defendants secretly used to monitor and capture … her personal information, contact information, and credit card information.
- 12. Plaintiff Jessica Gann … an in-app browser which Defendants secretly used to monitor and capture … personal information, contact information, and credit card information.
- 13. Plaintiff Delaney Arnold … an in-app browser which Defendants secretly used to monitor and capture … her personal information, contact information, and credit card information.
- 14. Plaintiff Bradley Fugok … an in-app browser which Defendants secretly used to monitor and capture … his personal information, contact information, and credit card information.

I thought it would be helpful to raise this request informally to give us a chance to discuss before proceeding with the formal process in case you are aware of pertinent facts that change the calculus with respect to the IAB-injected code. I also think we both would want to resolve this issue before filing our briefs on the motion to dismiss so we don't waste pages discussing issues that are not in the case.

Thanks,

Tony

_____

**Anthony J Weibell**
*Partner*

Mayer Brown LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
T +1 650 331 2030
aweibell@mayerbrown.com
Website Bio